IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
::
DELCATH SYSTEMS, INC.                              :
::
                       Plaintiff,          :
          v.                                :   Civil Action No. 1:06CV01391 RBW
::
ROBERT LADD, LADDCAP VALUE           :   Honorable Reggie B. Walton
PARTNERS LP, LADDCAP VALUE            :
ADVISORS LLC and LADDCAP VALUE   :
ASSOCIATES LLC                                        :
                     Defendants.       :
::
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF OLIVER OLANOFF IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

      OLIVER M. OLANOFF, pursuant to 28 U.S.C. § 1746, hereby declares:

      1.      I am an attorney with the law firm of Gibson, Dunn & Crutcher LLP, counsel for plaintiff Delcath Systems, Inc. ("Delcath"). I am a member in good standing of the Bar of the State of New York and the United States District Court for the Southern District of New York. A motion for my admission to appear *pro hac vice* in this action is currently pending.

      2.      I submit this declaration in support of Delcath's motion for preliminary injunction. The underlying action concerns alleged material misstatements and omissions by defendants Robert Ladd, Laddcap Value Partners LP ("Laddcap"), Laddcap Value Advisors LLC and Laddcap Value Associates LLC (the "Ladd Defendants") in violation of the Securities and Exchange Act of 1934. A true and correct copy of Delcath's original Complaint is attached hereto as Exhibit 1.

## THE PARTIES

**Delcath**

3. Founded in 1988, plaintiff Delcath Systems, Inc. is a Delaware corporation with its principal place of business at 1100 Summer Street, Third Floor, Stamford, Connecticut. Delcath is developing a drug delivery system capable of introducing, and removing, high dose chemotherapy agents to a diseased organ system while greatly inhibiting their entry into the general circulation system. A true and correct copy of Delcath's Form 10-KSB for the fiscal year ended December 31, 2005 is attached hereto as Exhibit 2.

4. In February 2006, the Food and Drug Administration ("FDA") granted to Delcath a Special Protocol Assessment ("SPA") that essentially will allow Delcath to proceed on a fast track to possible premarket approval from the FDA. With the SPA, the FDA has approved a testing protocol to determine whether patients using the Delcath system experience a reduction in tumor burden or zero progression of a tumor for a longer period of time than those receiving the best alternative care. On March 1, 2006, testing under the SPA commenced at the National Cancer Institute. True and correct copies of Delcath Press Releases, dated February 22, 2006 and March 1, 2006, are attached hereto as Exhibits 3 and 4.

**The Ladd Defendants**

5. In Schedule 13D filings, defendant Robert Ladd has represented himself to be the managing member of defendant Laddcap Value Advisors LLC, a Delaware limited liability company, which is the general partner of defendant Laddcap Value Partners LP ("Laddcap"), a Delaware limited partnership. A true and correct copy of the original Schedule 13D filed by Mr. Ladd on October 17, 2005 is attached hereto as Exhibit 9. In proxy and consent solicitation materials, Mr. Ladd has represented himself to be the managing member of defendant Laddcap

Value Associates LLC, which he also purports is the general partner of defendant Laddcap Value Partners LP.  True and correct copies of a Schedule 14A Proxy Solicitation, filed on June 9, 2006, and a Schedule 14A Preliminary Proxy Statement, filed on August 1, 2006, are attached hereto as Exhibits 31 and 48.  The principal place of business for Mr. Ladd and his Laddcap entities is 650 Fifth Avenue, Suite 600, New York, New York.  A Schedule 13D Amendment filed by Mr. Ladd on July 28, 2006 indicates that the Laddcap hedge fund is "the record holder of 2,163,527 shares" of Delcath stock and that "Mr. Ladd is deemed to beneficially own 2,163,527 Shares, or 11.1% of the Shares deemed issued and outstanding."  The Schedule 13D Amendment also indicates that Mr. Ladd "possesses the sole power to vote and the sole power to direct the disposition of all securities of the Company held by Laddcap."  A true and correct copy of Mr. Ladd's Eleventh Amendment to his Schedule 13D is attached hereto as Exhibit 47.

