# Exhibit 27

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| LADDCAP VALUE PARTNERS LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| DELCATH SYSTEMS, INC., a Delaware | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiff Laddcap Value Partners LP ("Laddcap"), upon knowledge as to itself and upon information and belief as to all other matters, alleges for its Verified Complaint as follows:

### Nature of the Action

1.    This is an action brought pursuant to Section 220(c) of the General Corporation Law of the State of Delaware ("Section 220") to compel defendant Delcath Systems, Inc. ("Delcath") to make certain of its books and records available for inspection and copying by Laddcap in its capacity as a stockholder of Delcath.

### The Parties

2.    Plaintiff Laddcap is the largest stockholder of Delcath. Laddcap currently owns over 10% of the currently issued and outstanding shares of Delcath.

3.    Defendant Delcath is a publicly-traded Delaware corporation with its principal executive offices located at 1100 Summer Street, Stamford, Connecticut 06905.

### Background

4.    Delcath was founded in 1988. Since that time, Delcath has existed as a development stage company. Delcath is engaged in the research and development of

RLF1-3020586-3

technologies to allow for the more effective use of intravenous chemotherapy to treat liver cancer. The "Delcath System" of treatment consists of the use of a series of devices intended to temporarily isolate the liver from the body's general circulatory system during chemotherapy in order to reduce the exposure of other body organs to chemicals used in chemotherapy. Because the Delcath System will limit the potential harm to other organs from chemotherapy, it is thought that the use of the Delcath System will make safer the use of larger and more effective doses of chemotherapy chemicals in the treatment of liver cancer. The Delcath System has not been approved by the United States Food and Drug Administration (the "FDA"). FDA pre-market approval is necessary before the Delcath System can be marketed in the United States. Delcath is currently engaged in FDA Phase III clinical trials in order to obtain FDA pre-market approval, with the goal of eventually marketing the Delcath System in the United States and possibly in foreign countries.

5.    Delcath has operated at a loss since its inception. From August 1988 to March 31, 2006, Delcath reported cumulative operating losses of in excess of $26.8 million. Delcath reported an operating loss of over $1.3 million during the first quarter of this year.

6.    Laddcap has certain disagreements with Delcath's incumbent management regarding the direction of Delcath's business. In addition, Laddcap has concerns regarding the propriety of certain actions taken by Delcath's officers and directors. Laddcap is currently engaged in an active proxy contest with Delcath's management in advance of Delcath's annual meeting of stockholders, which is currently scheduled to take place on June 13, 2006.

## The Corigliano Stock Sale And The First Demand

7.    On March 30, 2006, Mark Corigliano, who is an outside director of Delcath, sold 11,500 shares of Delcath common stock (the "Corigliano Stock Sale"). Several days later, on

April 3, 2006, Delcath filed its Annual Report on Form 10-KSB with the Securities and Exchange Commission (the "Annual Report"). The Annual Report disclosed for the first time that, at some unspecified prior time, Delcath's first Phase III clinical trials of the Delcath System for use with the chemotherapy agent doxorubicin, which had been progressing at the Sydney Melanoma Unit, had been terminated (the "Phase III Termination"). Delcath had invested years of work into the Phase III clinical trials in Sydney prior to the Phase III Termination. In the days following the initial disclosure of the Phase III Termination, the trading volume in Delcath stock increased and the stock price dropped by more than 15%. In particular, Delcath's stock dropped from a closing price of $4.57 per share on April 3 to a price of $3.81 on April 11, 2006.

8.    On April 17, 2006, Laddcap exercised its rights as a stockholder of Delcath by serving a demand, pursuant to Section 220, to inspect and copy certain books and records of Delcath relating to the Corigliano Stock Sale (the "First Demand"). A true and correct copy of the First Demand is attached hereto as Exhibit 1. Among the particular books and records requested were Delcath's securities trading policy for officers and directors, documents relating to the Phase III Termination, and all documents relating to any response by Delcath's officers or directors to the Corigliano Stock Sale.

