# Exhibit 62

RETURN DATE: August 29, 2006
DOCKET NO. _____

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
DELCATH SYSTEMS, INC.                               :      SUPERIOR COURT
                                                    :
                        Plaintiff,                  :
                                                    :      JUDICIAL DISTRICT OF
            v.                                      :      STAMFORD/NORWALK
                                                    :
JONATHAN FOLTZ,                                     :      AT STAMFORD
                                                    :
                        Defendant.                  :      AUGUST 4, 2006
                                                    :
                                                    :      VERIFIED COMPLAINT
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Plaintiff Delcath Systems, Inc. ("Delcath" or "plaintiff"), by its undersigned attorneys,

for its complaint against defendant Jonathan Foltz ("Foltz"), alleges as follows:

## INTRODUCTION

1.      This suit arises out of an ongoing attempt by Foltz to misappropriate and misuse

Delcath's intellectual property, including its trade secrets and valuable confidential and

proprietary business information, for his own benefit.

2.      Delcath currently is developing a drug delivery system capable of introducing and

removing, high dose chemotherapy agents to a diseased organ system while greatly inhibiting

their entry into the general circulation system.  Delcath anticipates that this unique and

revolutionary system will provide a meaningful, successful treatment for certain types of cancer,

including liver cancer.

3.      During his 14-year tenure with Delcath, Foltz an employee, as well as a consultant, and was involved in many aspect of the company's operations.

4.      After being granted "fast track" status in April, 2005 by the Food and Drug Administration ("FDA") Delcath was allowed to seek a Special Protocol Assessment ("SPA") from the FDA which allows Delcath to obtain FDA approval on an expedited basis provided the SPA requirements are met.  Delcath commenced this testing process on March 1, 2006, and has achieved positive and encouraging results from the tests to date.

5.      In developing this revolutionary drug delivery system, Delcath has worked closely with a number of companies that provided Delcath with components that are essential to the system's functionality.  For example, Delcath obtains the filters that are integral to its drug delivery system from a single supplier.

6.      In light of the critical and highly sensitive nature of Delcath's relationships with companies such as its filter supplier, Delcath vested Foltz (along with his numerous other varied responsibilities) with the responsibility and authority to interface with and foster Delcath's relationship with these companies.  While senior management always closely supervised and controlled all of Foltz's activities, in order to best fulfill this role, Delcath entrusted Foltz with its company trade secrets and valuable confidential and proprietary business information.  In fact, Foltz was privy and had access to *all* of Delcath's records, documents, and information.

7.      Foltz was also responsible for negotiating and entering into confidentiality agreements with each of the vendors and testing sites with which Delcath maintained a

2

relationship. As a result, Foltz was familiar with the contents of these confidentiality agreements, and knew and understood the importance Delcath placed on preserving the highly sensitive and confidential nature of its trade secrets and other information.

8.    Foltz resigned from Delcath with no prior announcement or notice on Wednesday, July 26, 2006. Delcath has since learned that prior to leaving Delcath, Foltz misappropriated valuable trade secrets and confidential and proprietary information that belong to Delcath, as well as engaged in various other deceptive and unfair business practices for Foltz's personal benefit. Foltz's misconduct continues to the present time.

## THE PARTIES

9.    Plaintiff, Delcath, is, and at all times material to this Complaint has been, a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business in Stamford, Connecticut.

10.    Plaintiff is informed and believes that defendant, Foltz, is an individual residing at 80 Ridgefield Road, Wilton, Connecticut, 06897. Foltz was in Delcath's employ for approximately 14 years until his abrupt resignation on July 26, 2006.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action, which alleges claims of, *inter alia*, misappropriation of trade secrets in violation of the Connecticut Uniform Trade Secrets Act ("CUTSA") and Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to Conn. Gen. Stat.§35-50 and 42a-110, *et seq.*

3

12.    This Court has personal jurisdiction over Foltz because he is a resident of Connecticut. Additionally, Foltz transacted business in the state of Connecticut in that he is a former employee of Delcath and worked and resided in Connecticut during the time of his employment.

13.    Venue is proper in this judicial district pursuant to Conn. Gen. Stat. § 51-345(d) because Delcath has its primary place of business in the judicial district of Stamford/Norwalk.

## FACTUAL BACKGROUND

14.    Delcath is dedicated to establishing its revolutionary cancer treatment system as the standard technique for delivering chemotherapy agents to the liver. The company has also undertaken extensive efforts to expand its treatment system so that it may be used in the treatment of other liver diseases and of cancers of other bodily organs and areas.

