IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
       :

DELCATH SYSTEMS, INC.      :
       :
      Plaintiff,     :
       :   Civil Action No. 1:06CV01391 RBW
    v.       :
       :   Honorable Reggie B. Walton
ROBERT LADD, LADDCAP VALUE   :
PARTNERS LP, LADDCAP VALUE   :
ADVISORS LLC and LADDCAP VALUE  :
ASSOCIATES LLC      :
       :
     Defendants.   :
       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS

PLEASE TAKE NOTICE THAT, pursuant to Rules 33, 34 and 36 of the Federal Rules

of Civil Procedure, plaintiff Delcath Systems, Inc. ("Delcath" or the "Company") hereby requests

that defendants Robert Ladd, Laddcap Value Partners LP ("Laddcap"), Laddcap Value Advisors

LLC and Laddcap Value Associates LLC (collectively, the "Ladd Defendants") produce the

documents described below for inspection, examination, and copying at the offices of Gibson,

Dunn & Crutcher LLP, 200 Park Avenue, 47th Floor, New York, New York 10166, answer the

following interrogatories and make the following admissions on or before such date as ordered

by the Court.

## DEFINITIONS

1.    "All" shall include "each" or "any" and vice versa.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of the discovery request all responses that might

otherwise be construed to be outside of its scope.

3.    "Annual Shareholder Meeting" means the annual meeting of Delcath shareholders held on or about June 13, 2006.

4.    "Board" means the Board of Directors of Delcath Systems, Inc.

5.    "Communication" is used in the broadest possible sense and includes, without limitation, all types of written and oral contract between any two or more persons, including but not limited to writings, oral communications, conversations by telephone, electronic mail or other computer communications, meetings, discussions, negotiations, and any contract, oral or written, formal or informal, at any time or place, and under any circumstances whatsoever, in which information of any nature was transmitted or exchanged in any form.

6.    "Company" means Delcath Systems, Inc.

7.    "Concerning" means relating to, referring to, reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, directly or indirectly, expressly or implicitly, in whole or in part, the subject matter of the document request.

8.    "Consent to Action" means the written consent to action issued by Laddcap on or about July 27, 2006.

9.    "Consent Solicitation" means the Ladd Defendants' proposed consent solicitation with respect to the actions described in the Consent to Action and Preliminary Consent Solicitation.

10.    "Defendants" means any of defendants Robert Ladd, Laddcap Value Partners LP, Laddcap Value Advisors LLC and Laddcap Value Associates LLC  and any of their affiliates, parents, or subsidiaries, as well as their attorneys, accountants, officers,

directors, agents, employees, representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on their behalf or under their direction or control.

11.    "Delcath" means Delcath Systems, Inc.

12.    "Director Nominees" means the persons supported by the Ladd Defendants in their proposed consent solicitation for election to Delcath's Board of Directors.

13.    "Document" shall have the same meaning as Rule 34(a) of the Federal Rules of Civil Procedure, and in particular shall include notes (handwritten and typed), internal memoranda, facsimiles, telexes, electronic mail, files maintained on or in computer hard drives, servers, portable diskette drives, laptop computers, floppy diskettes, and on or in off-site backup computer files, other electronic data (including any exchange of information between computers and all information stored in an electronic form or computer database), tape recordings (and transcripts of them), letters, drafts, non-identical copies, audit papers, ledgers, and books of accounts.

14.    "Fulcrum" means Fulcrum Global Partners LLC, and any of its affiliates, parents, or subsidiaries, including Nexus Health Capital LLC, as well as its attorneys, accountants, officers, directors, agents, employees, representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on its behalf or under its direction or control.

15.    "Glocap" means Glocap Funding LLC, and any of its affiliates, parents, or subsidiaries, as well as its attorneys, accountants, officers, directors, agents, employees,

representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on its behalf or under its direction or control.

16.    "Laddcap" means defendant Laddcap Value Partners LP and any of its affiliates, parents, or subsidiaries, as well as its attorneys, accountants, officers, directors, agents, employees, representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on its behalf or under its direction or control.

