IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DELCATH SYSTEMS, INC.,

Plaintiff,

v.

ROBERT LADD, LADDCAP VALUE PARTNERS LP, LADDCAP VALUE ADVISORS LLC and LADDCAP VALUE ASSOCIATES LLC

Defendants.

Civil Action No. 1:06CV01391 RBW

Honorable Reggie B. Walton

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-9559

Attorneys for Plaintiff
Delcath Systems, Inc.

August 14, 2006

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 2

I. Background .......... 2

II. Summary Of The Ladd Defendants' Misrepresentations And Omissions Through August 9, 2006 .......... 4

III. Additional Misrepresentations And Omissions By The Ladd Defendants In The Wake Of Delcath's Motions For Preliminary Injunction And Expedited Discovery .......... 6

A. August 10, 2006 Letter to Shareholders .......... 6

B. August 14, 2006 Revised Preliminary Consent Solicitation .......... 8

ARGUMENT .......... 12

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AHI Metnall, L.P. v. J.C. Nichols Co.*, 891 F. Supp. 1352 (W.D. Mo. 1995) .............................. 14

**Barrow v. Graham*, 124 F. Supp. 2d 714 (D.D.C. 2000)........................................................ 12

**Bender v. Jordan*, __ F. Supp. 2d __, 2006 WL 2042962 (D.D.C. July 21, 2006) ........ 12, 14, 15

*Berkman v. Rust Craft Greeting Cards, Inc.*, 454 F. Supp. 787 (S.D.N.Y. 1978).................. 12, 14

**Bodlund v. First Nat'l Bank of Chicago*, 1985 WL 572 (N.D. Ill. Apr. 11, 1985) ..................... 13

*Clarostat Mfg. Co., Inc. v. Ostrau*, 1983 WL 1315 (D.N.H. May 26, 1983) .............................. 13

*General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir. 1977)................................................. 12

*Kaufman v. Cooper Cos., Inc.*, 719 F. Supp. 174 (S.D.N.Y. 1989)............................................ 12

*Lebhar Friedman, Inc. v. Movielab, Inc.*, 1987 WL 5793 (S.D.N.Y. Jan. 13, 1987)................... 14

*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001)....................................... 12

*Raymen v. United Senior Ass'n, Inc.*, 2005 WL 607916 (D.D.C. Mar. 16, 2005)........................ 12

*Riggs Nat'l Bank of Washington, D.C. v. Allbritton*, 516 F. Supp. 164 (D.D.C. 1981).......... 13, 14

## Statutes

15 U.S.C. § 78m(d)........................................................................................................... 2, 12

15 U.S.C. § 78n(a) ........................................................................................................... 2, 12

## Other Authorities

*Interpretative Release Relating to Proxy Rules,* Exchange Act Release No. 16833, 1980 SEC LEXIS 1414 (May 23, 1980)............................................................ 10

Plaintiff Delcath Systems, Inc. ("Delcath" or the "Company") respectfully submits this memorandum of points and authorities in support of its motion for a temporary restraining order enjoining defendants Robert Ladd, Laddcap Value Partners LP ("Laddcap"), Laddcap Value Advisors LLC and Laddcap Value Associates LLC (collectively, the "Ladd Defendants") from conducting their consent solicitation relating to the control of the Company until after a hearing on plaintiff's motion for preliminary injunction.

**INTRODUCTION**

Delcath seeks the immediate entry of a temporary restraining order to ensure that the Ladd Defendants do not wrongfully take control of Delcath before the Court has even had an opportunity to consider Delcath's motion for preliminary injunction. Based on a filing by the Ladd Defendants this morning, Delcath believes that the Ladd Defendants are about to commence their consent solicitation to replace Delcath's Board of Directors and that the control of the Company is therefore in immediate jeopardy.