**Delcath Stock Overwhelmingly Outperforms The Laddcap Hedge Fund**

6.      Between May 15, 2003 (near the completion of a public offering for Delcath stock) and July 26, 2006 (the last trading day before the Ladd Defendants commenced their latest attempt to take control of Delcath), Delcath stock has appreciated by approximately 916%.  A true and correct copy of a Historical Prices Chart for Delcath's stock from May 15, 2003 through July 26, 2006 is attached hereto as Exhibit 5.  By contrast, though the Laddcap hedge fund describes its "primary mission" as "generat[ing] above average, consistent positive returns," its performance has been consistently well below the market average.  For example, the annual return in 2004 for the Laddcap fund was 0.7%, whereas the annual return in 2004 for the S&P SmallCap 600 was 21.59%.  The annual return in 2005 for the Laddcap fund was –1.7%, whereas the annual return in 2005 for the S&P SmallCap 600 was 6.65%.  A true and correct copy of an April 2006 Update from Laddcap Value Partners LP is attached hereto as Exhibit 6.

True and correct copies of charts concerning the performance for the S&P SmallCap 600 in 2004 and 2005 are attached hereto as Exhibits 7 and 8.

## THE LADD DEFENDANTS' REPEATED ATTEMPTS
## TO TAKE CONTROL AND FORCE THE SALE OF DELCATH

**The Ladd Defendants File A Schedule 13D Indicating That,
If Necessary To Force A Sale Of The Company, They Will
Seek The Removal Of Delcath's Board And Management**

7.  On October 17, 2005, Mr. Ladd filed a Schedule 13D indicating that Laddcap had become the holder of 5.1% of the outstanding shares of Delcath stock and that Laddcap would, *inter alia*, "seek to cause [Delcath] to merge with or into, consolidate with, transfer all or substantially all of its assets to, or otherwise engage in any business combination with, one or more other parties" and, if necessary to achieve its goals, "seek the removal of one or more members of the Company's board of directors and/or executive officers." A true and correct copy of Mr. Ladd's Schedule 13D is attached hereto as Exhibit 9.

8.  On October 24, 2005, Mr. Ladd filed a First Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 6.3% of the outstanding shares of Delcath stock. A true and correct copy of Mr. Ladd's First Amendment to his Schedule 13D is attached hereto as Exhibit 10.

9.  On November 10, 2005, Mr. Ladd filed a Second Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 7.4% of the outstanding shares of Delcath stock. Mr. Ladd also disclosed that he was "interviewing candidates to propose for election to the board of directors of the Company" and that he "may communicate with other shareholders of the Company in order to call a special meeting of the shareholders of the Company to propose that the Company retain the services of a nationally recognized investment banking and/or merger advisory firm." A true

and correct copy of Mr. Ladd's Second Amendment to his Schedule 13D is attached hereto as Exhibit 11.

10. On December 13, 2005, Thomas Mowry, a Delcath shareholder, sent an e-mail to other Delcath shareholders indicating that he has "regular contact" with Mr. Ladd and was acting as an "unofficial representative" and "proxy" for Mr. Ladd in obtaining information from shareholders, including the amount of shares they owned and whether they were "willing or not to collectively proxy [their] shares." A true and correct copy of the first page of Mr. Mowry's December 13, 2005 e-mail with words circled by a later recipient is attached hereto as Exhibit 12.

11. On November 28, 2005, a Delcath representative sent an e-mail to the Compliance Officer of Westrock Advisors, Inc. concerning harassing phone calls from John Codling. A true and correct copy of the November 28, 2006 e-mail is attached hereto as Exhibit 13. On March 15, 2006, outside counsel for Delcath sent a letter to Westrock's CEO and COO concerning continuing harassing phone calls from John Codling to Delcath management. A true and correct copy of the March 15, 2006 letter is attached hereto as Exhibit 14. Mr. Codling has represented that he introduced and/or recommended Delcath stock to Mr. Ladd, speaks to Mr. Ladd almost every day, and with Mr. Ladd controls the float of Delcath stock. *See* Declaration of Todd Fromer, executed on August 4, 2006 ("Fromer Decl."), ¶¶ 4-5.

12. On December 14, 2005, Mr. Ladd filed a Third Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 8.6% of the outstanding shares of Delcath stock. A true and correct copy of Mr. Ladd's Third Amendment to his Schedule 13D is attached hereto as Exhibit 15.