9.    By letter dated April 24, 2006, Delcath indicated it would provide responsive documents relating to the Corigliano Stock Sale. A true and correct copy of this letter is attached hereto as Exhibit 2. Laddcap subsequently entered into a confidentiality agreement with Delcath, and Delcath produced some documents. To date, Delcath's total production in response to the First Demand comprises fifty-four (54) pages. The produced documents concern the Phase III Termination. None of the produced documents concerns the Corigliano Stock Sale, Delcath's trading policies, or any response by Delcath to the Corigliano Stock Sale. A large

portion of the produced documents are heavily redacted minutes of board meetings from well before the time period pertinent to the Corigliano Stock Sale. The remainder consists of correspondence of a technical medical nature from 2002 to 2005, none of which in any way concerns the Corigliano Stock Sale.

10.    The board minutes produced do show that Corigliano knew about the Phase III Termination before the Corigliano Stock Sale. Corigliano's decision to sell Delcath shares after learning of the Phase III Termination, and shortly before the first public announcement of the same, causes Laddcap to reasonably suspect wrongdoing in connection with the Corigliano Stock Sale.

11.    Laddcap's suspicions of wrongdoing are buttressed by the fact that apparently no one at Delcath has ever engaged in any deliberations regarding the propriety of the Corigliano Stock Sale. If there are any documents evidencing such deliberations, they have not been provided to Laddcap, despite Delcath's statement that any such documents would be produced.

### The Rolls-Royce Club Litigation And The Second Demand

12.    In August 2005, a lawsuit was initiated purportedly on behalf of Delcath in the federal district court for Connecticut, asserting various claims arising out of a purportedly untrue statement that was made and re-published to members of the Rolls-Royce Owners Club (the "Rolls-Royce Club Litigation"). M.S. Koly, who is a Delcath director and who also is Delcath's Chief Executive Officer and President, is a member of and a Vice President of the Rolls-Royce Owners Club (the "Club") and is a named co-plaintiff in the litigation along with Delcath. Koly purports to bring his claims "individually and as a director of Delcath Systems, Inc." The defendant in that suit is Elizabeth L. Enney, who is a member of the Club and an Activities Chairman of the Club. A true and correct copy of the operative complaint in the Rolls-Royce

-4-

Litigation, including its exhibits, is attached hereto as Exhibit 3.

13.     The event giving rise to the claims in the Rolls-Royce Club Litigation was an e-mail transmission from defendant Enney to the Club's Regional and Affiliate Chairman concerning alleged improprieties by Mr. Koly and Delcath director Mark Corigliano (who is also a member and past Treasurer of the Club), including violations of the Club's disclosure policy and conflicts of interest policy.  A true and correct copy of this e-mail is attached hereto as Exhibit 3 at Exhibit C.

14.     The e-mail contains no statements (false or otherwise) that could possibly harm Delcath.  The e-mail's sole references to Delcath are to explain Koly's and Corigliano's past business relationship outside of the Club.  The e-mail does, however, suggest that Mr. Koly and Mr. Corigliano engaged in improprieties with respect to their Club activities.

15.     The Rolls-Royce Litigation appears to be a personal litigation brought solely to vindicate Mr. Koly's and Mr. Corigliano's personal reputations within the Club.  Indeed, an e-mail attached to the complaint in the Rolls-Royce Club Litigation refers to the purportedly actionable e-mail message as mere "club politics" being perpetuated by a "dissident group" attempting to seize control of the Club.  *See* Ex. 3 at Exhibit E.

16.     On May 17, 2006, Laddcap exercised its rights as a stockholder of Delcath by serving a demand, pursuant to Section 220, to inspect and copy certain books and records of Delcath relating to the Rolls-Royce Club Litigation (the "Second Demand").  A true and correct copy of the Second Demand is attached hereto as Exhibit 4.  By letter dated May 24, 2006, Delcath stated that it would not provide any documents regarding the Rolls-Royce Club Litigation.  A true and correct copy of this letter is attached hereto as Exhibit 5.  Delcath claimed that Laddcap was not entitled to books and records because Laddcap's purpose was to "harass

Delcath." Ex. 5 at 2.