15.    In early 2006, the FDA awarded Delcath an SPA in connection with its drug delivery system. In connection with that grant, the FDA approved a testing protocol to determine whether patients using the Delcath system experience a reduction in tumor burden or zero progression of a tumor for a longer period of time than those receiving the best alternative care.

16.    Delcath commenced testing under the SPA at the National Cancer Institute on March 1, 2006. The company is currently in the third phase of these clinical trials, which phase includes patient testing, data preparation, statistical analysis, and regulatory documents, all of

4

which are necessary to obtain approval for commercial sale of the Delcath system in the United States.

17.    In addition to these clinical patient trials, Delcath focused on a number of other initiatives to expand and enhance its technologies and operations. For example, Delcath conducted and continues to conduct substantial research concerning technologies that may enable the filters used in the drug delivery system to be produced at a lower cost. The filters that Delcath currently uses to detoxify blood within the system comprise significant portion of the cost of the system, and are currently only available to Delcath through a single supplier. The acquisition and use of these filters is confidential, proprietary, and trade secret information, the details of which are known by Foltz.

18.    Delcath conducted extensive research towards its goal of expanding its product offerings to include systems for administering chemotherapy agents in parts of the body other than the liver. Early studies indicate that the same principles employed in liver isolation may be applied to other organs. Specifically, by monitoring the catheter employed in the system, including the spacing, size and number of the balloons, the Delcath system initially may be adapted for use in treatment of cancers in other areas of the body, including the limbs, kidneys, lungs, and other organs of the abdominal cavity.

19.    While senior management always closely supervised and controlled all of Foltz's activities, Foltz's responsibilities encompassed all aspects of Delcath's business, including, but not limited to, each of the operations describe in paragraphs 15 through 17, *supra*. In order to

5

fulfill these responsibilities, Foltz was given *carte blanche* to all company trade secrets,

proprietary and confidential information, documents, and records. His myriad responsibilities

included:

- Working side-by-side with Delcath's team of inventors to further develop, enhance, and improve upon Delcath's existing medical technologies and products, and to develop entirely new technologies and products;

- Representing Delcath in meetings with company patent counsel in connection with Delcath's technologies;

- Visiting and meeting with medical and scientific technicians at the various clinical sites where Delcath products are tested, including those in which Delcath's drug delivery system testing is currently underway;

- Understanding and developing the various protocols for controlling and measuring the product testing, which forms the lifeblood of a development stage company such as Delcath;

- Working side-by-side with other Delcath developers to enhance the ability of filters within the Delcath delivery system to remove chemotherapy agents from the body;

- Negotiating on Delcath's behalf confidentiality agreements entered into with the company's clients; and

- Acquiring access to all of Delcath's trade secrets, including the entirety of plaintiff's medical trials and tests, including the SPA, its sole supplier relationships, its communications with the FDA, communications and negotiations with all third parties, including corporate transactions and medical and clinical agreements.

20.    Throughout his employment, Foltz was provided and had access to virtually all of

Delcath's non-public, confidential, proprietary, and trade secret business data and information.

Without limiting the generality of the foregoing, the information Foltz had access to includes

6

trade secrets, business plans, product development plans, FDA approval plans, the status of

pending FDA approvals, research, clinical trials, data and tests, attorney client privileged

information related to current and future patent information and plans, client information, vendor

information and component specifications, and Delcath's drug delivery system which is currently

under development (the "Confidential Information").

21.     Laddcap Value Partners LP, Laddcap Value Advisors LLC, and Laddcap Value

Associates LLC (collectively, "Laddcap") are a group of affiliated investment vehicles governed

by the laws of Delaware with their principal place of business in New York.  Laddcap has been

steadily purchasing shares of Delcath's stock and currently holds over 11 percent of Delcath's

outstanding shares of stock, according to Laddcap's Schedule 14A filed with the SEC on August

1, 2006 (the "Consent Solicitation").

22.     Based upon various communications, correspondence and Laddcap's SEC filings,

most recently the Consent Solicitation, Laddcap has recently been attempting to gain corporate

control of Delcath.

23.     Upon information and belief, Foltz has been improperly and surreptitiously

divulging Delcath's Confidential Information to Laddcap, including information regarding the

SPA.  In fact, Laddcap recently announced in its Consent Solicitation its intent to install Foltz as

a member of the Delcath board of directors.  This disclosure indicates that Foltz and Laddcap

have been working together on the corporate takeover for a substantial period of time.