17.    "Ladd Defendants" means any of defendants Robert Ladd, Laddcap Value Partners LP, Laddcap Value Advisors LLC and Laddcap Value Associates LLC  and any of their affiliates, parents, or subsidiaries, as well as their attorneys, accountants, officers, directors, agents, employees, representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on their behalf or under their direction or control.

18.    "Person" or "Persons" means all natural individuals, corporations, partnerships, or other business associations, and all legal entities.

19.    "Plaintiff" means Delcath Systems, Inc.

20.    "Preliminary Consent Solicitation" means the Schedule 14A the Ladd Defendants filed with the SEC on or about August 1, 2006.

21.    "Proposed Special Shareholder Meetings" means the special shareholder meetings of Delcath shareholders that the Ladd Defendants requested by letters dated April 27, 2006, May 11, 2006 and June 6, 2006.

22.    "Referring" or "relating" means concerning, comprising, reflecting, memorializing, embodying, discussing, evaluating, considering, reviewing or reporting

on the subject matter of the discovery request or were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the discovery request.

23.    "SEC" means the Securities and Exchange Commission.

24.    "Valuation" means the valuation of Delcath dated June 7, 2006 which was included in the Valuation Proxy Solicitation.

25.    "Valuation Proxy Solicitation" means the Schedule 14A the Ladd Defendants filed with the SEC on or about June 9, 2006, which included a valuation prepared by Fulcrum and Glocap.

26.    "You" or "your" means any of defendants Robert Ladd, Laddcap Value Partners LP, Laddcap Value Advisors LLC and Laddcap Value Associates LLC  and any of their affiliates, parents, or subsidiaries, as well as their attorneys, accountants, officers, directors, agents, employees, representatives, members, predecessors-in-interest, successors-in-interest, or any other person acting or purporting to act on their behalf or under their direction or control.

27.    The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

## INSTRUCTIONS

### Instructions For Document Requests

1.    In answering and responding to the document requests, you shall produce all of the materials requested below, wherever located, which are in your possession, custody or control.

2.      If you withhold any document, or any portion of any document, under a claim of privilege, you shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure, a written privilege log that sets forth: (i) the author of the document; (ii) the type of document, e.g., letter or memorandum; (iii) the date of the document; (iv) all recipients of the document; (v) such other information as is sufficient to identify the document; and (vi) the nature of the privilege asserted.

3.      If you do not produce any documents that are responsive to plaintiff's document requests on grounds other than privilege, you shall state your good-faith basis for why these documents should not be produced.

4.      Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation or otherwise, shall constitute a separate document and must be produced, regardless of whether the original of such a document is within your possession, custody, or control.

5.      All documents are to be produced in their entirety without redaction and should include all attachments and enclosures.  If a portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced, with the portion claimed to be privileged redacted.

6.      This document request is continuing in nature.  If, after producing any documents in response to this document request, you obtain or becomes aware of additional responsive information, you are required to provide such information or documents by way of a supplemental production.

**Instructions For Interrogatories**

1.      Each interrogatory shall be answered separately.  Interrogatories should not be combined for the purpose of supplying a common answer.

2.      No part of an interrogatory shall be left unanswered merely because an objection is interposed to another part of the interrogatory.  All objections to any interrogatory must be made in a written response served on plaintiff's counsel within the time period for responding to these interrogatories.

3.      Each interrogatory shall be answered upon your knowledge from all sources, including all information in possession of you or your attorney, your or their investigators, or persons working for you, or on your or their behalf.

4.      Where an interrogatory cannot be answered in full, state why and furnish all available information.  Estimated dates should be given when, but only when, exact dates cannot be supplied.  Any estimate should be identified as such.  The sources and means of derivation of each estimate should be specifically set forth.

5.      These interrogatories shall be deemed to be continuing, so as to require supplemental answers when you come into possession of information responsive to these interrogatories that has not previously been supplied in answer to these interrogatories.  Such supplemental answers are to served as soon as reasonably possible after the information is obtained.  The date such additional information comes into your possession shall be specified, and also the identity of the individuals who furnished such additional information to the person preparing the answer

6.      Should you claim a privilege as to any information, you shall indicate the grounds upon which any claim of privilege rests.