Delcath is a development stage company advancing a drug delivery system that is hoped will provide a meaningful treatment for certain types of cancer. On July 27, 2006, the Ladd Defendants took steps to initiate on behalf of Laddcap, a hedge fund, a consent solicitation to remove Delcath's directors and replace them with the Ladd Defendants' own handpicked slate of directors. On August 1, 2006, the Ladd Defendants filed a Schedule 14A Preliminary Proxy Statement ("Preliminary Consent Solicitation") for their proposed consent solicitation. The Ladd Defendants want Delcath's directors removed and replaced with their own slate of directors so that they can force a prompt sale of the Company and turn a quick profit on the Laddcap hedge fund's recently purchased Delcath stock.

On August 4, 2006, Delcath filed a complaint against the Ladd Defendants for myriad materially false and misleading statements and omissions in violation of Section 13(d) and Section 14(a) of the Securities and Exchange Act of 1934 ("Exchange Act"). On August 9, 2006, Delcath filed a motion for preliminary injunction and motion for expedited discovery.

This morning, the Ladd Defendants filed a Revised Schedule 14A Preliminary Proxy Statement ("Revised Preliminary Consent Solicitation") for their proposed consent solicitation. The Ladd Defendants are thus on the brink of filing their Schedule 14A Definitive Proxy Statement ("Definitive Consent Solicitation"). Indeed, Delcath believes that the Ladd Defendants could file their Definitive Consent Solicitation as early as this afternoon.

Once the Ladd Defendants' Definitive Consent Solicitation is filed, the consent solicitation commences and Delcath's directors can be removed *immediately* upon receipt of consents from a majority of the Company's shares. Absent a temporary restraining order, therefore, the Ladd Defendants could wrongfully take control of the Company before the Court has even had an opportunity to consider plaintiff's motion for preliminary injunction.

For all the reasons set forth herein and in its preliminary injunction papers, Delcath respectfully requests that this Court immediately enter a temporary restraining order preventing the Ladd Defendants from conducting their proposed consent solicitation until after the Court has had an opportunity to hold a hearing on its preliminary injunction motion.

## STATEMENT OF FACTS

### I. Background

Founded in 1988, Delcath is a development stage company developing a drug delivery system that is hoped will provide a meaningful treatment for certain types of cancer. *See*

Declaration of Oliver Olanoff in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 9, 2006 ("Olanoff PI Decl."), ¶ 3. Between May 15, 2003 (near the completion of a public offering for Delcath stock) and July 26, 2006 (the last trading day before the Ladd Defendants commenced their latest attempt to take control of Delcath), Delcath stock appreciated by approximately 916%. *Id.* ¶ 6.

Since late last year, the Ladd Defendants have made repeated attempts to take control and force the sale of Delcath so that they can extract a quick profit and boost the short-term performance of the under-performing Laddcap hedge fund. *Id.* ¶¶ 7-43. The annual returns for the Laddcap hedge fund in 2004 and 2005 were 0.7% and –1.7%, respectively. *Id.* ¶ 6.

The Ladd Defendants have, *inter alia*, (1) sought to have the Company immediately retain an investment bank to explore the sale of the Company; (2) solicited Delcath shareholders to withhold votes in the director elections at Delcath's annual shareholder meeting; (3) filed a lawsuit against Delcath relating to supposed "concerns regarding the propriety of certain actions taken by Delcath's officers and directors;" and (4) demanded special shareholder meetings to "remove all of Delcath's directors" and "terminate immediately" Delcath's President and CEO. *Id.* ¶¶ 7-38.

Most recently, the Ladd Defendants have taken steps to initiate a consent solicitation to remove Delcath's directors and replace them with the Ladd Defendants' own slate of directors. *Id.* ¶¶ 39-43. Once the consent solicitation commences, Delcath's directors can be removed *immediately* upon receipt of consents from a majority of the Company's shares.