13.     On January 6, 2006, Mr. Ladd filed a Fourth Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 9.3% of the outstanding shares of Delcath stock.  A true and correct copy of Mr. Ladd's Fourth Amendment to his Schedule 13D is attached hereto as Exhibit 16.

**The Ladd Defendants Submit, And Delcath Opposes, A Proposal**
**To Retain An Investment Bank To Explore The Sale Of Delcath**

14.     On January 10, 2006, Mr. Ladd filed a Fifth Amendment to his Schedule 13D indicating that Laddcap had submitted a shareholder proposal for inclusion in Delcath's proxy statement for the annual shareholder meeting on June 13, 2006.  Mr. Ladd's proposal requested a shareholder vote on whether to "recommend that the Company's Board of Directors immediately retain the services of a nationally recognized investment banking and/or merger advisory firm with expertise in the medical device industry to assist the Company in exploring a potential sale to or business combination with a third party to maximize stockholders value."  A true and correct copy of Mr. Ladd's Fifth Amendment to his Schedule 13D is attached hereto as Exhibit 17.

15.     On April 24, 2006, Delcath filed a Schedule 14A Proxy Statement and included Mr. Ladd's requested shareholder proposal.  Delcath also included in the Schedule 14A a statement from its Board opposing Mr. Ladd's proposal because, *inter alia*, "the Board believes that, if the Company obtains premarket approval from the FDA, the value of the Company's technology (and therefore the value of the Company) will be substantially increased beyond what could reasonably be expected to be obtained in a sale of the Company today."  A true and correct copy of the Schedule 14A Proxy Statement filed by Delcath on April 24, 2006 is attached hereto as Exhibit 18.

**Though Not Eligible To Call A Special Shareholder Meeting, The Ladd
Defendants Make Their First Demand For A Special Shareholder Meeting**

16. On April 27, 2006, the Ladd Defendants demanded a special shareholder meeting to vote on three items, including a proposal to "terminate immediately" Delcath's President and CEO. Delcath advised the Ladd Defendants that they were not eligible under Delcath's certificate of incorporation and by-laws to call a special shareholder meeting. True and correct copies of the Ladd Defendants' letter demand, dated April 27, 2006, and Delcath's response, dated May 4, 2006, are attached hereto as Exhibits 19 and 20.

17. On April 28, 2006, Mr. Ladd filed a Sixth Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 10.0% of the outstanding shares of Delcath stock. The Sixth Amendment attached an April 27, 2006 letter in which Mr. Ladd claimed that "Delcath's low enterprise value is reflective of management's and the Board's self-serving policies." A true and correct copy of Mr. Ladd's Sixth Amendment to his Schedule 13D is attached hereto as Exhibit 21.

**The Ladd Defendants Purport To Address Their Eligibility Problems
And Make A Second Demand For A Special Shareholder Meeting**

18. On May 11, 2006, the Ladd Defendants sent a letter indicating that they had taken steps to become eligible to call a special shareholder meeting and again demanded a special meeting to vote on three items, including a proposal to "terminate immediately" Delcath's President and CEO. A true and correct copy of the May 11, 2006 letter is attached hereto as Exhibit 22.

19. On May 19, 2006, Delcath filed a Form 8-K indicating that, at the request of the Ladd Defendants, a special shareholder meeting had been scheduled for August 25, 2006. A true and correct copy of Delcath's Form 8-K, filed May 19, 2006, is attached hereto as Exhibit 23.

20. On May 24, 2006, Mr. Ladd filed a Seventh Amendment to his Schedule 13D indicating that Mr. Ladd had omitted certain sales of Delcath stock in the Sixth Amendment to his Schedule 13D. A true and correct copy of Mr. Ladd's Seventh Amendment to his Schedule 13D is attached hereto as Exhibit 24.

**The Ladd Defendants File Proxy Materials Requesting Shareholders To Vote For Their Proposal To Retain An Investment Bank To Explore The Sale Of The Company**

21. On May 25, 2006, Laddcap filed a Schedule 14A Proxy Solicitation containing a shareholder letter requesting that shareholders eligible to vote at the annual meeting on June 13, 2006 (a) withhold their votes for the re-election of Victor Nevins and Mark Corigliano as directors; and (b) vote in favor of Mr. Ladd's proposal to recommend that the Board immediately retain an investment bank to explore the sale of the Company. A true and correct copy of Laddcap's Schedule 14A Proxy Solicitation, filed May 25, 2006, is attached hereto as Exhibit 25.