17.    To date, the parties to the Rolls-Royce Club Litigation have engaged in substantial motion practice, including making over 40 filings with the federal district court in Connecticut. Upon information and belief, Delcath has paid or incurred expenses in connection with the Rolls-Royce Club Litigation. Any expenditure of Delcath's funds in the pursuit of a personal tort action brought to benefit Messrs. Koly and Corigliano is manifestly improper. Laddcap is entitled to books and records regarding the Rolls-Royce Club Litigation to determine if Delcath's name or resources are being used solely to vindicate the reputations of Messrs. Koly and Corigliano within the insular Club.

18.    The existence of the Rolls-Royce Club Litigation has never been disclosed by Delcath to its stockholders. Delcath's public filings for the pertinent time period affirmatively state that Delcath is not a party to any material litigation. The absolute lack of any disclosures concerning litigation brought for the purported benefit of Delcath is disconcerting. Delcath's refusal to provide any documents in response to an inquiry about the Rolls-Royce Club Litigation is similarly troubling. Laddcap reasonably suspects wrongdoing in connection with the Rolls-Royce Club Litigation.

## COUNT I

19.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

20.    The First Demand and Second Demand both complied with the requirements of Section 220 with respect to the form and manner of making a demand for examination of the books and records of Delcath.

21.    Laddcap's purposes for requesting the books and records of Delcath are proper

purposes, reasonably related to Laddcap's interests as a stockholder of Delcath. In particular, Laddcap has a credible basis to suspect possible wrongdoing in connection with the Corigliano Stock Sale and the Rolls-Royce Club Litigation.

22. Delcath has failed to provide Laddcap with important books and records regarding the Corigliano Stock Sale as requested in the First Demand.

23. Delcath has refused to provide Laddcap with any books and records at all regarding the Rolls-Royce Club Litigation as requested in the Second Demand.

24. For the foregoing reasons, Laddcap is entitled to receive copies and/or inspect with his attorney and make copies of the documents described in the First Demand and the Second Demand.

25. Delcath has forced Laddcap to initiate litigation to vindicate its clear statutory rights under Section 220.

26. Laddcap has no adequate remedy at law.

WHEREFORE, Laddcap respectfully requests that this Court enter an order pursuant to Section 220:

        a.     Finding that the First Demand and the Second Demand were properly made by Laddcap as a stockholder of Delcath;

        b.     Summarily directing Delcath to permit Laddcap to inspect and make copies of the information requested concerning the Corigliano Stock Sale and the Rolls-Royce Club Litigation;

        c.     Awarding Laddcap its costs, fees and expenses, including reasonable attorneys' fees, incurred in the prosecution of this action; and

        d.     Granting Laddcap such other and further relief as the Court deems just and proper.

Of Counsel:

Lowenstein Sandler, P.C.
65 Livingston Ave.
Roseland, New Jersey 07068
Tel: (973) 597-2424
Fax: (973) 597-2425

Dated: June 6, 2006

_K. Tyler O'Connell_
Lisa A. Schmidt (#3019)
K. Tyler O'Connell (#4514)
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701
  Attorneys for Plaintiff

RLF1-3020586-3

## VERIFICATION

I, Robert Ladd, the managing member of Laddcap Value Associates LLC, the general partner of Laddcap Value Partners LP, declare under penalty of perjury that I have read the foregoing Verified Complaint, and that the facts alleged therein are true and correct to the best of my own personal knowledge, except for those matters alleged to be on information and belief, and as to such matters, I believe them to be true and correct.

_____
Robert Ladd

STATE OF NEW YORK    )
                     )
COUNTY OF NEW YORK   )

Subscribed and sworn to before me this 6TH day of June, 2006.

_____
Notary Public

EDWARD D. MAJEWSKI
Notary Public, State of New York
No. 01MA6019374
Qualified in Richmond County
Commission Expires Feb 8, 2007