7

24.     Certain statements in the Consent Solicitation confirm this belief, and further confirm that Foltz has actually been sharing Delcath's trade secrets with Laddcap in an effort to effectuate the corporate takeover. It is clear that Foltz shared with Laddcap – which Laddcap subsequently disclosed *to the public* in the Consent Solicitation – the following trade secret information:

(a)     Delcath is collaborating with a filter expert to improve and customize the filters currently used in the Delcath system, and to develop filter variations to address alternative uses of Delcath's device; and

(b)     Delcath is exploring the feasibility of using the Delcath system towards the treatment of Hepatitis C.

25.     Just prior to his abrupt resignation, Foltz appeared to step up his efforts to further accumulate and misappropriate Delcath's trade secrets. Foltz's actions included:

(a)     The day before he resigned, Foltz traveled to and met with plaintiff's intellectual property attorneys to discuss plaintiff's current and future affairs;

(b)     On the train home from plaintiff's attorneys, Foltz repeatedly excused himself and left the side of his co-worker and took cellular phone calls in private;

(c)     Upon his return to plaintiff's offices, Foltz obliterated various of Delcath's electronic files including his electronic communications.

26.     Based on these actions, on July 31, 2006, Delcath's attorneys performed a computer search which revealed that Foltz began his own Limited Liability Company less than

8



two months ago. The title of this company is unknown but state records indicate its business address is the same as Foltz's home address. Foltz is listed as the sole member, manager and partner.

27.    Thus, in addition to essentially selling Delcath's trade secrets to a dissident shareholder (Laddcap) for a potential board seat, Foltz's recent creation of his own company may indicate that Foltz is creating and/or arming a Delcath competitor using Delcath's own Confidential Information.

28.    Plaintiff has acted reasonably and diligently to keep secret and confidential its Confidential Information, because it is economically valuable and derives economic value from not being known to Plaintiff's competitors. Indeed, Foltz is well aware of these efforts as he himself participated the negotiation and execution of a number of confidentiality agreements with third parties that worked with Delcath.

29.    In light of the forgoing, it is vital that the true nature and extent of Foltz's misappropriation and deceptive acts be discovered. Based on the review of Foltz's computer by Delcath employees, Foltz has already surreptitiously and suspiciously deleted e-mails and computer files on Delcath's computer, it is highly probable that Foltz will destroy -- or perhaps already has destroyed -- other evidence of his improper conduct. As such, Delcath requests that this Court permit the immediate copying of the hard drive and other information on Foltz's home computer(s) to preserve the files, e-mails and documents contained thereon for use in this litigation. Absent such relief, Delcath will be deprived of learning the true extent and nature of

9

Foltz's misappropriations and will be irreparably harmed if such evidence is willfully destroyed by Foltz.

## FIRST CAUSE OF ACTION
### (Violations of Connecticut Uniform Trade Secrets Act)

1-29.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30.    Delcath has developed and is the owner of valuable trade secrets, as that term is defined in Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, *et seq.*

31.    The trade secrets described herein, as well as other trade secrets, are proprietary to Delcath, are not generally known to the public or others who can obtain economic value from their disclosure or use, and Delcath derives independent economic value from the fact that these trade secrets are not generally known.

32.    Delcath has expended significant efforts and sums of money over several years to obtain and develop this information, which is unique to Delcath.

33.    At all relevant times, Delcath has used and continues to use reasonable efforts to protect the confidentiality of Delcath's trade secrets.

34.    Plaintiff is informed and believes, and thereon alleges, that Foltz misappropriated, used, and disclosed Delcath's trade secrets, including but not limited to those described herein, in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, *et seq.* This use and disclosure was done without the express or implied consent of Delcath.

10

35.    Moreover, given Foltz's new roles as Laddcap's proposed member of the Delcath board of directors and his new newly formed limited liability company, Foltz has disclosed and will continue to disclose Delcath's trade secrets to third parties.

36.    As a direct and proximate result of Foltz's continuing acts of misappropriation and the threatened continued misappropriation and disclosure of Delcath's trade secrets, Delcath has suffered and continues to suffer irreparable damage from such conduct, for which Delcath has no adequate remedy at law, and such conduct will continue to cause such irreparable harm unless restrained by this Court.

37.    In misappropriating and threatening to misappropriate said trade secrets, Foltz acted willfully and maliciously, entitling Delcath to punitive damage and attorneys fees pursuant to Conn. Gen. Stat. § 35-53(b).