**Instructions for Requests for Admission**

1.      If your response to any of the requests to admit is anything but an unqualified admission, you are requested to identify such part of the request to admit and to state your good faith basis for not admitting the request.

2.      If you object to any request for admission, please set forth all reasons for the objection.  If you object to any part of any request for admission, please answer or respond to the remaining part or parts completely.

3.      Each request to admit is to be continuing so as to require the filing of a subsequent response in the event that you discover that you have failed to make an admission that should have been made or obtain information responsive to a request for admission.  Such supplemental responses may be filed from time to time, but at least within two (2) days after you determine that a matter previously denied should be admitted.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents relating in any way to Jonathan A. Foltz, including, but not limited to:

> (a)      all documents relating to communications with Jonathan A. Foltz concerning Delcath;
>
> (b)      all documents relating to any contracts, arrangements, understandings or relationships between you and Jonathan A. Foltz, including any contracts, arrangements, understandings or relationships regarding the future employment or consulting arrangement of Mr. Foltz with the Company or with any of the Ladd Defendants;
>
> (c)      all documents relating to any actual or contemplated compensation, whether money or otherwise, that has been or may be provided to Jonathan A. Foltz; and
>
> (d)      all documents relating to any information provided to you by Jonathan A. Foltz concerning Delcath, including, but not limited

to, information relating to Delcath's products, Delcath's business plans, Delcath's stock, Delcath's Annual Shareholder Meeting, the Proposed Special Shareholder Meetings, Delcath's Board, or Delcath's management.

2.    All documents relating to communications with John Codling concerning in any way Delcath, including, but not limited to:

(a)    all communications with John Codling concerning the proposed Consent Solicitation, the Proposed Special Shareholder Meetings, the Annual Shareholder Meeting, the Valuation Proxy Solicitation, the Director Nominees, Delcath's products, Delcath's business plans, Delcath's stock, Delcath's shareholder meetings, Delcath's Board, and/or Delcath's management;

(b)    all documents relating to any contracts, arrangements, understandings or relationships relating in any way to Delcath between you and John Codling and/or entities with which Mr. Codling is or has been affiliated, including, but not limited, to Fulcrum;

(c)    all documents relating to any actual or contemplated compensation, whether money or otherwise, that has been or may be provided to John Codling and/or entities with which Mr. Codling is or has been affiliated, including, but not limited, to Fulcrum;

(d)    all documents relating to any information from other Delcath shareholders that John Codling has collected for you; and

(e)    all documents relating to any communications between John Codling and other Delcath shareholders.

3.    All documents relating to communications with Thomas Mowry concerning Delcath, including, but not limited to:

(a)    all communications with Thomas Mowry concerning the proposed Consent Solicitation, the Proposed Special Shareholder Meetings, the Annual Shareholder Meeting, the Valuation Proxy Solicitation, the Director Nominees, Delcath's products, Delcath's business plans, Delcath's stock, Delcath's shareholder meetings, Delcath's Board, and/or Delcath's management;

(b)    all documents relating to any contracts, arrangements, understandings or relationships relating in any way to Delcath between you and Thomas Mowry and/or entities with which Mr. Mowry is or has been affiliated;

(c)    all documents relating to any actual or contemplated compensation, whether money or otherwise, that has been or may be provided to Thomas Mowry and/or entities with which Mr. Mowry is or has been affiliated;

(d)    all documents relating to any information from other Delcath shareholders that Thomas Mowry has collected for you; and

(e)    all documents relating to any communications between Thomas Mowry and other Delcath shareholders.

4.    All documents relating to any contracts, arrangements, understandings or relationships relating in any way to Delcath between you and other Delcath shareholders and/or entities with which the Delcath shareholders are affiliated.

5.    All documents relating to communications with other Delcath shareholders concerning the Valuation, the Valuation Proxy Solicitation, the Preliminary Consent Solicitation, the Director Nominees or the proposed Consent Solicitation.