## II. Summary Of The Ladd Defendants' Misrepresentations And Omissions Through August 9, 2006

On August 9, 2006, Delcath filed its motions for preliminary injunction and expedited discovery. As set forth in those papers, the Ladd Defendants have made myriad materially false and misleading statements and omissions in their solicitation materials and Schedule 13D filings. Among other things, the Ladd Defendants have:

- Failed to disclose the group of persons and entities with whom they are acting together for the purpose of acquiring, holding, voting or disposing of Delcath stock, including the nature of their relationship with John Codling, an individual who has stated that he represents in excess of 15% of the outstanding shares of Delcath stock and, with Mr. Ladd, "controls the entire float" of Delcath stock (Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction, dated August 9, 2006 ("PI Brief"), at 4-5, 14-17; Declaration of Todd Fromer in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 4, 2006, ¶¶ 3-8);

- Misrepresented that they were providing the "material occupations, positions, offices, or employment for the past five years" for each of their handpicked nominees to replace Delcath's directors, misrepresented that the nominees have the "necessary skills, resources and relevant experience," and failed to disclose material information about their nominees, including that one nominee filed for personal bankruptcy because of debt amassed on credit cards, including credit cards issued by luxury retailers such as Bloomingdale's, Bergdorf Goodman and Macy's, and that another nominee served on the board of directors of a public company during the period in which the company had to restate its financials and subsequently file for bankruptcy and is Chairman of the board of directors of another company that also experienced significant accounting problems (PI Brief at 5-7, 17-20; Olanoff Decl. ¶¶ 42-49);

- Misrepresented that they obtained an "independent" valuation of the Company from two investment banks with "decades of experience," and failed to disclose the underlying assumptions and projections that were relied upon in making the valuation (PI Brief at 8-9, 20-22; Olanoff PI Decl. ¶¶ 27-30);

- Mischaracterized discussions with the Company in an effort to discredit Delcath's directors (PI Brief at 9-10, 22-23; Olanoff PI Decl. ¶¶ 35-37; Declaration of M.S. Koly in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 4, 2006 ("Koly Decl."), ¶¶ 2-14);

- Failed to disclose the true motive for their consent solicitation – *i.e.*, an immediate sale of the Company (PI Brief at 10-11, 23-24); and

- Failed to disclose their true arrangement with director nominee Jonathan A. Foltz, a Delcath employee and consultant of 14 years who suddenly resigned and then was identified just hours later on July 27, 2006 as one of the Ladd Defendants' handpicked director nominees. It defies belief that Mr. Foltz would have abruptly resigned from Delcath after 14 years without any understanding from the Ladd Defendants concerning his future employment at Delcath (PI Brief at 7, 19-20).

Moreover, in connection with their proxy battle against the Company, the Ladd Defendants apparently have gone so far as to obtain improperly non-public company information from Mr. Foltz. Indeed, the Ladd Defendants' Preliminary Consent Solicitation contains information that was proprietary to the Company and known only by a few individuals, including Mr. Foltz. *See* Olanoff PI Decl. Exs. 62-63.

Delcath has since learned that, in February 2006, Mr. Foltz secretly installed on his Delcath work computer a wiping utility known as "Eraser." *See* Declaration of Oliver Olanoff in Support of Plaintiff's Motion for Temporary Restraining Order, executed on August 14, 2006 ("Olanoff TRO Decl."), Ex. 4. Then, just before he resigned on July 27, 2006, Mr. Foltz methodically deleted all of the e-mails as well as numerous documents and files on his work computer in an apparent attempt to destroy evidence of his improper transfer of company information to the Ladd Defendants. *Id.* Ex. 3. In addition, on July 26, 2006, the day before he resigned, Mr. Foltz traveled with a co-worker to meet with Delcath's intellectual property attorneys. *See* Olanoff PI Decl. Ex. 63. At the meeting, Mr. Foltz, his co-worker and Delcath's intellectual property attorneys discussed privileged information about Delcath's current and future affairs. *Id.* On the train home, Mr. Foltz repeatedly excused himself and left the side of his co-worker to take cellular phone calls in private. *Id.*

On August 4, 2006, the Superior Court for the State of Connecticut issued an order enjoining Mr. Foltz from further "disclosing, disseminating and/or using" any non-public company information. On August 7, 2006, pursuant to that order, a court-appointed custodian, a computer expert and a Connecticut Marshall arrived at the home of Mr. Foltz to temporarily seize his computers so that copies of certain material could be made. *Id.* Ex. 64.