22. On May 26, 2006, Laddcap filed a Schedule 14A Preliminary Proxy Statement containing another shareholder letter requesting that shareholders eligible to vote at the annual meeting on June 13, 2006 (a) withhold their votes for the re-election of Victor Nevins and Mark Corigliano as directors; and (b) vote in favor of Mr. Ladd's proposal to recommend that the Board immediately retain an investment bank to explore the sale of the Company. A true and correct copy of Laddcap's Schedule 14A Preliminary Proxy Statement, filed May 26, 2006, is attached hereto as Exhibit 26.

**The Ladd Defendants Continue Their Efforts To Force A Sale Of The Company
By Filing A Lawsuit And Making Their Third Demand For A Special Shareholder Meeting**

23. On June 6, 2006, just one week before the scheduled annual meeting on June 13, 2006, the Laddcap hedge fund commenced suit against Delcath in the Court of Chancery of the State of Delaware relating to supposed "concerns regarding the propriety of certain actions taken by Delcath's officers and directors."  The Laddcap hedge fund subsequently agreed to dismiss the lawsuit with prejudice *after* the annual meeting.  A true and correct copy of Laddcap's Complaint, filed June 6, 2006, is attached hereto as Exhibit 27.

24. On June 6, 2006, the Ladd Defendants made a "new demand . . . to immediately call a special meeting of the shareholders" to vote on six items, including proposals to "remove all of Delcath's directors" and "terminate immediately" Delcath's President and CEO.  A true and correct copy of the June 6, 2006 letter is attached hereto as Exhibit 28.

25. On June 8, 2006, the Ladd Defendants filed a Schedule 14A Preliminary Proxy Statement containing a third shareholder letter requesting that shareholders eligible to vote at the annual meeting on June 13, 2006 (a) withhold their votes for the reelection of Victor Nevins and Mark Corigliano as directors; and (b) vote in favor of Mr. Ladd's proposal to recommend that the Board immediately retain an investment bank to explore the sale of the Company.  A true and correct copy of the Ladd Defendant's Schedule 14A Preliminary Proxy Statement, filed June 8, 2006, is attached hereto as Exhibit 29.

26. On June 8, 2006, Mr. Ladd also filed an Eighth Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 10.4% of the outstanding shares of Delcath stock.  A true and correct copy of Mr. Ladd's Eighth Amended Schedule 13D is attached hereto as Exhibit 30.

**The Ladd Defendants Make Public A Supposedly "Independent" Valuation To Disparage Delcath's Board And Management And Push For A Sale Of The Company**

27.     On June 9, 2006, the Ladd Defendants filed a Schedule 14A Proxy Solicitation (the "Valuation Proxy Solicitation") stating that Laddcap had retained two "investment banking firms" with "decades of experience" who estimated the present value of Delcath at "between $6.65 and $10.23 per share." The valuation, which was included in the Valuation Proxy Solicitation, indicated that Fulcrum Global Partners LLC ("Fulcrum") and Glocap Funding, LLC ("Glocap"), had been retained as "independent third parties." Noting that "the midpoint of this valuation, $8.44 per share, is more than fifty percent (50%) greater than last night's closing price of Delcath stock," the Ladd Defendants asserted that "Delcath's current leadership lacks . . . independent expertise and experience" and urged Delcath shareholders to vote in favor of their proposal to recommend that the Board immediately retain an investment bank to explore the sale of the Company." A true and correct copy of the Valuation Proxy Solicitation is attached hereto as Exhibit 31.

28.     Unbeknownst to Delcath and its shareholders, the two "independent" investment banking firms with "decades of experience," Fulcrum and Glocap, were anything but independent or experienced. For example, John Codling, an individual who is collaborating with Mr. Ladd in his proxy fight, was affiliated with Fulcrum. *See* Fromer Decl. ¶ 7. In addition, Fulcrum had sold its entire research division in December 2005, or seven months prior to when it issued the valuation included in the Valuation Proxy Statement. A true and correct copy of a December 2005 press release relating to the acquisition of Fulcrum's research division is attached hereto as Exhibit 32. On June 6, 2006, one day before Fulcrum issued its valuation of Delcath, the *New York Post* reported that Fulcrum "shut its books and resigned from the National Association of Securities Dealers." A true and correct copy of the June 6, 2006 *New York Post*

10

article entitled "Stock Research Firm Fulcrum Global Partners Shuts Down" is attached hereto as Exhibit 33. According to Glocap's annual report, Glocap was not organized until August 1999. Glocap does not appear to have previously issued a fairness opinion or valuation on a public company on file with the SEC. A true and correct copy of Glocap's 2005 Annual Report is attached hereto as Exhibit 34.