38.    Delcath is entitled to temporary and permanent injunctive relief with respect to Foltz's misappropriations and threatened misappropriations of Delcath's trade secrets pursuant to Conn. Gen. Stat. § 35-52.

39.    Delcath is also entitled to have the secrecy of its trade secrets protected preserved through entry of appropriate judicial orders pursuant to Conn. Gen. Stat. § 35-55.

40.    The conduct of Foltz described in herein was not known to Delcath prior to July 2006.

41.    As a result of Foltz's action as alleged herein, Delcath has been damaged.

**SECOND CAUSE OF ACTION**
**(Violations of Connecticut Unfair Trade Practices Act)**

11

1-29.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30.    Foltz has engaged in the conduct described above, on more than one occasion, and continues to engage in such conduct, as defined in section 42-110a(4) of the Connecticut General Statutes.

31.    Foltz's use of Delcath's Confidential Information constitutes a pattern of conduct that constitutes deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a thorough 42-110q.

32.    Delcath has suffered an ascertainable loss of money or property as a result of Foltz's violation of the Connecticut Unfair Trade Practices Act, as previously set forth, and is entitled to recover damages.

33.    In addition, Foltz's conduct was willful and wanton, demonstrated a complete lack of care for Delcath's rights, and was undertaken with the intent and as part of a scheme to injure and deceive Delcath.  Consequently, Delcath is entitled to an award of punitive and/or exemplary damages, in an amount to be determined at trial, and to recover its costs and attorneys' fees.

**THIRD CAUSE OF ACTION**
**(Breach of Duty of Loyalty)**

1-29.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

12

30.    Foltz owed and continues to owe fiduciary duties of trust, confidence and loyalty to Delcath by virtue of his position, duties and responsibilities with the company.  In addition, by virtue of the duties, responsibilities and requirements of his position with the company, whereby Delcath entrusted Foltz with and granted Foltz access to trade secrets, confidential and proprietary information and documents belonging to Delcath, Foltz occupied a special position of trust and confidence, and thereby owed and continues to owe fiduciary duties of trust, confidence and loyalty to Delcath.

31.    Foltz, acting directly, has breached his duty of loyalty to Delcath by, among other things, (a) removing and/or causing to be removed confidential and proprietary documents and information from Delcath's offices and computer system (including, among other things, documents and/or computer files); (b) converting, for his own use, such documents and other confidential or proprietary information, and other property belonging to Delcath; and (c) utilizing confidential and proprietary information and documents, and other property taken from Delcath in connection with a separate business enterprise.

32.    As a direct and proximate result of the conduct of Foltz, Delcath has been damaged in an amount to be determined at trial.

33.    The damage that Delcath has suffered and continues to suffer from such conduct is irreparable, for which Delcath has no adequate remedy at law, and such conduct will continue to cause such irreparable harm unless restrained by this Court.

13

34.    The conduct of Foltz was and is oppressive, fraudulent, and willful and malicious, and on those grounds Delcath seeks an award of exemplary and/or punitive damages, in an amount to be determined at trial, and to recover its costs and attorneys' fees.

### FOURTH CAUSE OF ACTION
### (Injunctive Relief)

1-29.   Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30.    As set forth more fully above, Delcath is entitled to immediate and exclusive possession of all confidential and proprietary information and documents (in the form of tangible materials, computer or electronic files or other storage or recording media), and other property that Foltz has taken or caused to be taken from Delcath.

31.    By virtue of the foregoing, and of the misappropriations of trade secrets, breaches of fiduciary duty and/or other tortious conduct described above, Delcath is entitled to:

(a)     temporary and permanent injunctions (i) enjoining Foltz and any other persons to whom Foltz has disclosed or transferred, or may disclose or transfer, trade secrets or other materials belonging to Delcath, or any other persons acting in concert or participation with Foltz, from further disclosing or transferring, to anyone, any or all such information, documents, or other property; and (ii) directing that Foltz or each such other person deliver to Delcath forthwith all documents or other materials or property which can constitute, contain, or reflect the trade secrets or other property wrongfully taken from Delcath, and/or any other trade secret belonging to Delcath; and

14



(b)     an order that Foltz be compelled to turn over to Delcath his home computer, home laptop, and any other files and/or documents relating to Delcath and/or any Delcath trade secrets that he currently possesses.