6.    All documents relating to the Director Nominees, including, but not limited to:

(a)    all documents reflecting communications between the Ladd Defendants and any of the Director Nominees;

(b)    all documents relating to any due diligence or investigation that the Ladd Defendants conducted with respect to the Director Nominees; and

(c)    all contracts, understandings or arrangements relating to actual or contemplated compensation, whether money or otherwise, that has been or may be provided to the Director Nominees.

7.    All documents in the possession, custody or control of the Director Nominees relating to:

(a)    any experience of Robert Ladd as a director of a public company and/or a company in the medical device industry;

(b)    the Chapter 7 personal bankruptcy of Paul William Frederick Nicholls and the monthly rent that Mr. Nicholls claimed to pay at the time of his bankruptcy filing;

(c)    the restatement of Seitel Corporation's financials while Fred S. Zeidman served as a director of Seitel, the lawsuits relating to the accounting issues that led to the restatement including the shareholder derivative lawsuits in which Mr. Zeidman is or was named as a defendant, and the bankruptcy of Seitel following the restatement;

(d)    the restatement of Emerge Capital Corporation's financials while Fred S. Zeidman served as a director of Emerge as well was the material weaknesses in accounting processes acknowledged by Emerge while Mr. Zeidman served as a director of Emerge;

(e)    the financial performance of the UCLA hospital system during the tenure of Michael Karpf, M.D., as Vice Provost, the report(s) on the UCLA hospital system prepared by The Hunter Group in or about 2003, and the circumstances of Dr. Karp's departure from his position as Vice Provost in or about 2003; and

(f)    all communications, meetings and business and social dealings with any of the Ladd Defendants.

8.    All documents relating to Fulcrum, including, but not limited to, all documents relating to the assumptions, projections and other information supplied to or relied upon by Fulcrum in rendering the Valuation.

9.    All documents relating to Glocap, including, but not limited to, all documents relating to the assumptions, projections and other information supplied to or relied upon by Glocap in rendering the Valuation.

10.    All documents relating to John Codling's affiliation with Fulcrum or Glocap.

11.    All documents relating to the Ladd Defendants' agreement to withdraw their demand for a special shareholder meeting to vote on their proposal to remove Delcath's directors communications.

12.    All documents relating to any discussions or plans to have Delcath merge with or into, consolidate with, sell or transfer all or substantially all of its assets to, or otherwise engage in any business combination with, one or more other parties.

13.    All documents relating to your planned or actual investment strategy with respect to Delcath stock and with respect to Delcath should you gain control of the Company.

## INTERROGATORIES

1.    Identify (a) all meetings or communications that you have had with Jonathan A. Foltz; (b) the subject matters discussed during such meetings or communications; and (c) the dates of all such meetings or communications.

2.    Describe any contracts, arrangements or understandings that you have to compensate Jonathan A. Foltz.

3.    Describe any contracts, arrangements or understandings that you have regarding the future employment of Mr. Foltz with the Company.

4.    Identify (a) all meetings or communications relating in any way to Delcath that you have had with John Codling; (b) the subject matters discussed during such meetings or communications; and (c) the dates of all such meetings or communications.

5.    Identify (a) all meetings or communications with other Delcath shareholders arranged by John Codling; (b) the identity of such Delcath shareholders; (c) the subject matters discussed during such meetings or communications; and (d) the dates of all such meetings or communications.

6.     Identify (a) all meetings or communications relating in any way to Delcath that you have had with Thomas Mowry; (b) the subject matters discussed during such meetings or communications; and (c) the dates of all such meetings or communications.

7.     Identify (a) all meetings or communications with other Delcath shareholders arranged by Thomas Mowry; (b) the identity of such Delcath shareholders; (c) the subject matters discussed during such meetings or communications; and (d) the dates of all such meetings or communications.

8.     Identify (a) all persons with whom you have met or otherwise communicated relating to any plans to have Delcath merge with or into, consolidate with, transfer all or substantially all of its assets to, or otherwise engage in any business combination with, one or more other parties; and (b) the dates of all such meetings or communications.

9.     Identify (a) all persons affiliated with Fulcrum and Glocap with whom you met or otherwise communicated relating to the Valuation, including, the assumptions, projections and other information supplied to or relied upon by Fulcrum and Glocap in rendering the Valuation; and (b) the dates of all such meetings or communications.