To avoid unnecessarily duplicative briefing, Delcath respectfully refers the Court to, and incorporates by reference, the facts set forth in its preliminary injunction and expedited discovery papers, including (1) the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction, dated August 9, 2006 ("PI Brief") (Docket No. 6); (2) the Declaration of Oliver Olanoff in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 9, 2006, and supporting exhibits ("Olanoff PI Decl.") (Docket Nos. 7-12); (3) the Declaration of Todd Fromer in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 4, 2006 ("Fromer PI Decl.") (Attachment to Docket No. 6); (4) the Declaration of M.S. Koly in Support of Plaintiff's Motion for Preliminary Injunction, executed on August 4, 2006 (Attachment to Docket No. 6); and (5) the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Expedited Discovery, dated August 9, 2006 (Docket No. 17).

## III. Additional Misrepresentations And Omissions By The Ladd Defendants In The Wake Of Delcath's Motions For Preliminary Injunction And Expedited Discovery

### A. August 10, 2006 Letter to Shareholders

After Delcath filed its preliminary injunction and expedited discovery papers, the Ladd Defendants issued a letter to Delcath's shareholders regarding this lawsuit. *See* Exhibit 1 to the Declaration of Oliver Olanoff in Support of Plaintiff's Motion for Temporary Restraining Order, executed on August 14, 2006 ("Olanoff TRO Decl.").

The Ladd Defendants' letter unwittingly confirms the misleading nature of the Ladd Defendants' disclosures regarding director nominee Paul William Frederick Nicholls. In their August 1, 2006 Preliminary Consent Solicitation, the Ladd Defendants omitted any reference to Mr. Nicholls' personal bankruptcy in 2002 and represented that "since September 2000, Mr. Nicholls has been a self-employed Business Development Director consulting with a number of large international organizations." Olanoff PI Decl. Ex. 48. In their August 10, 2006 shareholder letter, the Ladd Defendants now claim that Mr. Nicholls could not work prior to his bankruptcy filing in 2002 because he was fighting cancer. *See* Olanoff TRO Decl. Ex. 1.

These two statements by the Ladd Defendants are contradictory, and the facts Delcath has uncovered to date indicate that neither statement is true. For example, contrary to the Ladd Defendants' latest claim that Mr. Nicholls' cancer caused his personal bankruptcy filing in October 2002, Mr. Nicholls' own bankruptcy petition makes clear that the debt he amassed was on credit cards, including credit cards issued by luxury retailers such as Bloomingdale's, Bergdorf Goodman and Macy's, not on health care. *See* Olanoff PI Decl. Ex. 50 at Schedule F. Indeed, there were no medical bills, no hospital bills and no doctor bills in his bankruptcy filing. *Id.* Moreover, the Ladd Defendants' contention that Mr. Nicholls was too ill in 2002 to work is belied by the 19 New York Road Runners' Club races in which he competed in 2002, including a 10K race that Mr. Nicholls ran at a brisk pace of 7 minutes 37 seconds per mile about a month before he filed for bankruptcy. *See* Olanoff TRO Decl. Ex. 2.

Delcath also has learned that, prior to being identified as one of the Ladd Defendants' director nominees, Mr. Nicholls worked for the Ladd Defendants. Indeed, Mr. Ladd previously stated in a phone conversation that he had hired Mr. Nicholls to work for him. *See* Declaration of Todd Fromer in Support of Plaintiff's Motion for Temporary Restraining Order, executed on

August 14, 2006 ("Fromer TRO Decl."), ¶ 6. In their Preliminary Consent Solicitation, the Ladd Defendants represent that they are providing "material occupations, positions, offices, or employment for the past five years of each Nominee." Olanoff PI Decl. Ex. 48. Yet, there is no disclosure in the Preliminary Consent Solicitation about Mr. Nicholls' employment by Mr. Ladd.