29.     There was no disclosure of the underlying assumptions and projections supplied to or relied upon by Fulcrum and Glocap in making their valuation. The SEC Division of Corporate Finance has made clear that the inclusion of valuations in proxy soliciting materials "is only appropriate and consonant with Rule 14a-9 under the Securities Exchange Act of 1934" if the valuations are "accompanied by disclosure which facilitates shareholders' understanding of the basis for and limitations on the projected realizable values" and warned that "where the valuations are so qualified and subject to such material limitations and contingencies, inclusion in proxy soliciting material of specific realizable values may be unreasonable." A true and correct copy of the SEC's Interpretative Release Relating to Proxy Rules, dated May 23, 1980, is attached hereto as Exhibit 35.

30.     In the three business days following the June 9, 2006 filing of the Valuation Proxy Solicitation indicting Delcath's management and Board for failing to achieve shareholder value consistent with the "independent" valuation provided by the Ladd Defendants' investment banking firms, the price of Delcath stock dropped more than 15%. A true and correct copy of a Historical Prices Chart for Delcath's stock from June 9, 2006 to June 14, 2006, is attached hereto as Exhibit 36. Between June 9, 2006 and June 13, 2006, the Ladd Defendants acquired for the Laddcap hedge fund 63,700 shares of Delcath stock. True and correct copies of Form 4s filed by Mr. Ladd on June 12, 2006 and June 14, 2006 are attached hereto as Exhibits 37 and 38.

31.     On June 13, 2006, Delcath announced that Delcath's shareholders at the annual shareholder meeting had approved Mr. Ladd's proposal to recommend that the Board immediately retain an investment bank to explore the sale of the Company. A true and correct copy of Delcath's Press Release, dated June 13, 2006, is attached hereto as Exhibit 39.

32.     On June 14, 2006, Mr. Ladd filed a Ninth Amendment to his Schedule 13D indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 10.8% of the outstanding shares of Delcath stock. A true and correct copy of Mr. Ladd's Ninth Amendment to his Schedule 13D is attached hereto as Exhibit 40.

**Delcath's Board Implements A Number Of Initiatives
In The Wake Of The Annual Shareholder Meeting, Including
An Initiative To Add Two New Independent Directors**

33.     On June 27, 2006, Delcath issued a letter outlining a number of initiatives Delcath's Board had decided to implement in the wake of the annual shareholder meeting. The initiatives included adding two new independent directors to the Board by the end of 2006 and expanding Delcath's investor and public relations campaign to introduce the Delcath story to new institutional investors and major broadcast and print media. Though the letter indicated that Delcath also had commenced discussions with investment banking firms regarding a possible engagement to assist the Board with its continuing evaluation of all available options, Delcath's Board reiterated that "a sale of the Company prior to the completion of [the] pivotal Phase III trial is premature and would significantly limit the long-term value shareholders could realize if, as we expect, FDA approval of the Delcath system is granted." A true and correct copy of the July 27, 2006 letter is attached hereto as Exhibit 41.

**Delcath Is Selected To Join The Russell Microcap Index**

34.     On July 5, 2006, Delcath announced that it had been selected to join the Russell Microcap Index.  As Delcath explained in its press release, "Russell indexes are widely used by investment managers and institutional investors for index funds and as benchmarks for both passive and active investment strategies."  Delcath's President and CEO, M.S. Koly, commented that the selection of Delcath for the Russell Microcap Index "reflects the strong progress we have achieved in our Phase III clinical trial for the treatment of metastatic melanoma in the liver."  A true and correct copy of Delcath's Press Release, dated July 5, 2006, is attached hereto as Exhibit 42.