### FIFTH CAUSE OF ACTION
### (Constructive Trust)

1-29.   Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30.     Foltz has obtained trade secrets and other things of value, and, upon information and belief, intends to wrongfully built a business (a) with trade secret, confidential and proprietary information and documents and other property that was wrongfully taken from Delcath; and (b) by wrongfully utilizing and/or misappropriating Delcath's trade secrets, proprietary information, intellectual property, time, and resources. In so doing, as set forth more fully above, Foltz engaged in misappropriation of trade secrets, unfair competition, and other tortious acts.

### SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

1-29.   Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30-31.  Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 30 and 31, inclusive, of the Third Cause of Action of this Complaint.

32. As a result of his employment, his high level position at Delcath and the knowledge of Delcath's Confidential Information and their business practices and relationships, Foltz was a fiduciary to Delcath.

33. As such, he owed Delcath a fiduciary duty to act in its best interests.

34. Foltz's conduct, as aforesaid, constitutes a breach of his fiduciary duty to Delcath.

35. As a result, Delcath has been damaged.

## SEVENTH CAUSE OF ACTION
### (Misuse of Computer Information – Conn. Gen. Stat. § 53a-251 and § 52-570b)

1-29. Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30. Foltz does not have authority to alter, delete, tamper with, damage or destroy computer files contained on Delcath's computers.

31. Upon information and belief, Foltz intentionally or recklessly accessed Delcath's computer and without authorization, altered, deleted, tampered with, damaged and destroyed computer files contained on Delcath's computers.

32. Foltz's conduct constitutes the misuse of computer information in violation of Conn. Gen. Stat. § 53a-251, as a result of which Delcath has been and will continue to be damaged.

## EIGHTH CAUSE OF ACTION
### (Unauthorized Use of Computer - Conn. Gen. Stat. § 53-541 and § 53-542)

1-29.    Plaintiff incorporates by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this Complaint.

30.    Delcath is the owner of its computer network, systems and equipment located in its offices which were provided to Foltz for use while employed.

31.    Upon information and belief, Foltz altered or erased data, documents and electronic communications from Delcath's computer without Delcath's authorization.

32.    Foltz's conduct constitutes the unauthorized use of Delcath's computer information in violation of Conn. Gen. Stat. § 53-451, as a result of which Delcath has been and will continue to be irreparably harmed.

33.    Delcath has suffered damages as a result of Foltz's unauthorized conduct.

17

WHEREFORE, plaintiff seeks the following relief:

1. Pursuant to Connecticut General Statutes §§ 35-52, 53a-251, and 52-570b, temporary and permanent injunctions as described in the First and Seventh Counts;

2. Money damages;

3. Punitive damages pursuant to Connecticut General Statutes § 35-53;

4. Attorney's fees pursuant to Connecticut General Statutes § 35-54 and § 52-570b;

5. Treble damages pursuant to Connecticut General Statutes § 52-570b;

6. Such other relief as to which the plaintiff is entitled in law and/or equity.

THE PLAINTIFF
DELCATH SYSTEMS, INC.

By: _____
Deborah DeHart Cannavino
Ilan Markus
Juris No. 106035
Tyler Cooper & Alcorn, LLP
2 Landmark Square, Suite 214
Stamford, CT 06901
Phone: (203) 348-5555
Fax:    (203) 348-3875
 - Its Attorney -

18

## VERIFICATION

I, M.S. Koly, the Chief Executive Officer, President and Treasurer for Plaintiff being duly sworn

deposes and says that I have read the foregoing Verified Complaint and that the information

contained therein is true and accurate to the best of my knowledge and belief.

M.S. Koly

Subscribed and sworn to
before me this 3 day of August, 2006

Commissioner of the Superior Court
Notary Public

**JESSICA L. WHITE**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 10-31-2010
ACCOUNT NO. 143012

20

```
- - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
DELCATH SYSTEMS, INC.                             :    SUPERIOR COURT
                                                  :
                          Plaintiff,              :
                                                  :    JUDICIAL DISTRICT OF
          v.                                      :    STAMFORD/NORWALK
                                                  :
JONATHAN FOLTZ,                                   :    AT STAMFORD
                                                  :
                          Defendant.              :    AUGUST 4, 2006
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - x
```

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand  exceeds Fifteen Thousand Dollars ($15,000) exclusive of interest and costs.


**THE PLAINTIFF**
**DELCATH SYSTEMS, INC.**


By: _Debbie Cann_
Deborah DeHart Cannavino
Ilan Markus
Juris No. 106035
Tyler Cooper & Alcorn, LLP
2 Landmark Square, Suite 214
Stamford, CT 06901
Phone:   (203) 348-5555
Fax:      (203) 348-3875
 - Its Attorney -