10.     Identify (a) all persons other than persons affiliated with Fulcrum and Glocap with whom you have met, had phone calls or corresponded with relating to the Valuation; and (b) the dates of all such meetings, phone calls, e-mails, letters or faxes.

11.     Identify (a) all meetings or communications relating in any way to Delcath that you have had with the Director Nominees; (b) the subject matters discussed during such meetings or communications; and (c) the dates of all such meetings or communications.

12.     For each Director Nominee, identify and describe all businesses or companies for whom the Director Nominee was employed or served as a director, officer or consultant at any

time since January 1, 2000, and describe the positions held by the Director Nominees and the dates on which the positions were held.

## <u>REQUESTS FOR ADMISSION</u>

1.      Admit that you met or otherwise communicated with Jonathan A. Foltz regarding a possible consent solicitation to remove some or all of Delcath's current directors prior to the date the Consent to Action was issued.

2.      Admit that Jonathan A. Foltz provided you non-public Company information prior to the date the Preliminary Consent Solicitation was filed.

3.      Admit that John Codling is or was affiliated with Fulcrum.

4.      Admit that John Codling is working and/or has worked with you in proxy or consent solicitations relating to the Company.

5.      Admit that you have requested John Codling to make certain communications with and/or obtain certain information from other Delcath shareholders.

6.      Admit that Thomas Mowry is working and/or has worked with you in proxy or consent solicitations relating to the Company.

7.      Admit that you have requested Thomas Mowry to make certain communications with and/or obtain certain information from other Delcath shareholders.

8.      Admit that the principal reason the Ladd Defendants seek to undertake the proposed Consent Solicitation is to install directors who will agree to have Delcath merge with or into, consolidate with, sell or transfer all or substantially all of its assets to, or otherwise engage in any business combination with, one or more other parties.

9.      Admit that Paul William Frederick Nicholls filed for bankruptcy in 2002.

10.    Admit that Fred S. Zeidman served on the Audit Committee of Seitel Corporation during each of the fiscal quarters in 2001 and 2002 for which Seitel's financial were restated.

11.    Admit that Fred S. Zeidman served as Chairman of the Board of Directors of Emerge Capital Corporation when Emerge was required to (a) restate consolidated financial statements for fiscal periods in 2004 and 2005 and (b) acknowledge deficiencies in accounting processes constituting material weaknesses as defined by the Public Company Accounting Oversight Board.

12.    Admit that the net income of the UCLA hospital system declined during the tenure of Michael Karpf, M.D., as Vice Provost for hospitals at the UCLA Medical Center.

13.    Admit that Michael Karpf, M.D., left his position as Vice Provost for hospitals at the UCLA Medical Center after a report from The Hunter Group recommended that the UCLA hospital system overhaul its unprofitable clinics and reduce staff.

14.    Admit that the annual returns in 2004 and 2005 for the Laddcap hedge fund were 0.7% and –1.7%, respectively.

15.    For each of the documents produced in response to plaintiff's requests for production of documents, admit that the document is all of the following: (a) a true and correct copy of the document; (b) created or received by you on or about the date indicated on the document (unless otherwise indicated in your response to the request for production); (c) kept in the course of your regularly conducted business activities; and (d)

that it was your regular practice to create, or to receive and maintain, the document in the

course of your regularly-conducted business activities.

Dated:   Washington, D.C.
         August 9, 2006

                                        GIBSON, DUNN & CRUTCHER LLP


                                        By:  /s/ Andrew Tulumello
                                             Andrew Tulumello
                                             (D.C. Bar No. 468351)
                                             Matthew R. Estabrook
                                             (D.C. Bar No. 477880)

                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C.  20036
                                        Tel:  (202) 955-8500
                                        Fax:  (202) 530-9559

                                        Attorneys for Plaintiff
                                        Delcath Systems, Inc.


GIBSON, DUNN & CRUTCHER LLP
*(Motions for pro hac vice pending)*:
Adam H. Offenhartz
Aric H. Wu
Oliver M. Olanoff
200 Park Avenue
New York, NY  10166-0193
Tel:  (212) 351-4000
Fax:  (212) 351-4035