The Ladd Defendants' misrepresentations about their director nominees are not limited to Mr. Nicholls. For example, though the Ladd Defendants purport to provide material positions held by each of their director nominees over the past five years, there is no disclosure that one of the nominees, Fred S. Zeidman, is currently Chairman of the Board of Directors of Emerge Capital Corporation. The reason the Ladd Defendants have selectively omitted any disclosure of Mr. Zeidman's position with Emerge is obvious. In 2006, Emerge has twice been forced to admit that it has significant deficiencies in its accounting processes constituting material weaknesses as defined by the Public Company Accounting Oversight Board. Those weaknesses resulted in the company improperly accounting for financial transactions on the books of a predecessor company with whom it merged in August 2005, and forced the combined company in May 2006 to restate its consolidated financial statements for fiscal periods in 2004 and 2005. *See* Olanoff PI Decl. Exs. 57-58.

**B. <u>August 14, 2006 Revised Preliminary Consent Solicitation</u>**

This morning, the Ladd Defendants filed a Revised Schedule 14A Preliminary Proxy Statement ("Revised Preliminary Consent Solicitation") for their proposed consent solicitation. *See* Olanoff TRO Decl. Ex. 5.

Like their prior solicitation materials, the Revised Preliminary Consent Solicitation is fraught with material misstatements and omissions. For example, the Ladd Defendants again falsely represent that Mr. Nicholls' personal bankruptcy was caused by his cancer. *See id.* at 14. In addition, the Ladd Defendants again falsely represent that they are providing the "material

occupations, positions, offices or employment for the past five years of each Nominee." *Id.* at 13. There is no disclosure of Mr. Nicholls' employment by the Ladd Defendants and no disclosure of Mr. Zeidman's current position as Chairman of the Board of Directors of Emerge Capital Corporation. *See id.* at 14-15.

Moreover, the Revised Preliminary Consent Solicitation unwittingly confirms Delcath's contention that the Ladd Defendants have omitted material information regarding their true arrangement with Mr. Foltz. For the first time, the Ladd Defendants have admitted that they paid $20,000 to Mr. Foltz in unspecified "consulting fees" on August 1, 2006, just days after Mr. Foltz deleted all the e-mails on his Delcath work computer and resigned from Delcath. *See id.* at 21. Though the Ladd Defendants were aware of their agreement to pay $20,000 to Mr. Foltz when they filed their original Preliminary Consent Solicitation on August 1, 2006, the Ladd Defendants' original Preliminary Consent Solicitation is devoid of any disclosure of the agreement with Mr. Foltz. *See* Olanoff PI Decl. Ex. 48.

In their Revised Preliminary Consent Solicitation, the Ladd Defendants still falsely represent that they had no understanding with Mr. Foltz concerning his future employment at Delcath when Mr. Foltz suddenly resigned after 14 years with Delcath. Indeed, rather than disclose the arrangement which induced Mr. Foltz to resign from Delcath, the Ladd Defendants disingenuously claim that Mr. Foltz has just now "indicated that he would be willing to step in to manage the affairs of Delcath on a interim or permanent basis." Olanoff TRO Decl. Ex. 5 at 10. The Ladd Defendants thus still have not fully disclosed their true arrangement with Mr. Foltz.

The Ladd Defendants do not even attempt in their Revised Consent Solicitation to disclose that the two supposedly "independent" investment banks with "decades of experience" from whom they obtained a valuation of the Company were neither independent nor experienced.