**The Ladd Defendants, In A 180° Turnabout, Indicate Their Support For Delcath's Management And Agree To Withdraw Their Demand For A Special Shareholder Meeting**

35.     Following the annual shareholder meeting, Mr. Ladd contacted M.S. Koly, Delcath's President and CEO.  *See* Declaration of M.S. Koly, executed on August 4, 2006 ("Koly Decl."), ¶ 5.  Over the course of approximately one to two weeks, Mr. Ladd and Mr. Koly had a number of telephone calls.  *Id.*  During the calls, Mr. Ladd indicated to Mr. Koly that he no longer wanted to remove Mr. Koly or Samuel Herschkowitz, M.D., Chairman of Delcath's Board, and was satisfied with the Company's business plan.  *Id.* ¶ 6.  After the announcement of the Board's initiative to add two new independent directors,  Mr. Ladd agreed to (1) withdraw demand for a special shareholder meeting to vote on proposals to remove Delcath's directors and terminate Delcath's President and CEO; (2) dismiss the Laddcap hedge fund's lawsuit against Delcath; (3) send to the Company the names and/or resumes of candidates Mr. Ladd wished to be considered for the two new director positions; and (4) provide suggested investment banks for Delcath to contact.  *Id.* ¶¶ 7-14.  In the spirit of cooperation, Mr. Koly sent to Mr. Ladd for his review the resumes of potential candidates for the new director positions.  *Id.* ¶ 14.  In addition,

Mr. Koly sent to Mr. Ladd for his review and comment a draft press release regarding the agreement reached between the parties, and Mr. Ladd likewise provided to Mr. Koly for his review and comment a draft of a Schedule 13D filing announcing the agreement reached between the parties. *Id.*

36.  On July 11, 2006, Delcath issued its press release announcing the Ladd Defendants' agreement to withdraw their demand for a special shareholder meeting and dismiss the Laddcap hedge fund's lawsuit against Delcath in Delaware. Delcath's President and CEO, M.S. Koly, commented that Delcath was "pleased to report this breakthrough event for our shareholders" and that Delcath "look[ed] forward to moving on and focusing on maximizing shareholder value over the long term." A true and correct copy of Delcath's Press Release, dated July 11, 2006, is attached hereto as Exhibit 43.

37.  On July 11, 2006, Mr. Ladd filed a Tenth Amendment to his Schedule 13D likewise indicating that the Ladd Defendants had reached an agreement to withdraw their demand for a special shareholder meeting and dismiss the lawsuit in the Delaware state court that the Laddcap hedge fund had brought against Delcath just prior to the annual shareholder meeting in June 2006: "Effective July 10, 2006, Laddcap entered into a written agreement . . . with the Company in which Laddcap and the Company agreed that: (i) Laddcap would withdraw its requests for a special meeting of Delcath's stockholders pursuant to Laddcap's letters dated May 11, 2006 and June 6, 2006, and (ii) Laddcap and the Company would immediately dismiss without prejudice the Delaware Stockholder Litigation." A true and correct copy of Mr. Ladd's Tenth Amendment to his Schedule 13D is attached hereto as Exhibit 44.

**Delcath Reports Positive Business Developments In Quarterly Update**

38.     On July 17, 2006, Delcath issued its quarterly shareholder update.  The update reported on a number of positive developments, including the successful enrollment of new patients for clinical trials and the approval, pending no objection from outside parties, of Delcath's application for a patent relating to the Company's balloon catheter which is used to restrict blood flow from the liver to the heart.  The update also reported that Delcath's Board remained on schedule to fill the two new independent director positions by the end of 2006 and was continuing to have discussions with several investment banking firms regarding their possible engagement to assist the Board in evaluating all available options.  A true and correct copy of Delcath's quarterly shareholder update is attached hereto as Exhibit 45.