Nor do the Ladd Defendants disclose any of the underlying assumptions and projections that were relied upon in making the valuation. The SEC Division of Corporate Finance has made clear that the use of valuations "is only appropriate and consonant with Rule 14a-9 under the Securities Exchange Act of 1934" if the valuations are "accompanied by disclosure which facilitates shareholders' understanding of the basis for and limitations on the projected realizable values" and warned that "where the valuations are so qualified and subject to such material limitations and contingencies, inclusion in proxy soliciting material of specific realizable values may be unreasonable." *Interpretative Release Relating to Proxy Rules,* Exchange Act Release No. 16833, 1980 SEC LEXIS 1414, at *3 (May 23, 1980) (Olanoff Decl. Ex. 35). The Ladd Defendants have improperly used the suspect valuation to criticize Delcath's directors for failing to achieve shareholder value consistent with the valuation. *See* PI Brief at 8-9, 20-22.[1]

---

1 Moreover, in their continuing effort to create the material misimpression that Delcath's Board and management have acted unreasonably and ignored Delcath's largest shareholder, the Ladd Defendants have in their Revised Preliminary Consent Solicitation again falsely represented that Delcath "rejected" the Ladd Defendants' efforts to "engage in a meaningful dialogue. *Compare* Olanoff PI Decl. Ex. 48 at 9, *with* Olanoff TRO Decl. Ex. 5 at 9. As detailed in Delcath's preliminary injunction papers, Delcath representatives have met or spoke with Laddcap representatives on numerous occasions over the past year. Most recently, following the annual shareholder meeting in June 2006, Mr. Ladd and Mr. Koly had what appeared at the time to be a number of constructive calls. *See* Koly Decl. ¶ 5. During the calls, Mr. Ladd indicated to Mr. Koly that he was satisfied with the Company's business plan. *Id.* ¶ 6. In addition, after Delcath announced its Board's initiative to add two new independent directors, Mr. Koly invited Mr. Ladd to submit the names and resumes of candidates Laddcap would like to be considered. Mr. Ladd agreed to do so and also to withdraw Laddcap's demand for a special shareholder meeting to vote on its proposal to remove Delcath's directors. *Id.* ¶ 13. Just weeks later, without any notice or explanation, the Ladd Defendants undertook steps to initiate their consent solicitation to remove Delcath's directors. *See* Olanoff PI Decl. Ex. 46. It is now apparent that the dialogue between the parties leading up to the Ladd Defendants' agreement to withdraw Laddcap's demand for a special shareholder meeting to vote on its proposal to remove all of Delcath's directors was orchestrated by the Ladd Defendants to lull the Company into a false sense of calm.

Furthermore, in an attempt to avoid disclosing their true motive for the consent solicitation (*i.e.*, to force the immediate sale of the Company), the Ladd Defendants disingenuously claim that they cannot force the sale of the Company because "strategic decisions rest solely with Delcath's Board of Directors." Olanoff TRO Decl. Ex. 5 at 3. Obviously, if the Ladd Defendants are successful in removing Delcath's directors and replacing them with their own director nominees, the Ladd Defendants will effectively be able to direct the strategic decisions of the Company through directors beholden to them.

In addition to the material misstatements and omissions in their Revised Preliminary Consent Solicitation, the Ladd Defendants still have failed to file an amendment to their Schedule 13D disclosing the group of persons and entities with whom they are acting together for the purpose of acquiring, holding, voting or disposing of Delcath stock, including the nature of their relationship with John Codling, an individual who has stated that he represents in excess of 15% of the outstanding shares of Delcath stock, and Thomas Mowry, a Delcath stockholder who has indicated that he is acting as an "unofficial representative" and "proxy" for Mr. Ladd. *See* PI Brief at 5, 14-17.

* * *

As a result of its ongoing investigation, Delcath continues to uncover facts bearing on the Ladd Defendants' material misstatements and omissions. Delcath also has filed a motion for expedited discovery so that it may supplement the record with additional facts to further support its preliminary injunction motion. Absent a temporary restraining order to preserve the status quo pending the Court's hearing on Delcath's preliminary injunction motion, however, the Ladd Defendants may wrongfully take control of the Company before Delcath even has an opportunity to be heard.