**The Ladd Defendants Suddenly Reverse Course And Take Steps**
**To Initiate A Consent Solicitation To Remove Delcath's Directors**

39.     On July 27, 2006, just weeks after agreeing to withdraw their demand for a special shareholder meeting to vote on a proposal to remove all of Delcath's directors, the Ladd Defendants issued a written consent to action ("Consent to Action") to initiate the process for commencing a consent solicitation to remove Delcath's directors and replace them with the Ladd Defendants' own slate of directors.  The Consent to Action identifies the following actions for which the Ladd Defendants will be soliciting shareholder consents: (1) The removal without cause of M.S. Koly, Samuel Herschkowitz, M.D., Mark A. Corigliano, Daniel Isdaner and Victor Nevins as directors of the Company and any other person or persons (other than the persons elected pursuant to this proposed action by written consent) elected or appointed to the Board of Directors of the Company prior to the effectiveness of these proposals; (2) The election of the following five persons as directors of the Company to fill the vacancies resulting from proposal 1:  Jonathan A. Foltz, Michael Karpf, M.D., Robert B. Ladd, Paul William Frederick

15

Nicholls and Fred S. Zeidman; and (3) The repeal of each provision of the Company's Bylaws and amendments of the Bylaws that are adopted after December 31, 2005 and before the effectiveness of the foregoing two proposals. A true and correct copy of the Ladd Defendants' Consent to Action, issued July 27, 2006, is attached hereto as Exhibit 46.

40. Just hours before the Ladd Defendants issued their Consent to Action on July 27, 2006, Jonathan A. Foltz, one of the individuals identified in the Consent to Action as part of the Ladd Defendants' slate of directors, suddenly resigned as a consultant to Delcath. Koly Decl. ¶ 15. Mr. Foltz had been a Delcath employee and consultant for 14 years, was involved in almost all aspects of Delcath's operations, and had access to company trade secrets and other confidential and proprietary information. *Id.*

41. On July 28, 2006, Mr. Ladd filed an Eleventh Amendment to his Schedule 13D describing the Consent to Action and indicating that Laddcap had acquired additional Delcath stock and that he had increased his beneficial ownership to 11.1% of the outstanding shares of Delcath stock. A true and correct copy of Mr. Ladd's Eleventh Amendment to his Schedule 13D is attached hereto as Exhibit 47.

**The Ladd Defendants' Director Nominees**

42. On August 1, 2006, the Ladd Defendants filed a Schedule 14A Preliminary Proxy Statement ("Preliminary Consent Solicitation") for their proposed consent solicitation to remove Delcath's directors and replace them with the Ladd Defendants' own slate of directors. The Preliminary Consent Solicitation purports to include "the material occupations, positions, officers or employment for the past five years" of each of the Ladd Defendants' director nominees. A true and correct copy of the Preliminary Consent Solicitation is attached hereto as Exhibit 48.

43.     In an August 3, 2006 letter to Delcath shareholders, the Ladd Defendants contend that their each of their director nominees has the "necessary skills, resources and relevant experience."  The Ladd Defendants' director nominees are Paul William Frederick Nicholls, Fred S. Zeidman, Michael Karpf, M.D., Robert B. Ladd and Jonathan A. Foltz.  A true and correct copy of the Ladd Defendants' Schedule 14A, filed August 3, 2006, is attached hereto as Exhibit 49.

44.     The Ladd Defendants have not disclosed that Paul William Frederick Nicholls filed for Chapter 7 personal bankruptcy in 2002.  Mr. Nicholls' bankruptcy petition indicated, *inter alia*, that Mr. Nicholls had amassed debt of $105,349.75 on 9 credit cards, including credit cards issued by Bloomingdale's, Bergdorf Goodman and Macy's.  Mr. Nicholls' bankruptcy petition also indicated that Mr. Nicholls paid monthly rent of $2500.  However, Mr. Nicholls' bankruptcy petition did not report that he resided in a Manhattan apartment building owned by his wife.  The apartment building owned by Mr. Nicholls' wife was appraised in 2004 at $3.6 million.  True and correct copies of Mr. Nicholls' bankruptcy petition and a New York City Property Assessment Roll for the apartment building owned by Mr. Nicholls' wife are attached hereto as Exhibits 50 and 51.