**ARGUMENT**

"The purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction." *Barrow v. Graham*, 124 F. Supp. 2d 714, 715-16 (D.D.C. 2000) (granting temporary restraining order). *See also Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 80 (D.D.C. 2001) (granting temporary restraining order "to return to the status quo").[2]

"While the Court must still consider the traditional four-part test for injunctive relief even at the TRO stage, the short duration of a TRO, the imminence of the harm and the failure of a respondent to provide any facts to counter a petitioner's claims, taken together, may justify the grant of a TRO to preserve the status quo." *Barrow*, 124 F. Supp. 2d at 715-16. *See also Raymen v. United Senior Ass'n, Inc.*, 2005 WL 607916, at *5 (D.D.C. Mar. 16, 2005) (Walton, J.) ("Balancing the factors this Court must consider in deciding whether to grant emergency injunctive relief, it is clear that the plaintiffs' motion for a temporary restraining order should be granted.").

---

2 As set forth in Delcath's preliminary injunction papers (docket nos. 5-12), Delcath seeks a preliminary injunction enjoining the Ladd Defendants from conducting or taking any action on their consent solicitation until after a trial on the merits of the Section 13(d) and Section 14(a) claims against the Ladd Defendants. *See, e.g., Bender v. Jordan*, __ F. Supp. 2d , 2006 WL 2042962, at *30 (D.D.C. July 21, 2006) (in action alleging Section 13(d) and Section 14(a) violations, granting preliminary injunction enjoining defendants "from disseminating proxy materials to shareholders and holding shareholders' meeting until further order of the Court"); *General Aircraft Corp. v. Lampert*, 556 F.2d 90, 97 (1st Cir. 1977) (in action alleging Section 13(d) violations, affirming preliminary injunction enjoining defendants from "acquiring further shares of GAC common stock or soliciting proxies or consents from GAC stockholders until the Schedule 13D is amended"); *Kaufman v. Cooper Cos., Inc.*, 719 F. Supp. 174, 185 (S.D.N.Y. 1989) (in action alleging Section 14(a) violations, granting preliminary injunction directing the parties to "void all the proxies obtained by each side"); *Berkman v. Rust Craft Greeting Cards, Inc.*, 454 F. Supp. 787, 794 (S.D.N.Y. 1978) (in action alleging Section 14(a) violations, granting preliminary injunction enjoining defendants "from further solicitation of proxies").

Here, a temporary restraining order is necessary to ensure that the Ladd Defendants will not wrongfully take control of Delcath before Delcath has even had the opportunity to be heard on its preliminary injunction motion. As discussed above, the Ladd Defendants filed this morning their Revised Preliminary Consent Solicitation. Thus, the Ladd Defendants could file their Definitive Consent Solicitation as early as this afternoon. Once the Ladd Defendants' Definitive Consent Solicitation is filed, the consent solicitation commences and Delcath's directors can be removed *immediately* upon receipt of consents from a majority of the Company's shares.

Because the Ladd Defendants could wrongfully take control of the Company based on the material misstatements and omissions in their solicitation materials and Schedule 13D filings before the Court has even had an opportunity to consider Delcath's preliminary injunction motion, a temporary restraining order to preserve the status quo is warranted. *See, e.g., Riggs Nat'l Bank of Washington, D.C. v. Allbritton*, 516 F. Supp. 164, 166 (D.D.C. 1981) (in action alleging Section 13(d) and Section 14(e) violations, "the Court issued a Temporary Restraining Order enjoining defendants from continuing with or effectuating the tender offer of Riggs stock commenced by defendant Allbritton, and certain related acts, pending a hearing on the motion for preliminary injunction"); *Bodlund v. First Nat'l Bank of Chicago*, 1985 WL 572, at **1-2 (N.D. Ill. Apr. 11, 1985) (in action alleging Section 14(a) violations, granting temporary restraining order "enjoining counterdefendants . . . and others acting in active concert or participation with them, and all unknown persons who receive notice of this order, from taking any actions pursuant to the consents at issue"); *Clarostat Mfg. Co., Inc. v. Ostrau*, 1983 WL 1315, at *4 (D.N.H. May 26, 1983) (in action alleging Section 13(d) violations, granting

temporary restraining order enjoining defendants from taking any action with respect to shareholder vote).