45.     The Ladd Defendants have not disclosed that Fred S. Zeidman served on the Audit Committee of Seitel Corporation during each of the seven fiscal quarters for which financial results were restated because of premature revenue recognition.  The restatement resulted in a reduction of more than $68 million in revenues.  In 2001, Seitel stock peaked at $22.72. Following Seitel's announcement in April 2002 that it would be restating earnings, Seitel's stock dropped to a low of $0.49 in the fourth quarter of 2002.  In March 2003, Seitel's stock was delisted from trading on the New York Stock Exchange.  In July 2003, Seitel went into

bankruptcy. Mr. Zeidman was named as a defendant in seven shareholder derivative suits relating to the accounting issues that led to the restatement. True and correct copies of relevant excerpts from Seitel Corporation's Form 10-Ks, filed April 1, 2002 and March 31, 2003, Schedule 14A Proxy Statements, filed September 19, 2000 and April 30, 2001, and Form 8-K, filed July 22, 2003, are attached hereto as Exhibits 52-56.

46. The Ladd Defendants also have not disclosed that Mr. Zeidman is Chairman of the Board of Directors of Emerge Capital Corporation, a company that has twice in 2006 been forced to admit that it has significant deficiencies in its accounting processes constituting material weaknesses as defined by the Public Company Accounting Oversight Board. Those weaknesses resulted in the company improperly accounting for financial transactions on the books of a predecessor company with whom it merged in August 2005, and forced the combined company in May 2006 to restate its consolidated financial statements for fiscal year 2004 and interim periods in 2004 and 2005. The material weaknesses in the company's accounting procedures were exacerbated because a full time CFO was not hired until June 2006 – eleven months after the merger. True and correct copies of Emerge Capital Corporation's Form 10-QSBs, filed May 22, 2006 and August 2, 2006, are attached hereto as Exhibits 57-58.

47. The Ladd Defendants have not disclosed the financial difficulties at the UCLA hospital system during the tenure of Michael Karpf, M.D., as Vice Provost from 1996 to 2003. Between 1998 and 2000, the net income of the UCLA hospital system dropped from $51 million to less than $5 million. In 2002, despite being the largest medical system in the University of California chain, UCLA reported net income of only $7.2 million as compared with $36.5 million for Irvine, $35.3 million for Davis, $30.3 million for San Diego and $29.0 million for San Francisco. By the end of 2002, the UCLA hospital system had only $20,000 in cash. In

October 2002, The Hunter Group was hired to conduct a review of the UCLA hospital system. In March 2003, UCLA announced that it had received a preliminary report from The Hunter Group recommending that the UCLA hospital system overhaul its unprofitable clinics and reduce staff by 475 positions. By October 2003, Dr. Karpf had left the UCLA hospital system for the University of Kentucky. True and correct copies of newspaper articles concerning the UCLA hospital system are attached hereto as Exhibits 59-61.

48. The Ladd Defendants have not disclosed the below-market performance of the Laddcap hedge fund run by Robert B. Ladd. The annual return in 2004 for the Laddcap hedge fund was 0.7%, whereas the annual return in 2004 for the S&P SmallCap 600 was 21.59%. The annual return in 2005 for the Laddcap hedge fund was –1.7%, whereas the annual return in 2005 for the S&P SmallCap 600 was 6.65%. A true and correct copy of an April 2006 Update from Laddcap Value Partners LP is attached hereto as Exhibit 6. True and correct copies of charts concerning the performance for the S&P SmallCap 600 in 2004 and 2005 are attached hereto as Exhibits 7 and 8.

49. The Ladd Defendants have failed to disclose what arrangements they may have with Jonathan A. Foltz with respect to his future employment at the Company and also what non-public company information they may have obtained from Mr. Foltz who, prior to his sudden resignation on July 27, 2006, was involved in almost all aspects of Delcath's operations and had access to company trade secrets and other confidential and proprietary information. *See* Koly Decl. ¶ 15. On August 4, 2006, the Superior Court for the State of Connecticut issued an order enjoining Mr. Foltz from further "disclosing, disseminating and/or using" any non-public company information. On August 7, 2006, pursuant to that order, a court-appointed custodian, a

computer expert and a Connecticut Marshall arrived at the home of Mr. Foltz to temporarily seize his computers so that copies of certain material could be made. True and correct copies of the Verified Complaint, Rule 4-5 Affidavit of M.S. Koly, and Order for an Immediate Ex Parte Temporary Injunction in *Delcath Systems, Inc. v. Jonathan Foltz* are attached hereto as Exhibits 62-64.

I hereby declare under the penalty of perjury that the foregoing is true and correct. Executed on August 8, 2006.

                                                 /s/ Oliver M. Olanoff
                                                 Oliver M. Olanoff