Moreover, as set forth in Delcath's preliminary injunction papers, all four factors that courts must consider in connection with a motion for temporary restraining order or a motion for preliminary injunction counsel strongly in favor of interim injunctive relief in this action:

- *First*, interim injunctive relief is necessary to prevent the irreparable harm Delcath and its shareholders will suffer if the Ladd Defendants are allowed to take over the Company based on their materially false and misleading statements and omissions. *See Bender*, 2006 WL 2042962, at *27 (in action alleging violations of Section 13(d) and Section 14(a), finding that irreparable injury results if shareholders are "deprived of their statutory rights to receive accurate information, and to be free of deceptive information, bearing on their investment and voting decisions"); *Lebhar Friedman, Inc. v. Movielab, Inc.*, 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987) ("If this injunction were not granted, Movielab's shareholders could elect a Board of Directors based on misleading information which has been presented to them in violation of the securities laws. Courts recognize that the wrongful positioning of corporate heads wreaks irreparable harm on a corporation and its shareholders.").

- *Second*, Delcath is likely to prevail on the merits because the Ladd Defendants so clearly have made, and are continuing to make, materially false and misleading statements and omissions. *See, e.g., Bender*, 2006 WL 2042962, at *14 (finding that "there is a substantial likelihood that Mr. Bender will succeed on the merits" because, *inter alia*, defendants failed to disclose group with whom they were acting); *Berkman*, 454 F. Supp. at 791-92 (finding likelihood of success on merits because proxy materials failed to disclose information relating to the "track record" of director nominees and also that a fairness opinion was performed by an investment bank that was not independent).

- *Third*, the harm to Delcath and its shareholders if this Court denies interim injunctive relief – the loss of control of their Company – far outweighs the harm to the Ladd Defendants if this Court grants that relief: a short delay in their consent solicitation until the Court can hold a trial on the merits. *See Riggs*, 516 F. Supp. at 181 (balance of equities can favor the plaintiff even where "serious harm" can result to the defendants if an injunction is granted); *AHI Metnall, L.P. v. J.C. Nichols Co.*, 891 F. Supp. 1352, 1360 (W.D. Mo. 1995) ("Although Defendants will be put to the expense of cancelling and then resetting the annual meeting, this inconvenience will not inflict irreparable harm. The balance favors Plaintiff.").

- *Fourth*, the public interest will be served because the interim injunctive relief would result in the enforcement of the securities laws. *See, e.g., Bender*, 2006 WL 2042962, at *29 ("Since it is impossible as a practical matter for the government to seek out and prosecute every important violation of laws designed to protect the public in the aggregate, private actions . . . which incidentally benefit the general public interest, perform a vital public service.").

To avoid burdening the Court with unnecessarily duplicative briefing on the four factors, Delcath respectfully refers the Court to, and incorporates by reference, its full arguments with respect to the four factors in its preliminary injunction papers. *See, e.g.*, PI Brief at 11-25.

**CONCLUSION**

For the reasons set forth above, and in its prior submissions in connection with its motion for preliminary injunction, Delcath respectfully requests that the Court grant a temporary restraining order to preserve the status quo by preventing the Ladd Defendants from conducting their consent solicitation until the Court has had an opportunity to hold a hearing on Delcath's preliminary injunction motion, and grant such other and further relief as the Court deems just and proper.

Dated: Washington, D.C.
August 14, 2006

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Andrew S. Tulumello
Andrew S. Tulumello
(D.C. Bar No. 468351)
Matthew R. Estabrook
(D.C. Bar No. 477880)

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 530-9559

Attorneys for Plaintiff
Delcath Systems, Inc.

GIBSON, DUNN & CRUTCHER LLP
*(Motions for pro hac vice pending):*
Adam H. Offenhartz
Aric H. Wu
Oliver M. Olanoff
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035