*Westlaw.*

2006 WL 2037355
--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)
**(Cite as: 2006 WL 2037355 (D.D.C.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
FC INVESTMENT GROUP LC, et al., Plaintiffs,
v.
Larry B. LICHTENSTEIN, et al., Defendants.
**Civil Action No. 05-1753(RMC).**

July 21, 2006.

**Background:** Investment company brought action for fraud, civil conspiracy, civil aiding and abetting, and negligent misrepresentation against director of corporation and director's law firm alleging that corporation had operated sham currency trading scheme. Director and firm moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue.

**Holdings:** The District Court, Rosemary M. Collyer, J., held that:

(1) director's contacts with district were sufficient to confer personal jurisdiction;

(2) venue in District of Columbia was proper;

(3) private interests weighed against transferring venue; and

(4) public interests weighed against transferring venue.

Motion denied.

**[1] Federal Courts ⌷1037**

170Bk1037 Most Cited Cases
The District of Columbia long-arm statute is given an expansive interpretation that is coextensive with the due process clause; thus, the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry. U.S.C.A. Const.Amend. 5; D.C. Official Code, 2001 Ed. § 13-423(a)(1).

**[2] Constitutional Law ⌷305(5)**

92k305(5) Most Cited Cases
Under District of Columbia law, in determining whether a court can exercise personal jurisdiction over defendants under its long-arm statute, the question is whether defendants purposefully established minimum contacts with the District of Columbia such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. U.S.C.A. Const.Amend. 14; D.C. Official Code, 2001 Ed. § 13-423.

**[2] Federal Courts ⌷1037**

170Bk1037 Most Cited Cases
Under District of Columbia law, in determining whether a court can exercise personal jurisdiction over defendants under its long-arm statute, the question is whether defendants purposefully established minimum contacts with the District of Columbia such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. U.S.C.A. Const.Amend. 14; D.C. Official Code, 2001 Ed. § 13-423.

**[3] Federal Courts ⌷1041**

170Bk1041 Most Cited Cases
Under District of Columbia law, plaintiffs bear the burden of establishing a factual basis for a court's exercise of personal jurisdiction over foreign defendants, and where the court rules on the basis of the pleadings and affidavits, without an evidentiary hearing, factual discrepancies are resolved in favor of the plaintiffs.

**[4] Constitutional Law ⌷305(5)**

92k305(5) Most Cited Cases
Under District of Columbia law, contacts with district by director of corporation were purposefully directed at investment company, which was located in district, and therefore exercise of personal jurisdiction over director of corporation was consistent with due process in investment company's action for fraud against director of corporation and his law firm alleging that they operated a sham currency trading scheme; director spoke with investor by telephone numerous times and sent faxes, which allegedly communicated false information about the corporation, its investments, and the return of investment company's funds, at least some of the calls and faxes were initiated by director, director allegedly benefited personally from contacts, district had interest in adjudicating the suit because investment company operated in district, and adjudicating suit in district was efficient and did not interfere with any fundamental substantive social policy. U.S.C.A. Const.Amend. 5; D.C. Official

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Code, 2001 Ed. § 13-423.

**[4] Federal Courts** ☞1037
170Bk1037 Most Cited Cases
Under District of Columbia law, contacts with district by director of corporation were purposefully directed at investment company, which was located in district, and therefore exercise of personal jurisdiction over director of corporation was consistent with due process in investment company's action for fraud against director of corporation and his law firm alleging that they operated a sham currency trading scheme; director spoke with investor by telephone numerous times and sent faxes, which allegedly communicated false information about the corporation, its investments, and the return of investment company's funds, at least some of the calls and faxes were initiated by director, director allegedly benefited personally from contacts, district had interest in adjudicating the suit because investment company operated in district, and adjudicating suit in district was efficient and did not interfere with any fundamental substantive social policy. U.S.C.A. Const.Amend. 5; D.C. Official Code, 2001 Ed. § 13-423.

**[5] Federal Courts** ☞76.15
170Bk76.15 Most Cited Cases
Transactions by telephone and facsimile alone can, depending on the circumstances, be an adequate basis for personal jurisdiction.

**[6] Federal Courts** ☞76.10
170Bk76.10 Most Cited Cases
For purposes of determining whether a nonresident defendant had sufficient minimum contacts with a district to confer personal jurisdiction, the number of contacts is less important than their significance.

**[7] Courts** ☞96(1)
106k96(1) Most Cited Cases
One district court decision is not binding on another district court.

**[8] Federal Courts** ☞96
170Bk96 Most Cited Cases
To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat the plaintiff's assertion of venue.

**[9] Federal Courts** ☞71
170Bk71 Most Cited Cases
In determining proper venue, it is not appropriate to ask which district is the "best" venue, or which venue

has the most significant connection to the claim; the proper question is whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts. 28 U.S.C.A. § 1391(a).

**[10] Federal Courts** ☞87.5
170Bk87.5 Most Cited Cases
In determining whether events or omissions are sufficiently substantial to support venue under the venue statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action; rather, it should review the entire sequence of events underlying the claim. 28 U.S.C.A. § 1391(a).

**[11] Federal Courts** ☞87.5
170Bk87.5 Most Cited Cases
The provision of the venue statute providing that venue is proper in a district where a substantial part of the events or omissions giving rise to the claim occurred may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action. 28 U.S.C.A. § 1391(a)(2).

**[12] Federal Courts** ☞1041
170Bk1041 Most Cited Cases
Substantial part of the events giving rise to investment company's action for fraud occurred in District of Columbia, and therefore venue in the District of Columbia was proper in action against director of corporation and his law firm alleging that they operated a sham currency trading scheme, even if Illinois was the site of many other actions leading to the alleged fraud, and investment company's principal place of business was in Maryland; director of corporation allegedly directed communications at investment company office located in District of Columbia that induced investors' reliance, reassured them they would receive refunds for their investments, and contained false account statements and other information. 28 U.S.C.A. § 1391(a)(2).

**[13] Federal Courts** ☞101
170Bk101 Most Cited Cases
In ruling on a motion to transfer venue, the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness. 28 U.S.C.A. § 1404(a).

**[14] Federal Courts** ☞45
170Bk45 Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)
**(Cite as: 2006 WL 2037355 (D.D.C.))**

**[14]** Federal Courts ⊙➔101
170Bk101 Most Cited Cases

**[14]** Federal Courts ⊙➔104
170Bk104 Most Cited Cases
The statute governing motions to transfer venue is rooted in the earlier doctrine of forum non conveniens; although courts have more discretion to transfer under the venue statute than they have to dismiss on grounds of forum non conveniens, they are guided by similar factors in both contexts, namely,
the private and public interests at stake. 28 U.S.C.A. § 1404(a).

**[15]** Federal Courts ⊙➔101
170Bk101 Most Cited Cases
In order to justify transfer of venue, a defendant must make two showings: (1) the defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district, and (2) the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court. 28 U.S.C.A. § 1404(a).

**[16]** Federal Courts ⊙➔105
170Bk105 Most Cited Cases

**[16]** Federal Courts ⊙➔144
170Bk144 Most Cited Cases
A party seeking transfer of venue generally bears the burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice are in its favor, and the plaintiff's choice of forum is ordinarily afforded great deference. 28 U.S.C.A. § 1404(a).

**[17]** Federal Courts ⊙➔1041
170Bk1041 Most Cited Cases
Private interests did not weigh in favor of transfer of venue from District of Columbia to Illinois in investment company's action for fraud against director of corporation and his law firm alleging that they operated a sham currency trading scheme; District of Columbia had meaningful ties to litigation because director deliberately contacted investment company office located in District, director failed to demonstrate that litigating in the District would cause him any hardship or injure his private law practice, and director failed to show that key witnesses would be unwilling to travel to the District to testify. 28 U.S.C.A. § 1404(a).

**[18]** Federal Courts ⊙➔105
170Bk105 Most Cited Cases
When ruling on a motion to transfer venue, a plaintiff's choice of forum may not be defeated merely because it can be shown that he previously was able to travel to a different forum to litigate; rather, in order to demonstrate that it is necessary to transfer venue, a defendant must make a substantial showing that transfer is necessary. 28 U.S.C.A. § 1404(a).

**[19]** Federal Courts ⊙➔101
170Bk101 Most Cited Cases
When analyzing the convenience of parties and witnesses in the context of ruling on a motion to transfer venue, a defendant must show that witnesses would be unwilling to testify in the plaintiff's chosen forum; otherwise, it is assumed that the witnesses will voluntarily appear, and mere inconvenience to the witnesses alone is not enough to warrant transfer. 28 U.S.C.A. § 1404(a).

**[20]** Federal Courts ⊙➔144
170Bk144 Most Cited Cases
To support its request for a transfer of venue on the grounds of inconvenience to witnesses, a moving party must demonstrate what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction. 28 U.S.C.A. § 1404(a).

**[21]** Federal Courts ⊙➔1041
170Bk1041 Most Cited Cases
Public interest factors did not weigh in favor of transfer of venue from District of Columbia to Illinois in investment company's action for fraud against director of corporation and his law firm alleging that they operated a sham currency trading scheme; District of Columbia court could apply Illinois law, dockets in the District were less crowded, and controversy was not local to Illinois as director purposefully contacted investment company office located in District. 28 U.S.C.A. § 1404(a).

**[22]** Federal Courts ⊙➔104
170Bk104 Most Cited Cases
For purposes of determining whether to transfer venue, there is a public interest in deciding local controversies at home. 28 U.S.C.A. § 1404(a).

Ross D. Cooper, Shulman, Rogers, Gandal, Pordy & Ecker, Rockville, MD, for Plaintiff.

Matthew A. Ranck, William Leonard Mitchell, II,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Eccleston & Wolf, P.C., Washington, DC, for Defendant.

### MEMORANDUM OPINION

ROSEMARY M. COLLYER, District Judge.

**\*1** Plaintiffs Lawrence J. Eisenberg and his investment firm, FC Investment Group LC, bring this action against Defendants Larry B. Lichtenstein and his law firm, Larry B. Lichtenstein and Associates, to recover more than $5 million dollars they invested in a foreign currency trading scheme operated by Titan Global Strategies Ltd. ("Titan")--a now-defunct, third-party corporation in which Mr. Lichtenstein served as director. Arguing that Titan was a sham that placed no investments and existed only to shield its directors from personal liability, Plaintiffs seek to pierce Titan's corporate veil and hold Mr. Lichtenstein accountable for fraud, civil conspiracy, civil aiding and abetting, and negligent misrepresentation.

Defendants have filed a motion to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northern District of Illinois ("Defs.' Mot .") [Dkt. # 11]. For the reasons explained below, Defendants' motion will be denied, and this matter will be set for a scheduling conference.

### I. FACTUAL BACKGROUND

The facts are taken from the allegations in the Amended Complaint. This dispute dates back to September 1998, when Titan employees allegedly contacted Mr. Eisenberg in his District of Columbia office about investing in a foreign currency trading account to be managed by Titan. Am. Compl. ¶ 8. At that time, Mr. Eisenberg was told that Milan Martinic owned and controlled Titan. *Id.* Mr. Eisenberg initially invested $10,000 with Titan and, by October 2003, he had personally invested more than $1 million. *Id.* ¶¶ 9-10. In April 2001, Mr. Eisenberg created FC Investment Group LC ("FCIG"), a Maryland limited liability company, to assist his friends and family members in making their own foreign currency investments with Titan. *Id.* ¶¶ 1, 12. It is alleged that by October 2003, Mr. Eisenberg, together with his friends and family members, had used FCIG to invest approximately $5 million with Titan. *Id.* ¶ 13.

Titan and its employees allegedly reassured Mr. Eisenberg that his investments through FCIG were legitimate and secure. In early 2001, Titan assigned

one of its employees, Charles Knott, to be FCIG's "advisor and point-of-contact" for Titan. *Id.* ¶ 15. Mr. Knott apparently met with Mr. Eisenberg in his D.C. office several times in 2001 and 2002 to explain Titan's operations. *Id.* ¶¶ 15-16. He also showed Mr. Eisenberg a PowerPoint presentation that detailed the scope of Titan's alleged relationship with a currency trader, IFX Markets Ltd. ("IFX"); IFX purportedly performed certain management, investment, and brokerage services on Titan's behalf. *Id.* ¶¶ 16, 20. Titan sent monthly account statements to Mr. Eisenberg that showed significant returns on his investments. *Id.* ¶ 14; Eisenberg Aff. ¶ 5.

It is also alleged that Mr. Lichtenstein was another source of reassurance. Mr. Lichtenstein was Mr. Martinic's friend, business partner, and personal attorney, *id.* ¶ 22, and a principal in the law firm Larry B. Lichtenstein & Associates. *Id.* ¶ 4; Lichtenstein Decl. ¶ 2. The Amended Complaint alleges that in 2002, Mr. Lichtenstein began relaying information about Titan to Mr. Eisenberg. Am. Compl. ¶¶ 23-25. On at least four occasions in 2002, Messrs. Lichtenstein and Eisenberg allegedly spoke via telephone about a variety of compliance issues. *Id.* ¶ 26. On some of these occasions, Mr. Lichtenstein allegedly initiated the calls by phoning Mr. Eisenberg at his D.C. office. *Id.*

**\*2** On November 12, 2002, Mr. Lichtenstein registered Titan as an Illinois corporation, with Mr. Martinic and Mr. Lichtenstein as its two directors and with $1,000 in initial capital. *Id.* ¶¶ 28-29. Mr. Eisenberg and the other FCIG investors continued to invest with Titan, to the tune of $2 million in November 2002 alone. *See id.* ¶¶ 30, 32. It was not until late 2003, when Titan rebuffed his request to close FCIG's account, that Mr. Eisenberg discovered that the Titan/IFX venture was a fraud. *Id.* ¶ 34.

The Amended Complaint recounts Mr. Eisenberg's efforts to recover FCIG's investments with Titan. During late 2003, he spoke with Mr. Lichtenstein via telephone on at least six different occasions to discuss return of the funds. *Id.* ¶ 37. Again, on some of these occasions, it was Mr. Lichtenstein who phoned Mr. Eisenberg at his D.C. office, rather than the reverse. *Id.* During these calls, Mr. Lichtenstein allegedly led Mr. Eisenberg to believe that a refund was forthcoming, at one point essentially stating that a $6 million certified check was "in the mail." *See id.* ¶ 38. On January 14, 2004, Mr. Lichtenstein allegedly faxed Mr. Eisenberg a deposit slip indicating that $4.3 million had been deposited in a Titan-controlled bank account, suggesting that Titan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 2037355                                                                Page 5
--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)
**(Cite as: 2006 WL 2037355 (D.D.C.))**

had funds to repay FCIG. Mr. Eisenberg asserts that he was thus induced to refrain from taking legal action. *Id.* ¶ 39.

According to the Amended Complaint, this strategy was successful until Mr. Eisenberg discovered that the deposit slip was counterfeit and that Titan had placed no investments whatsoever on FCIG's behalf. *Id.* ¶¶ 7, 11, 40. In March 2004, Mr. Eisenberg brought suit against Titan and Mr. Martinic in a Wisconsin state court and, in July 2004, obtained a $6.5 million judgment against them. *Id.* That judgment remains unsatisfied.

In a renewed effort to recover their investments, on September 1, 2005, Mr. Eisenberg and FCIG filed this action against Mr. Lichtenstein and his law firm, seeking to pierce Titan's corporate veil and hold Mr. Lichtenstein liable for fraud, civil conspiracy, civil aiding and abetting, and negligent misrepresentation. *Id.* ¶ 7.

## II. DISCUSSION

Defendants' motion to dismiss or, in the alternative, transfer venue, raises three questions: (1) whether this Court has personal jurisdiction over Defendants; (2) whether venue is properly laid in this district; and (3) whether, if venue is proper here, transfer is nonetheless warranted. As explained below, the Court finds that has personal jurisdiction over Defendants, venue is proper in this District, and transfer is not warranted.

### A. This Court Has Personal Jurisdiction Over Defendants

[1][2][3] Plaintiffs assert that the Court's exercise of personal jurisdiction over Defendants is proper under subsection (a)(1) of the District of Columbia long-arm statute, D.C.Code § 13-423. [FN1] That subsection provides that the Court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C.Code § 13-423(a)(1); *see Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987) (noting that a federal district court's jurisdiction is coextensive with that of a D.C. court). "This provision is given an expansive interpretation that is coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C.Cir.2004) (internal quotation marks omitted). Thus, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995). The

question, then, is whether Defendants "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helmer*, 393 F.3d at 205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) (alteration in original). Plaintiffs bear the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over Defendants, *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C.Cir.1990), and where, as here, the Court rules on the basis of the pleadings and affidavits, without an evidentiary hearing, factual discrepancies are resolved in favor of the Plaintiffs, *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C.Cir.1984).

*3 [4] Defendants argue that Mr. Lichtenstein's contacts with the District of Columbia--in essence, a series of telephone calls and a facsimile transmission--are an insubstantial basis for personal jurisdiction, especially given that the contacts arose in the context of Mr. Lichtenstein's professional representation of Titan and were often in response to Mr. Eisenberg's requests for information. The Court cannot agree.

[5] "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines...." *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Accordingly, it has long been the law that an absence of physical contacts will not defeat personal jurisdiction so long as the defendant's efforts are purposefully directed toward residents of another state. *Id.* Just as clearly, transactions by telephone and facsimile alone can, depending on the circumstances, be an adequate basis for personal jurisdiction. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 n. 4 (D.C.Cir.2002).

Here, Plaintiffs allege that Messrs. Lichtenstein and Eisenberg spoke via telephone at least ten times in 2002 and 2003, and that Mr. Lichtenstein initiated many of those calls by phoning Mr. Eisenberg in his D.C. office, at a number with a 202 area code. Am. Compl. ¶¶ 26, 37; Eisenberg Aff. ¶ 4-5. Plaintiffs also allege that Mr. Lichtenstein sent a fax to Mr. Eisenberg in his D.C. office, at a number also bearing a 202 area code. Am. Compl. ¶ 39; Eisenberg Aff. ¶ 6. Thus, Mr. Lichtenstein knew he was dealing with an investor located in Washington, D.C.

[6] More important than the number of these contacts, however, is their significance. *See Neal v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Janssen,* 270 F.3d 328, 332 (6th Cir.2001) ("It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.' "). These were not conversations by happenstance. Plaintiffs allege that Mr. Lichtenstein defrauded them by systematically communicating false information about Titan's corporate status, the relationship between Titan and IFX, the earnings on FCIG's phantom investments, and the return of FCIG's funds. These contacts were directed toward Mr. Eisenberg in the District of Columbia and had foreseeable effects here. *See id.* Viewed in the context of Plaintiffs' allegations, they are better described as deliberate rather than incidental. Defendants should have reasonably anticipated having to litigate a matter arising directly from those contacts in this jurisdiction. [FN2]

[7] To resist this conclusion, Defendants rely almost exclusively on *Bank of Cape Verde v. Bronson,* 869 F.Supp. 21 (D.D.C.1994), which, although bearing some superficial similarity to this case, does not change the analysis here. [FN3] In *Bank of Cape Verde,* a third party borrower, after defaulting on its loans from the plaintiff bank, went bankrupt, leaving the bank's judgment against it unrecoverable. *Bank of Cape Verde,* 869 F.Supp. at 22. The bank then sued the borrower's attorney who, as required by the loan agreement, had furnished an opinion letter confirming that the borrower was not insolvent. *Id.* The bank claimed personal jurisdiction based on the attorney's forwarding of opinion letters to the District of Columbia and making several phone calls to the Cape Verde Embassy in the District. *Id.* at 23. The court concluded that these contacts were insufficient, emphasizing that the attorney did not represent the bank, did not benefit directly from the loan agreement between the bank and borrowers, and any telephone calls or mailings occurred solely at the bank's request. *Id.*

*4 Here, unlike in *Bank of Cape Verde,* whether Mr. Lichtenstein's contacts with Mr. Eisenberg in his D.C. office were wholly responsive to Mr. Eisenberg's inquiries or partly self-initiated is a matter of dispute. *Compare* Pls.' Opp'n at 9 *and* Am. Compl. ¶ ¶ 26, 37 *with* Defs.' Reply at 7-8. Viewing this factual discrepancy in the Plaintiffs' favor, as required by *Reuber,* 750 F.2d at 1052, at least some of these calls must be viewed as having been instituted by Mr. Lichtenstein. Moreover, Plaintiffs allege that Mr. Lichtenstein, as part of the scheme to defraud Plaintiffs, faxed them a counterfeit deposit slip. That act, even if it occurred in response to an inquiry from Mr. Eisenberg, is hardly, as Defendants'

argue, a "gesture of accommodation," Defs.' Mot. at 9; rather, it constitutes an affirmative misrepresentation directed to a foreseeable victim in the District, *cf. Neal,* 270 F.3d at 332, that goes beyond the type of "unilateral activity" on the part of a plaintiff that has been found insufficient to confer personal jurisdiction, *see, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Moreover, unlike *Bank of Cape Verde,* Mr. Lichtenstein may have benefitted personally from the alleged frauds. Nothing in *Bank of Cape Verde* suggests that the defendant attorney was anything but completely independent from the third-party borrower. Here, by contrast, it is undisputed that Mr. Lichtenstein, though apparently acting as counsel for Titan, was also one of Titan's two directors. This raises the inference that Mr. Lichtenstein directly benefitted from the alleged fraudulent investment scheme that bilked Mr. Eisenberg and other FCIG investors out of some $5 million. This factual discrepancy also must be resolved in Plaintiffs' favor at this point in the litigation. *See Reuber,* 750 F.2d at 1052. Thus, *Bank of Cape Verde* is simply inapposite. [FN4]

In the minimum contacts analysis, there are no "clear-cut jurisdictional rules" or "talismanic jurisdictional formulas." *Burger King,* 471 U.S. at 486 & n. 29. But giving due regard to all the alleged facts and circumstances of this case, the parties' interactions and course of dealing, and the quality and nature of Mr. Lichtenstein's contacts with the District of Columbia, the Court concludes that its exercise of personal jurisdiction over Defendants comports with due process and with subsection (a)(1) of the D.C. long-arm statute. [FN5]

B. Venue Is Proper in the District of Columbia

[8] Defendants next argue that venue is inappropriate here because "the alleged wrongful acts occurred entirely outside of the District of Columbia" and the case has only a "minimal nexus" to the District. To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat the plaintiff's assertion of venue. *2215 Fifth St. Assocs. v. U-Haul Int'l Inc.,* 148 F.Supp.2d 50, 54 (D.D.C.2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2d ed.1987)). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)
**(Cite as: 2006 WL 2037355 (D.D.C.))**

**\*5** [9] The relevant venue statute, 28 U.S.C. § 1391(a), formerly provided that an action based on diversity of citizenship, like this one, may be brought in the district "in which the claim arose." 28 U.S.C. § 1391(a) (1988). It was amended in 1990 "to make venue proper in any 'judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.' " Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir.2004) (quoting the Judicial Improvements Act of 1990, Pub.L. No. 101- 650, § 311(1), 104 Stat. 5089, 5114) (1990). "Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806 (1994 Supp.). Thus, it is no longer appropriate to ask which district is the "best" venue, Setco Enters. v. Robbins, 19 F.3d 1278, 1281 (8th Cir.1994), or which venue has the most significant connection to the claim, Weinberger v. Tucker, 391 F.Supp.2d 241, 244 (D.D.C.2005). The proper question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Setco Enters., 19 F.3d at 1281.

[10][11] In determining "whether the events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.' " Mitrano, 377 F.3d at 405 (quoting Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir.2001)). Section 1391(a)(2) "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 153-54 (2d Cir.2001).

[12] This case satisfies the requirements of § 1391(a)(2). Defendants argue that venue is not proper in this forum because the major events and collaborations leading to the alleged fraud occurred outside the District of Columbia. Plaintiffs allege that Defendants helped carry out a fraudulent foreign currency investment scheme, Am. Compl. ¶ 7, that "bilked FCIG out of millions of dollars," id . ¶ 1. Mr. Lichtenstein is alleged to have played a major role by inducing Plaintiffs' reliance, reassuring Plaintiffs that they would receive refunds for their investments, and sending Plaintiffs account statements and false

information, all directed to FCIG's District of Columbia office. These communications have much more than a "minimal nexus" to Plaintiffs' claim.

Taken as true, Defendants' contention that the "nucleus of facts giving rise to the claim occurred in Illinois," Defs.' Mot. at 18, does not necessarily warrant the conclusion that venue is improper in the District of Columbia. Even if Illinois, the site of many of the actions leading to the alleged fraud, has a strong connection to the claim, it is now recognized that more than one forum can be an appropriate venue for a claim so long as § 1391(a)(2) is satisfied. See Setco Enters., 19 F.3d at 1281. Therefore, it is entirely proper for this Court to hear Plaintiffs' claim so long as they bear a substantial connection to the District of Columbia. See id. Because the communications by Mr. Lichtenstein to Mr. Eisenberg in the District of Columbia were a significant part of the sequence of events underlying the claims, venue is proper here. [FN6]

C. Transfer of Venue is Not Appropriate

**\*6** [13] Motions to change venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The D.C. Circuit " 'has said that it is perhaps impossible to develop any fixed general rules on when cases should be transferred.' " SEC v. Savoy Indus. v. Zimmerman, 587 F.2d 1149, 1154 (D.C.Cir.1978) (quoting Starnes v. McGuire, 512 F.2d 918, 929 (D.C.Cir.1974) (en banc)). "Thus, the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." Id. (citing Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

[14][15][16] Section 1404(a) is rooted in the earlier doctrine of forum non conveniens. [FN7] Id. at 1154. Although courts have "more discretion to transfer under § 1404(a) than they ha[ve] to dismiss on grounds of forum non conveniens," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), they are guided by similar factors in both contexts--namely, the private and public interests at stake. See Savoy Indus., 587 F.2d at 1154. Accordingly, the defendant must make two showings to justify transfer. First, a defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district. [FN8] Van Dusen v. Barrack, 376 U.S. at 622.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Second, the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court. *Trout Unlimited v. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996). As this Court has explained,

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Thayer/Patricof Educ. Funding LLC v. Pryor Res., 196 F.Supp.2d 21,* 31-32 (D.D.C.2002) (omission in original). The party seeking transfer generally bears the burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice are in its favor, *id.* at 31; *see Savoy Indus.,* 587 F.2d at 1154 (describing the district court's denial of a motion to change venue as a ruling that the movant "had failed to shoulder his burden"), and the plaintiff's choice of forum is ordinarily afforded great deference, *Thayer/Patricof,* 196 F.Supp.2d at 31.

### 1. Private Interest Factors

**\*7** [17] Defendants argue that because the bulk of the evidence concerning the claim is located in Illinois and because the major events leading to the alleged fraud occurred in Illinois, transfer of venue is warranted. However, the Court cannot find that the private interest factors in this case weigh in favor of disrupting Plaintiffs' choice of forum.

The District of Columbia is not a forum without meaningful ties to the controversy, as Defendants allege, but is the location into which Defendants deliberately reached to conduct business negotiations. Defendants' contention that litigating in the District would substantially injure Mr. Lichtenstein's private law practice is not enough to defeat Plaintiffs' venue selection. Mr. Lichtenstein will have sufficient notice of trial to postpone any business commitments or cases until he returns. In addition, Mr. Lichtenstein has not demonstrated any great hardship such as "inability to travel, significant expense, or medical disability that would adversely affect his ability to

litigate this case" in the District of Columbia. *Kotan v. Pizza Outlet, Inc.,* 400 F.Supp.2d 44, 50 (D.D.C.2005).

[18] The Court cannot give significant weight to the fact that Plaintiffs previously were able to litigate the underlying suit in Wisconsin. A plaintiff's choice of forum may not be defeated merely because it can be shown that he previously was able to travel to a different forum to litigate. *See Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (noting that § 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors"). Rather, in order to demonstrate that it is necessary to transfer venue, a defendant must make a substantial showing that transfer is necessary. *See Piper Aircraft,* 454 U.S. at 255 (1981) (stating that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"). Even if, as Defendants contend, many of the wrongful acts did occur outside of the District of Columbia, Defendants have not pointed to the existence of any factors that would cause them to experience extreme hardship in accessing evidence if venue were not transferred to the Northern District of Illinois. *See Piper Aircraft,* 454 U.S. at 258-59 (finding that because many crucial witnesses were located overseas and therefore beyond the reach of compulsory process, and because a large portion of the relevant evidence was located in Great Britain, private interest factors weighed in favor of transferring venue); *Thayer/Patricof,* 196 F.Supp.2d at 36 (stating that "in the context of a motion for a transfer of forum, the location of documents, given modern technology, is less important in determining the convenience of the parties").

[19][20] When analyzing the convenience of parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the District of Columbia. *Thayer/Patricof,* 196 F.Supp.2d at 32. Otherwise, it is assumed that the witnesses will voluntarily appear, *id.,* and mere inconvenience to the witnesses alone is not enough to warrant transfer, *id.* at 34. In addition, "to support its request for transfer under section 1404(a), a moving party must demonstrate ... what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." *Id.* at 33. While Defendants contend that the key witnesses who will offer testimony live in or near Illinois, they neither set forth the specific topic about which these

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)
(Cite as: 2006 WL 2037355 (D.D.C.))

witnesses will testify nor assert that these witnesses would be unwilling to travel to the District of Columbia. *See id. at 32.*

2. Public Interest Factors

**\*8** [21] Defendants' arguments as to public interest considerations are similarly unpersuasive. Defendants argue that Illinois law will apply to this controversy, causing this factor to weigh in favor of transferring venue. Assuming that Illinois law will be applied in this case, Defendants have not demonstrated that this Court will have difficulty doing so. In fact, this Court has recently applied various Illinois laws without observable difficulty. *See, e.g., Dunseth v. Eli Lilly & Co., 404 F.Supp.2d 97 (D.D.C.2005)* (analyzing and applying Illinois tort law); *Jung v. Ass'n of Am. Med. Colls., 300 F.Supp.2d 119 (D.D.C.2004)* (applying Illinois contract law).

[22] Next, as to the relative congestion of the two courts, a review of federal court management statistics indicates that, in 2004, civil cases filed in the Northern District of Illinois proceeded to disposition somewhat more quickly but that dockets in the District of Columbia were less crowded. Federal Court Management Statistics, U.S. District Court Judicial Caseload Profiles, *at* http://www.uscourts.gov/cgi-bin/cmsd2004.pl (last visited June 28, 2006); *see Savoy Indus., 587 F.2d at 1156* ("[Although] congestion alone is not sufficient reason for transfer, ... relative docket congestion and potential speed of resolution is an appropriate factor to be considered.") (citation omitted). Finally, although there is certainly an interest in "deciding local controversies at home," *Thayer/Patricof, 196 F.Supp.2d at 31-32,* the Court does not agree that this case constitutes a controversy local to Illinois. Rather, Titan and Lichtenstein conducted business across state lines and spent years negotiating with FCIG, a business located in the District of Columbia.

In sum, Defendants have not met their burden of showing that the balance of convenience of the parties and witnesses and the interest of justice are in their favor. This case will not be transferred.

III. CONCLUSION
For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, to transfer venue [Dkt. # 11] will be denied. The Court will set a scheduling conference. An Order accompanies this Memorandum Opinion.

***ORDER***

For the reasons stated in the Memorandum Opinion filed simultaneously with this Order, it is hereby

ORDERED that the Defendants' motion to dismiss or, in the alternative, to transfer venue, [Dkt. # 11] will be denied. The Court will set a scheduling conference.

SO ORDERED.

FN1. Plaintiffs also assert that personal jurisdiction is proper under *D.C.Code § 13-423(a)(3)*. Because the Court finds that jurisdiction is proper under subsection (a)(1), it is not necessary to address this question.

FN2. Although Defendants argue that the "minimum contacts" test is not satisfied, they do not argue that this Court's exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *See Burger King, 471 U.S. at 476-77; Helmer, 393 F.3d at 205.* Further, the Court concludes that it does not. There is no reason to believe that requiring these out-of-state Defendants to defend themselves here would impose a greater burden in this particular case than in the typical one. The District's interest in adjudicating these claims, although they were brought by a Maryland resident, remains strong, given that FCIG operated from an office in the District of Columbia. Adjudicating this dispute in the District is efficient and interferes with no fundamental substantive social policy. *See Burger King, 471 U.S. at 477, 105 S.Ct. 2174* ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").

FN3. In any event, "one district court decision is not binding on another district court." *Am. Council of the Blind v. Wash. Metro. Area Transit Auth., 133 F.Supp.2d 66, 74 n. 2 (D.D.C.2001); see In re Executive Office of the President, 215 F.3d 20, 24 (D.C.Cir.2000)* ( "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district.") (citations and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

internal quotation marks omitted).

**FN4.** Defendants' reliance on *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1129 (4th Cir.1986), and *United States v. Ferrara,* 54 F.3d 825, 831 (D.C.Cir.1995), is likewise misplaced. The *Chung* defendant's single contact with the forum was a shipment of goods purchased outside the forum; although the plaintiff originally was bound to take delivery outside the forum, the defendant later agreed to ship the goods into the forum merely as a "convenience" to the plaintiff. *Chung,* 783 F.2d at 1125-26, 1128. In *Ferrara,* the court rejected the plaintiff's argument that the defendant's "single, responsive mailing" was a sufficiently meaningful contact for due process purposes. *Ferrara,* 54 F.3d at 831 (citing *Envtl. Research Int'l Inc. v. Lockwood Greene Eng'rs Inc.,* 355 A.2d 808, 813 (D.C.1976)). As discussed in the text, Mr. Lichtenstein's contacts with the District were not only more numerous than in *Chung* and *Ferrara,* but were also, according to Plaintiffs' allegations, calculated to defraud D.C. victims.

**FN5.** In view of this conclusion, it is unnecessary to address Plaintiffs' additional argument for jurisdiction over Defendants under the theory of conspiracy jurisdiction. *See Jin v. Ministry of State Sec.,* 335 F.Supp.2d 72, 78-80 (D.D.C.2004) (explaining standard).

**FN6.** Defendants further argue that FCIG's principal place of business may be in Maryland, rather than in the District of Columbia, so that this forum cannot hear Plaintiffs' claim. Defs.' Reply at 11. Even if true, Mr. Lichtenstein's communications in furtherance of the alleged fraudulent investment scheme were directed to FCIG's District of Columbia office. Therefore, a "substantial part of the events giving rise to the claim occurred" in the District of Columbia. 28 U.S.C. § 1391(a)(2); *see Setco Enters.,* 19 F.3d at 1281 (finding venue proper in the Western District of Missouri under § 1391(a)(2) although none of the parties resided in Missouri and the fraudulent acts occurred in Texas and Oklahoma).

**FN7.** The Court construes Defendants' motion "to transfer this case to the ... Northern District of Illinois on the basis of *forum non conveniens,"* Defs.' Mot. at 1-2, as a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

**FN8.** Plaintiffs do not contest Defendants' assertion that the Northern District of Illinois could constitute proper venue for this action under 28 U.S.C. § 1391(a)(1). Therefore, the Court finds that the Northern District of Illinois is a "district ... where [the action] might have been brought." 28 U.S.C. § 1404(a).

--- F.Supp.2d ----, 2006 WL 2037355 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3439445 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion to Dismiss, Or in the Alternative, Motion to Transfer Venue (Nov. 21, 2005)

• 2005 WL 3439447 (Trial Pleading) Amended Complaint (Nov. 21, 2005)

• 2005 WL 3439443 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Nov. 7, 2005)

• 1:05cv01753 (Docket) (Sep. 1, 2005)

• 2005 WL 2861410 (Trial Pleading) Complaint (Jun. 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 148742 (E.D.Mo.)
**(Cite as: 2006 WL 148742 (E.D.Mo.))**

Page 1

**c**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Missouri, Eastern Division.
Roy Vernon HALL, Sr., Sheila Fish, Roy Vernon
Hall, Jr., and William Glenn
Hall, Plaintiffs,
v.
THE HOLMES GROUP, INC. and Home Depot
U.S.A., Inc., Defendants.
No. 4:05CV2052 HEA.

Jan. 18, 2006.

Robert W. Cockerham, Brown And James, P.C.,
Robert J. Radice, Horas and Radice, L.L.C., St.
Louis, MO, for Plaintiffs.

Fairfax Jones, Casserly Jones, P.C., St. Louis, MO,
for Defendants.

*OPINION, MEMORANDUM AND ORDER*

AUTREY, J.

**\*1** This matter is before the Court on Defendant The
Holmes Group, Inc.'s Motion to Transfer, [# 6].
Plaintiff opposes this motion and has filed a written
opposition thereto. For the reasons set forth below,
Defendant's motion is denied.

*Facts and Background*

In August, 2005, Plaintiffs filed this cause of action
in the Circuit Court of the City of St. Louis, Missouri,
alleging Defendants the Holmes Group, Inc.
("Holmes") and The Home Depot U.S.A., Inc.
("Home Depot") are liable for designing,
manufacturing, and distributing a space heater,
thereby causing a fire which resulted in the death of
Betty Hall, the wife and mother to the above-named
Plaintiffs. The space heater in question was allegedly
being used by Mrs. Hall in her home in Kansas City,
Missouri when it caused the fire.

Plaintiffs are residents of the State of Missouri, with
the exception of Sheila Fish, who resides in Galena,
Kansas. Defendant Holmes is a corporation organized

and incorporated in the State of Massachusetts, with
its principal place of business in Massachusetts. It
merged with and became JCS/THG, LLC, doing
business as The Holmes Group, a Delaware limited
liability company with its principal place of business
in Massachusetts. Defendant Home Depot is a
Delaware corporation with its principal place of
business in Georgia. Home Depot has a registered
agent located in the Eastern District of Missouri, but
does not have a registered agent in the Western
District. Defendants properly removed this cause to
federal court based upon diversity of citizenship.

On November 23, 2005, Defendant filed the instant
motion, pursuant to 28 U.S.C. § 1404(a), requesting
this case be transferred to the Western District of
Missouri.

*Discussion*

Defendant Holmes urges this Court to transfer this
cause to the Western District of Missouri pursuant to
the provisions of 28 U.S.C. § 1404(a), which
provides:

(a) For the convenience of parties and witnesses, in
the interest of justice, a district court may transfer
any civil action to any other district or division
where it might have been brought.

Holmes argues that the accident resulting in Mrs.
Hall's death took place in Kansas City, which is
located in the Western District of Missouri. [FN1] An
investigation into the cause of the fire was conducted
in Kansas City by members of the Kansas City Fire
Department, and the Kansas City Police Department.
Holmes also alleges that prior to the death of Mrs.
Hall, she and her husband, Roy Hall, Sr., resided in
Kansas City, and claims that although Plaintiffs do
not list their current addresses in their Petition, it is
believed that all Plaintiffs reside within the
boundaries of the Western District of Missouri.
[FN2]

FN1. It is undisputed by the parties that this
cause of action might have been brought in
the Western District of Missouri.

FN2. Defendant notes that even if one of the
Plaintiffs is discovered to reside in the
Eastern District of Missouri, its motion to
transfer analysis remains unchanged, since
the operative facts took place and the fact

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

witnesses are to be found in Kansas City, Missouri.

In any determination of a motion to transfer under Section 1404(a), the plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed. *Houk v. Kimberly-Clark Corp.,* 613 F.Supp. 932, 927 (W.D.Mo.1985) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3rd Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971) (plaintiff's choice of forum is "paramount consideration")). It is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. *Id.* (citations omitted). Where the balance of relevant factors is equal or only slightly in favor of the movant, the motion to transfer should be denied. *Id.;* see also *General Committe of Adjustment GO-386 v. Burlington Norther R.R.,* 895 F.Supp. 249, 252 (E.D.Mo.1995). "Concomitantly, a transfer which would merely shift the inconvenience from one party to another should not be granted." *Houk,* 613 F.Supp. at 927-28.

**\*2** The Court considers the three factors expressed in Section 1404(a) in determining whether or not to transfer venue: The convenience of the parties, the convenience of the witnesses, and whether the transfer would be in the interest of justice. *May Dept. Stores Co. v. Wilansky,* 900 F.Supp. 1154, 1165 (E.D.Mo.1995). Convenience of the witnesses is a primary, if not the most important, factor in considering a motion under Section 1404(a). *Wilansky,* 900 F.Supp. at 1165 (citing *Houk,* 613 F.Supp. at 927). "Additional factors which may be considered include: [P]ractical problems that make trial of a case easy, expeditious and inexpensive, such as access to sources of proof and availability of compulsory process for witnesses and expenses attendant to the production of witnesses; the relative advantages and obstacles to fair trial, and the relative congestion of the calendars of the potential transferee and transferor courts." *Id.* (citing *Wooldridge v. Beech Aircraft Corp.,* 479 F.Supp. 1041, 1057 (W.D.Mo.1979)). The Court may not disturb a plaintiff's choice of forum unless a balance of relative considerations tips strongly toward the defendant. *Id.* at 1166 (citing *St. Louis Federal Savings and Loan Ass'n v. Silverado Banking, Savings and Loan Ass'n,* 626 F.Supp. 379, 383 (E.D.Mo.1986) and *Wooldridge,* 479 F.Supp. at 1057); see also *Anheuser-Busch, Inc. v. City Merchandise,* 176 F.Supp.2d 951, 959 (E.D.Mo.2001).

Convenience of the Parties

Defendant Holmes first argues that it is more convenient for the parties to litigate this case in the Western District of Missouri. Holmes claims that all Plaintiffs reside in the Western District of Missouri, and that, therefore, the Western District is more convenient for them. Holmes fails to appreciate the fact that if the Western District had been more convenient for Plaintiffs, then they most certainly would have filed suit there. Plaintiffs chose to file suit in the Eastern District of Missouri, because their chosen counsel resides in the Eastern District, and litigation in the Western District would force them to incur additional costs and attorney's fees due to the travel requirements of their counsel. Further, Holmes' argument that litigation in the Western District would benefit Defendants is without merit. By Holmes' own admission, Defendants are residents of foreign states. Holmes has stated: "For them, there is little distinction between the Western and Eastern Districts of Missouri." Therefore, Holmes' argument as to the convenience of the parties is not well-taken. [FN3]

> FN3. Holmes cites to a case from the Southern District of New York, *Allied Int'l Products, Ltd., v. Textron Indus., Inc.,* 382 F.Supp. 210 (S.D.N.Y.1974), for the premise that where a plaintiff sues in a forum which is not plaintiff's home and to which plaintiff has no ties to the controversy, plaintiff's choice of forum is to be accorded less weight than would ordinarily be the case. The *Allied* case, however, is not on point. The plaintiff in *Allied* was neither a resident of the forum state nor the transferring state--it was a corporation located in India. Further, the defendant corporation actually had its principal place of business in the transferring district. Here, Plaintiffs are residents of the state of Missouri, save one, who resides approximately 150 miles from Kansas City, and Defendant Home Depot actually has a registered agent in the Eastern District of Missouri. Home Depot does not have a registered agent in the Western District.

Convenience of the Witnesses

Holmes next claims that it is more convenient for the witnesses for in having the matter litigated in the Western District of Missouri. Holmes argues that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 148742 (E.D.Mo.)
**(Cite as: 2006 WL 148742 (E.D.Mo.))**

since the fire, which was allegedly caused by the defective space heater, occurred in the Western District, and members the Kansas City Fire Department conducted their fire investigation in the Western District, it is more convenient to litigate the case there.

**\*3** While the convenience of the witnesses is said to be a primary, if not the most important factor in passing on a motion to transfer under § 1404(a), *Wilansky,* 900 F.Supp. at 1165, Holmes does not propose that such witnesses will actually be called to testify at trial. Plaintiffs correctly point out that to assure that moving parties don't simply compile an artificial list of witnesses who may not even possess relevant information to support their request for transfer, the courts make it clear that merely supplying such a list is insufficient without particularity:

> This factor involves not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issue of the case. As a result, it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail.

*Houk,* 613 F.Supp. at 929 (citations omitted); see also *American Standard v. The Bendix Corp.,* 487 F.Supp. 254, 264 (W.D.Mo.1980) ("if the party moving for transfer merely makes an allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied"); *Enterprise Rent-A-Car v. U-Haul Int'l,* 327 F.Supp.2d 1032, 1046 (E.D.Mo.2004) ("it is the burden of the party seeking transfer to specify clearly the key witnesses to be called and indicate what their testimony will entail").

Holmes does not indicate that it plans to call witnesses from the Kansas City Fire or Police Departments, nor does it specify what their testimony would encompass. In fact, Holmes admits it has retained an expert witness from Fort Wayne, Indiana to testify as to the fire's cause and origin. Plaintiffs claim this expert witness has already performed a site investigation at the scene of the fire and that the scene has been released from further investigation. There can be no further inspection or gathering of evidence from the scene of the fire, since the relevant artifacts gathered from the scene, including the space heater, are in the possession of Plaintiff's expert witness, who is located in Atlanta, Georgia. Thus,

Holmes' argument that the Western District is more convenient for the witnesses is without merit. The retained cause and origin experts, who are more likely to testify at trial are public fire personnel, are located closer to the Eastern District than the Western District of Missouri. Therefore, the motion for transfer based on the convenience of witnesses will be denied.

Interests of Justice

Holmes argues the interests of justice are better served by litigating this matter in the Western District of Missouri. Holmes claims transfer is justified due to supposed lack of judicial process to compel the appearance in this forum of the witnesses from the Kansas City Fire Department, who reside beyond the 100-mile limit of this Court's subpoena power. Holmes' argument that the public fire personnel are not subject to the subpoena power of the Eastern District implies a misreading of Rule 45 of the Federal Rules of Civil Procedure, which provides that witnesses may be commanded to travel from any such place within the state in which the trial is held. Fed. R. Civ. P. 45(c)(3)(A)(ii). In any event, the mere statement by Holmes that certain witnesses are not subject to subpoena is insufficient. Even if judicial process to compel the attendance of certain witnesses was lacking, it is not a controlling factor where, as in the present case, a defendant's argument merely assumes that the witnesses in question would not appear at trial voluntarily. *Houk,* 613 F.Supp. at 931 (citations omitted). It might further be noted that Holmes has not shown that use of video-taped depositions would be inadequate. *Id.* Defendants' co-counsel has at least one office in Kansas City, Missouri, which would enable witnesses in the area to appear for depositions. As such, Holmes has failed to show that compelling the attendance of certain witnesses makes the Eastern District less convenient or contrary to the interests of justice. Nevertheless, as discussed, Holmes has made no showing that the public fire personnel will actually be called as witnesses nor has it specified what their testimony at trial would entail.

Additional Factors

**\*4** Holmes' argument that access to evidence or proof is more convenient in the Western District is unfounded. As stated, *supra,* expert witnesses have already performed an investigation of the fire scene, and the scene has been released from further investigation. There can be no further inspection or gathering of evidence from the scene of the fire, since

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the relevant artifacts gathered from the scene, including the space heater, are in Atlanta, Georgia in the possession of Plaintiff's expert witness.

Finally, Holmes argues that "[w]hile the Eastern District of Missouri is thoroughly conversant with the law of the state of Missouri, the Western District is equally conversant. This factor, therefore, favors transfer." This statement is in stark contrast to the case-law on this issue. Holmes, itself, has acknowledged the established standard for transfer pursuant to Section 1404(a)--that the plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed. It is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, a plaintiff's choice of forum should not be disturbed. Holmes' argument that transfer is favored because both districts are equally conversant with the law of the State of Missouri belies the tenet that a court may not disturb a plaintiff's choice of forum unless a balance of relative considerations tips strongly toward the defendant. Holmes has failed to show that balance of relative considerations tips strongly toward it. Therefore, transfer on the basis of these additional factors is not warranted.

*Conclusion*

Movant has failed to show that the convenience of the parties or witnesses or the interests of justice would be substantially enhanced by transfer of this cause of action.

Accordingly,

IT IS HEREBY ORDERED that Defendant's The Holmes Group, Inc.'s Motion to Transfer, [# 6], is denied.

Not Reported in F.Supp.2d, 2006 WL 148742 (E.D.Mo.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 652519 (Trial Motion, Memorandum and Affidavit) Objections of Defendant the Holmes Group, Inc. to Plaintiffs' First Interrogatories (Feb. 27, 2006)

• 2006 WL 652520 (Trial Motion, Memorandum and Affidavit) Objections of Defendant Home Depot U.S.A., Inc. to Plaintiffs' First Interrogatories (Feb. 27, 2006)

• 4:05cv02052 (Docket) (Nov. 03, 2005)

• 2005 WL 3731953 (Trial Pleading) Answer of Defendant, The Holmes Group, Inc., to Plaintiffs' Petition (2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2006 WL 1214024 (E.D.Va.)
**(Cite as: 2006 WL 1214024 (E.D.Va.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Virginia.
Linda MULLINS, Plaintiff,
v.
EQUIFAX INFORMATION SERVICES, LLC,
Trans Union, LLC, Experian Information
Solutions, LLC, Mbna America Bank, N.A., Sears,
Roebuck and Co., Citibank
(South Dakota), N.A., Cacv of Colorado, LLC,
Defendants.
**No. Civ.A. 3:05CV888.**

April 28, 2006.

Matthew James Erausquin, Consumer Litigation
Associates PC, Fairfax, VA, Leonard Anthony
Bennett, Consumer Litigation Assoc. PC Newport
News, VA, for Plaintiff.

Jennifer Rossi Auwarter, Kilpatrick Stockton LLP,
Atlanta, GA, John Willard Montgomery, Jr.,
Montgomery & Simpson, LLLP, David Neal
Anthony, Kaufman & Canoles PC, James Hall
Revere, III, Kalbaugh Pfund & Messersmith PC,
Charles Lewis Williams, James Curie Skilling, Butler
Williams & Skilling PC, Richmond, VA, Mark
Gregory Carlton, Harman Claytor Corrigan &
Wellman, Glen Allen, VA, Bruce Steven Luckman,
Kogan Trichon & Wertheimer PC, Philadelphia, PA,
Nathan Christopher Doty, Jones Day, Damon
William Wright, Venable LLP, Robert Daniel
Keeling, III, Kevin Michael Henry, Sidley Austin
Brown & Wood LLP, Washington, DC, for
Defendants.

MEMORANDUM OPINION

PAYNE, J.

*1 The Plaintiff in this action, Linda Mullins
("Mullins"), has sued a number of defendants,
alleging common law defamation as well as
violations of the Fair Credit Reporting Act and the
Fair Debt Collection Practices Act. *See* 15 U.S.C. §
1681, *et seq.* This matter is currently before the Court
on a motion to transfer venue from the Richmond

Division to the Alexandria Division by MBNA
America Bank, N.A. ("MBNA"). Citibank (South
Dakota), N.A. ("Citibank"), [FN1] CACV of
Colorado, LLC ("CACV"), and Experian Information
Solutions, Inc. ("Experian") have joined MBNA's
motion to transfer and adopt its memorandum of law
in support thereof. [FN2] Additionally, CACV has
moved to compel arbitration.

FN1. The named defendant is Citibank
(South Dakota), N.A., but the movant is
Citibank USA, National Association.

FN2. The Plaintiff has also sued Equifax
Information Services, LLC ("Equifax"),
Trans Union, LLC ("Trans Union"), and
Sears, Roebuck and Co ("Sears").

Count One alleges that the credit reporting
agencies (Equifax, Experian, and Trans
Union), as defined by the FCRA, violated 15
U.S.C. § 1681e(b), by failing to establish or
to follow reasonable procedures to assure
maximum possible accuracy in the
preparation of the credit reports and credit
files they published and maintained
concerning the Plaintiff.
Count Two alleges that the credit reporting
agencies violated 15 U.S.C. § 1681i, (1) by
failing to delete or correct inaccurate
information in the Plaintiff's credit file after
receiving actual notice of such inaccuracies
and after conducting a reinvestigation, (2)
by failing to maintain reasonable procedures
by which to filter and verify disputed
information in the Plaintiff's credit file, (3)
by failing to note that disputed accounts
were in dispute, and (4) by failing to
conduct a reasonable investigation with
regard to Plaintiff's disputes.
Count Three alleges that the furnishers of
information (MBNA, Sears, Citibank, and
CACV), as defined by the FCRA, defamed
the Plaintiff.
Count Four alleges that the furnishers of
information violated 15 U.S.C. § 1681s-
2(b), (1) by publishing inaccurate and
defamatory tradelines within the Plaintiff's
credit file to the credit reporting agencies
without also including a notation that the
debt was disputed, (2) by failing to fully and
properly investigate the Plaintiff's disputes,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) by failing to review all information regarding the same, and (4) by failing to correctly report the results of an accurate investigation to the credit reporting agencies.

Count Five alleges that CACV, a debt collector as defined by the FDCPA, violated the FDCPA (1) by using a false, deceptive, or misleading representation or means in the collection of a debt (15 U .S.C. § 1692e), (2) by publishing a false representation of the character, amount, or legal status of a debt (15 U.S.C. § 1692e(2)), (3) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (15 U.S.C. § 1692e(8)), and by using unfair or unconscionable means to collect or attempt to collect any debt (15 U .S.C. § 1692f).

## STATEMENT OF FACTS

### A. Facts Alleged in Complaint

According to the Complaint, in late 2003, the Plaintiff became aware that MBNA was reporting a derogatory tradeline on her consumer credit report with respect to an MBNA account, for which MBNA indicated the Plaintiff was contractually liable. MBNA had assigned this account to CACV, and CACV was reporting a second derogatory tradeline based on this same account. Additionally, the Plaintiff learned that Citibank and Sears were reporting a derogatory tradeline based on a Sears account, for which they reported she was contractually liable.

The Plaintiff denies that she was an obligor on the MBNA, Sears, and CACV accounts. According to the Plaintiff she contacted MBNA, Sears, Citibank, and CACV, to inform them of the mistake. She also wrote multiple letters to Equifax, Experian, and Trans Union over a two year period, disputing these debts and demanding that the derogatory tradelines be removed from her credit report. The Plaintiff then alleges that the credit reporting agencies failed to transmit all relevant information to the furnishers and instead transmitted incomplete and insufficient Automated Credit Dispute Verifications ("ACDVs") to the furnishers. The Plaintiff further alleges that the furnishers failed to review original documents, contact the Plaintiff directly, or to perform a reasonable investigation into the substance of the

Plaintiff's disputes, and directed the credit reporting agencies that the derogatory notations on the Plaintiff's credit report should not be removed. The credit reporting agencies subsequently notified the Plaintiff that the disputed accounts had been verified and would remain on her credit report.

### B. Facts Relevant to Motion to Transfer

#### 1. Parties

The Plaintiff and her husband have lived in Leesburg, Virginia for a number of years, which is within the geographic boundaries of the Alexandria Division. The defendants in this case are foreign corporations or national banks, whose principal places of business are not located within Virginia. However, the defendants that have joined this motion have their registered or statutory agents within the geographic limitations of the Richmond Division. The Plaintiff's lead counsel (Mr. Bennett) is located in Newport News, Virginia, though the Plaintiff also has counsel (Mr. Erausquin) in Fairfax, Virginia. As for the defendants, MBNA and Citibank have counsel in Washigton, D.C., CACV has counsel in Richmond, and Experian has counsel in both locations.

#### 2. Witnesses

*2 According to MBNA, the Plaintiff has identified a number of potential witnesses located within the Alexandria Division: the Plaintiff and her husband (Leesburg), Beverly H. Morgan (Middleburg), Gilbert Irwin (Manassas), and employees of BB & T-DDA. [FN3] The Plaintiff also identified employees of the Bank of Clarke County as potential witnesses. According to MBNA, this bank is within the Western District of Virginia, but is located only a few miles from the Alexandria Division. However, the Plaintiff has represented that she is aware of no witness within the Alexandria Division who is unwilling to testify in Richmond.

> FN3. Apparently, Plaintiff indicated that these witnesses are located in North Carolina, but MBNA contends that the employees in the Fairfax, Virginia offices were those that denied the Plaintiff credit.

The Plaintiff also identified, as potential witnesses, employees of Capital One Bank in Glen Allen, which is within the Richmond Division. MBNA argues that any testimony from these witnesses would be irrelevant because Capital One is not a defendant and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1214024 (E.D.Va.)
(Cite as: 2006 WL 1214024 (E.D.Va.))

because there has been no allegation that Capital One either denied the Plaintiff credit or offered her credit on unfavorable terms. The Plaintiff contends that this evidence would be relevant because this action is partly based on the credit reporting agencies' failure to reinvestigate a Capital One account. Additionally, however, the Plaintiff points to the fact that MBNA's counsel stated at the Rule 16(b) initial pretrial conference that it planned to present evidence of the Capital One reporting as a defense of alternate causation of damages. There is no dispute that the relevant evidence and witnesses from Capital One are located in Richmond.

With respect to damages, MBNA contends that most of the witnesses will be located within the Alexandria Division. The alleged damages relate to the approaching ejectment of the Plaintiff from her place of residence. Additionally, MBNA speculates that the Plaintiff's mental health care providers are likely located within the Alexandria Division.

3. Events Giving Rise to Claim

By all appearances, the alleged inaccurate information in the Plaintiff's credit report originated when the Plaintiff's husband filed for bankruptcy in the Eastern District of Virginia, Alexandria Division. And, MBNA contends that many of the events giving rise to the Plaintiff's causes of action occurred within the Alexandria Division: (1) the Plaintiff sent complaints to the credit reporting agencies from her residence in Leesburg, (2) the Plaintiff had telephone communications with MBNA from her residence in Leesburg, and (3) the alleged injuries were incurred in the Alexandria Division.

The Plaintiff counters that the events giving rise to this action did not occur in the Alexandria Division, and indeed did not occur in the Eastern District of Virginia or even in the Commonwealth of Virginia. Instead of focusing on her own conduct, the Plaintiff points to the conduct of the defendants-- failure to conduct reinvestigations of credit disputes and the improper forwarding of verification forms--as the key events giving rise to her claims. MBNA performs reinvestigations in Wilmington, Delaware, and Citibank outsources its investigations to India. It appears that CACV operates out of Colorado. The verification forms were forwarded to the credit reporting agencies in various different states: Equifax in Jamaica or the Philippines, Trans Union in California or Pennsylvania, and Experian in Texas.

DISCUSSION

I. Motion to Transfer

*3 MBNA moves the Court to transfer this action from the Richmond Division to the Alexandria Division pursuant to Local Rule 3(C), 28 U.S.C. § 1391, and 28 U.S.C. § 1404. MBNA has failed to distinguish between a transfer based on improper venue and a transfer for the convenience of the parties and witnesses. Consequently, MBNA has conflated and confused the issues in its brief. Ultimately, while MBNA cites to several venue provisions, its only real argument for transfer is the convenience of the parties and witnesses under 28 U.S.C. § 1404(a). The other provisions are inapposite.

A. Improper Venue

Congress has provided separate transfer of venue provisions for improper venue and for convenience of the parties and witnesses. Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ." Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

MBNA states that venue is improper in the Richmond Division, but never gets beyond that bare assertion. In its brief, MBNA makes much of the fact that Magistrate Judge Dohnal did not address Local Rule 3(C) in an opinion denying transfer in *Poling v. Trans Union LLC* (Civil Action No. 3:05cv432). Plaintiff's Memorandum, Exhibit A. Local Rule 3(C) states, in relevant part, that

Civil actions for which venue is proper in this district shall be brought in the proper division, as well. The venue rules in 28 U.S.C. § 1391 et seq. also shall apply to determine the proper division in which an action shall be filed. For the purpose of determining the proper division in which to lay venue, the venue rules stated in 28 U.S.C. § 1391 et seq. shall be construed as if the terms 'judicial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

district' and 'district' were replaced with the term 'division.'

MBNA suggests that applying Local Rule 3(C) will lead the Court to conclude that venue is improper in this division. However, MBNA did not explain how or why the Court would reach that conclusion.

Applying Local Rule 3(C) to § 1391(b), the venue provision with respect to divisions would read as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a [division] where any defendant resides, if all defendants reside in the same State, (2) a [division] in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a [division] in which any defendant may be found, if there is no [division] in which the action may otherwise be brought.

*4 The Court should also apply Local Rule 3(C) to § 1391(c), which would read as follows:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any [division] in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one [division] and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any [division] in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that [division] were a separate State, and, if there is no such [division], the corporation shall be deemed to reside in the [division] within which it has the most significant contacts.

As for the transfer provisions, the Court need not apply Local Rule 3(C) because § 1406(a) and § 1404(a) already refer to both districts and divisions.

Assessment of the record makes it clear that laying venue in the Richmond Division was not improper. MBNA and the defendants joining its motion are corporations, and thus, they are deemed to reside in any division in which they are subject to personal jurisdiction at the time the action was commenced. [FN4] The defendants have not argued that they were not subject to personal jurisdiction in the Richmond Division at the commencement of the action. And, indeed, it appears that all of the defendants were doing business in the Richmond Division and had registered or statutory agents for service of process in the Richmond Division. Consequently, the

defendants resided in the Richmond Division, and the Plaintiff may properly lay venue in the Richmond Division. Local Rule 3(C); 28 U.S.C. § 1391(b)(1). There is no doubt that venue would also be proper in the Alexandria Division under this same analysis, and indeed probably under § 1391(b)(2) as well because it appears that a substantial part of the events giving rise to this claim occurred there. However, venue is not improper in the Richmond Division.

> FN4. None of the defendants contested personal jurisdiction by filing a motion pursuant to Fed.R.Civ.P. 12(b)(2), and thus they have waived that defense, but the statute specifically references the commencement of the action as the relevant time period. Thus, the defendants' waiver on this issue is irrelevant.
> The defendants have also waived their rights to seek dismissal for improper venue under Rule 12(b)(3). But waiver of the Rule 12 defense does not amount to a waiver of the right to seek transfer.

Since venue is not improper in the Richmond Division, transfer would not be appropriate under § 1406(a). MBNA fails to ever mention § 1406(a), but that would have been the proper transfer provision had MBNA successfully demonstrated improper venue in the Richmond Division. The bottom line, however, is that MBNA's hand wringing over the fact that Judge Dohnal never discussed Local Rule 3(C) turns out to be much ado about nothing. [FN5]

> FN5. At oral argument, MBNA conceded that it is subject to personal jurisdiction in the Richmond Division and thus that venue is proper.

B. Motion, Consent, or Stipulation of All Parties

MBNA also suggests, in a brief reference, that 28 U.S.C. § 1404(b) supports its motion to transfer. Section 1404(b) provides that "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." Obviously, the missing element for this statute to apply to this case is the motion, consent, or stipulation of all parties. The Plaintiff opposes transfer from the Richmond Division to the Alexandria Division, and a number of defendants have declined to join MBNA's motion. Thus, § 1404(b) does not apply here.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C. Convenience of the Parties and Witnesses

**\*5** It is necessary next to consider whether transfer would be appropriate under § 1404(a), for the convenience of the parties and witnesses and in the interest of justice. Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." ' *Stewart Org., Inc. v. Ricoh, Inc.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945). The moving party bears the burden of demonstrating that a transfer of venue is warranted under § 1404(a). *The Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.,* 387 F.Supp.2d 564, 566 (E.D.Va.2005). Indeed, the moving party must show that the balance of convenience among the parties and witnesses "is beyond dead center, and strongly favors the transfer sought." *Medicenters of America, Inc. v. T & V Realty & Equip. Corp.,* 371 F.Supp. 1180, 1184 (E.D.Va.1974) (granting transfer from Richmond Division to Norfolk Division).

In exercising its discretion under the statute, it is necessary to "consider and balance" a number of factors, including:

(1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

*One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.,* 312 F .Supp.2d 824, 828 (E.D.Va.2004) (citing *BHP Int'l Inv., Inc. v. Online Exch.,* 105 F.Supp.2d 493, 498 (E.D.Va.2000)). The statute provides no guidance as to the weight that should be given to the various factors, and thus "much necessarily must turn on the particular facts of each case" and "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3847 (2005). Depending on the circumstances of the case, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." 15 Wright, Miller & Cooper, § 3854. The principal factors to consider, however, are a plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice. *Koh v. Microtek Int'l, Inc.,* 250 F.Supp.2d 627, 633 (E.D.Va.2003). [FN6]

> FN6. The ease of access to sources of proof refers principally to the discovery component of litigation and is considered as a party convenience factor. The cost of obtaining attendance of witnesses and the availability of compulsory process are components of both party convenience and the interest of justice factors.

1. Plaintiff's Choice of Forum

The first factor to be considered is the level of deference that should be given to the Plaintiff's choice of this forum in which to adjudicate its claims. "In analyzing the propriety of a transfer, plaintiff's choice of forum is typically entitled to substantial weight; however, if 'a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." ' *Telepharmacy Solutions, Inc. v. Pickpoint Corp.,* 238 F.Supp.2d 741, 743 (E.D.Va.2003) (quoting *Cognitronics Imaging Sys. v. Recognition Research Inc.,* 83 F.Supp.2d 689, 696 (E.D.Va.2000)). When the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight. *Intranexus, Inc. v. Siemens Medical Solutions Health Services Corp.,* 227 F.Supp.2d 581, 583 (E.D.Va.2002). But, even then, the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum.

**\*6** Based on the facts recited by the parties in their pleadings, it would appear that the Plaintiff's claims have little nexus with the Richmond Division. The only facts and witnesses associated with the Richmond Division are those connected to a disputed Capital One account. Capital One is not a defendant, however, and it is not entirely clear whether or how the actions of the credit reporting agencies with respect to this account form the basis of the Plaintiff's claims against them. Though, it appears that MBNA may argue a defense of alternative causation based on reports associated with the account. Nevertheless, the Richmond Division could hardly be characterized as the nucleus of operative fact.

Slip Copy
Slip Copy, 2006 WL 1214024 (E.D.Va.)
(Cite as: 2006 WL 1214024 (E.D.Va.))

Given that the Richmond Division is not the Plaintiff's home forum or the nucleus of operative fact, the Plaintiff's choice of forum should be accorded little weight in balancing the convenience factors and the interest of justice. However, the Plaintiff's choice of forum remains a relevant consideration, especially since MBNA and the other defendants bear the burden of proving that the balance of factors weighs in favor of transfer. If the defendants cannot demonstrate that the balance of factors strongly favors transfer, then the Plaintiff's choice of forum should be respected.

2. Convenience of the Parties

When weighing the convenience of the parties, "[t]he logical starting point is a consideration of the residence of the parties." *U.S. Fidelity & Guaranty Corp. v. Republic Drug Co., Inc.*, 800 F.Supp. 1076, 1080 (E.D.N.Y.1992). However, "residence is not a controlling factor if the convenience of witnesses and the interest of justice point strongly in a contrary direction." 15 Wright, Miller & Cooper, § 3849. In most cases, a plaintiff cannot realistically be heard to argue that a transfer to the plaintiff's home district or division will impose a great inconvenience. Likewise, however, where the defendant proposes a transfer to a district or division other than the one in which it resides, it can hardly be said to have maximized its convenience. *See* 17 Moore's Federal Practice § 111.13(1)(e) (Matthew Bender 3ed.2005).

More importantly, however, "[a] defendant moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer. It is not enough for defendant to argue only that plaintiff's choice of forum is inconvenient for the plaintiff." 15 Wright, Miller & Cooper § 3849. *See also American Can Co. v. Crown Cork & Seal Co., Inc.*, 433 F.Supp. 333, 338 (E.D.Wis.1977) ("The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer."); *James v. Norfolk & Western Ry. Co.*, 430 F.Supp. 1317, 1319 (S.D.Ohio 1976) ("The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer. Assuming arguendo, that the plaintiff has inconvenienced himself in this case, he may do so if he so desires. Thus the plaintiff's residence is more a consideration in determining whether hardship will result to the plaintiff should the transfer be granted rather than a factor to be weighed in the movant's favor.").

*7 Here, the Plaintiff resides in the Alexandria

Division, and thus she cannot plausibly argue that a transfer to the Alexandria Division would be an inconvenience to her. And, indeed, she does not so argue. However, MBNA and the other defendants have not argued for a transfer to their home districts, but rather argue for a transfer to a different division within the Eastern District of Virginia. Given that all the defendants reside in different districts, perhaps MBNA thought a motion to transfer to another district would be futile. [FN7] Even so, it is disingenuous for MBNA to argue that a transfer to the Alexandria Division would substantially alleviate the burden of litigating in a foreign forum. The Alexandria and Richmond Divisions are not so far from one other to make a substantial difference. MBNA obviously recognizes the weakness in such an argument because it literally commits only two sentences in its brief to that assertion. Additionally, while Wilmington, Delaware is closer to Alexandria than Richmond, there has been no showing as to whether the other defendants, who reside in a number of different locations around the country, would be inconvenienced by a transfer to Alexandria.

> FN7. "[W]hen transfer would be more convenient for one defendant, but less convenient for another defendant, plaintiff's choice of forum has been sustained." 15 Wright, Miller & Cooper § 3849.

If the defendants are only going to pay mere lip service to this factor, the Court need not give it any weight. Thus, in light of the fact that the Plaintiff would not be inconvenienced by a transfer, the factor is essentially neutral. [FN8]

> FN8. The convenience of counsel is generally accorded little or no weight in the transfer analysis. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir.2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

3. Convenience of Witnesses

The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a). When reasonably possible, live testimony is preferred to other means of presenting evidence. *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1356 (N.D.Ga.2004). Typically, however, a distinction is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

drawn between party and non-party witnesses. "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Id.* The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue. *Koh, 250 F.Supp.2d at 637.*

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Id. at 636.* Naturally, in contrast to witness testimony that is merely cumulative, "greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.* Witness convenience is "not merely a battle of numbers favoring the party that can provide the longest list of witnesses it plans to call." *Anderson v. Century Products Co., 943 F.Supp. 137, 149 (D.N.H.1996).*

*8 Additionally, the moving party must demonstrate "whether that witness is willing to travel to a foreign jurisdiction." *Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F.Supp.2d 21, 33 (D.D.C.2002).* Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process. *See id.* When the "appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important." *Anderson, 943 F.Supp. at 149.*

Although live testimony is the preferred mode of presenting evidence, when non-party witnesses are unavailable to give live testimony, videotaped depositions often are sufficient. Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical. *See Koh, 250 F.Supp.2d at 637; Acterna, LLC v. Adtech, Inc. ., 129 F.Supp.2d 936, 939 (E.D.Va.2001).* This is especially so when the witness is not central to the case. "[L]oss of live testimony of less central witnesses is not so great a price for honoring plaintiff's choice." *Anderson, 943 F.Supp. at 149.*

In this case, the Plaintiff has represented that she will

make all of her party witnesses available at trial in the Richmond Division. Presumably, MBNA and the other defendants will follow suit, and make their party witnesses available at trial. At present, they have not indicated otherwise. As for the third-party witnesses, MBNA has failed to provide the Court with sufficient information, by affidavit or otherwise, that would permit the Court to assess the materiality and inconvenience to individual witnesses. All MBNA has provided is a list of potential witnesses identified by the Plaintiff, and then simply notes that their residence is in the Alexandria Division. MBNA has not met its burden of showing that the inconvenience to the witnesses of travel to the Richmond Division requires a transfer. [FN9]

FN9. MBNA does not mention lack of compulsory process in its argument. To the extent that it is relevant, however, it appears that some of the witnesses residing in the Alexandria Division may be within reach of the Court's 100 mile subpoena power. *See Fed.R.Civ.P. 45(b)(2).* The distance between Richmond and Alexandria is approximately 102 miles.

4. Interest of Justice

Under *§ 1404(a),* the Court must consider the "interest of justice" in determining whether to transfer venue. The interest of justice encompasses public interest factors aimed at "systemic integrity and fairness." *Stewart Org., Inc., 487 U.S. at 30. See also Brock v. Entre Computers Centers, Inc., 933 F.2d 1253, 1258 (4th Cir.1991).* Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity. *See U.S. Ship Management, Inc. v. Maersk Line, Ltd., 357 F.Supp.2d 924, 937-938 (E.D.Va.2005).* When determining whether a fair proceeding requires a transfer of venue, courts often consider docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. *Carpenter v. Parker Drilling Offshore USA, Inc., --- F.Supp.2d ----, 2005 WL 1432373, *1 (E.D.La.2005)* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 505, 509 (1947)). Systemic integrity must also necessarily take account of a party's attempt to game the federal courts through forum manipulation. *See The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp.2d 12, 15 (D.Mass.2002).*

Slip Copy
Slip Copy, 2006 WL 1214024 (E.D.Va.)
(Cite as: 2006 WL 1214024 (E.D.Va.))

Page 8

*9 In this case, MBNA has raised no interest of justice factors in arguing for transfer. There are no other actions pending between these parties, so there are no concerns of inconsistent judgments. The Plaintiff cites docket conditions as one factor weighing in her favor, though she has not made any showing that the docket conditions are substantially different. [FN10] Likewise, the Plaintiff suggests that this Court has developed expertise with respect to Fair Credit Reporting Act and Fair Debt Collection Practices Act cases because more have been filed here than in any other division. However, there has been no showing that the Richmond Division's expertise is such that it would support a transfer.

> FN10. *See Cognitronics,* 83 F.Supp.2d at 699 ("Docket conditions, while a consideration, cannot be the primary reason for retaining a case in this district. This Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.").

The Plaintiff also suggests that MBNA is forum shopping. However, the Plaintiff raises no facts from which the Court could conclude that MBNA is forum shopping, except for the motion to transfer. A motion to transfer cannot be equated with forum shopping.

C. Conclusion: Motion to Transfer

There is no doubt that the Plaintiff would not be inconvenienced by a transfer to the Alexandria Division. So, a transfer would not amount to shifting the inconvenience from one party to another. MBNA and the other defendants, however, have not met their burden of demonstrating that the convenience of the parties and witnesses and the interest of justice weigh strongly in favor of transfer. While it is true that the Plaintiff's choice of division within the Eastern District should not be given much weight, MBNA has failed to show that it would be inconvenienced by litigation in the Richmond Division. The Plaintiff is entitled to inconvenience herself through her choice of forum if she so desires. Additionally, MBNA has not shown that the non-party witnesses would be substantially inconvenienced by having to travel to the Richmond Division, or that compulsory process would be necessary or unavailable. MBNA also has failed to provide the Court with any information as to the relevance of any individual witness' testimony,

such that the Court could form an opinion as to materiality. Finally, there are no interest of justice factors that weigh heavily with respect to this transfer analysis.

While it would have made sense for this action to have been filed in the Alexandria Division, and the likely reason for filing here is the fact the fact that the Plaintiff's counsel prefers the Richmond Division, that is not an adequate basis for transfer. For all the foregoing reasons, the defendants' motions to transfer this action from the Richmond Division to the Alexandria Division will be denied.

Conclusion

For the foregoing reasons, the defendants' motions to transfer (Docket Nos. 32, 46, 49, 50) are denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

Slip Copy, 2006 WL 1214024 (E.D.Va.)

**Motions, Pleadings and Filings (Back to top)**

• 3:05cv00888 (Docket) (Dec. 29, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



1985 WL 5816

Page 1

Not Reported in F.Supp., 1985 WL 5816 (E.D.Pa.), Fed. Sec. L. Rep. P 92,350
**(Cite as: 1985 WL 5816 (E.D.Pa.))**

**H**
United States District Court; E.D. Pennsylvania.
**Stepak, et al.**
v.
**Katz, et al.**
No. 85-2048

August 19, 1985

BECHTLE, District Judge.

*1 Order of BECHTLE, District Judge.

AND NOW, TO WIT, this 19th day of August, 1985, presently before the court are defendants' motions to transfer venue from the United States District Court for the Eastern District of Pennsylvania ("Eastern District") to the United States District Court for the Western District of Pennsylvania ("Western District"). The motions have been consolidated by stipulation of counsel for purposes of this Order.

On April 9, 1985, defendants, in a press release, announced that publicly traded Papercraft Corporation (the "target company") would be merged with a company to be formed by Citicorp Capital Advisors, Ltd. ("Citicorp") by means of a leverage buyout plan. After the merger, Papercraft Corporation ("Papercraft"), a new, private corporation would exist and be owned by Citicorp, the individual defendants, and a group of institutional investors. Three days later, on April 12, 1985, plaintiffs, shareholders of the target company, initiated these two class action lawsuits alleging that the press release contained false and material information and omitted material information with respect to the target company's financial and operating condition. As bases of liability, plaintiffs assert sections 10(b) and 20 of the Securities Exchange Act of 1934, as amended (the "SEA"), Rule 10b-5 adopted by the Securities and Exchange Commission, and the common law doctrine of breach of fiduciary duty.

Defendants move to transfer venue of both cases to the Western District.

Title 28 U.S.C. § 1404(a) authorizes the court to transfer venue as follows:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The court will not, however, disturb plaintiff's choice of forum "unless the balance of convenience of the parties is *strongly* in favor of defendant." *Shutte v. Armco Steel Corporation,* 431 F.2d 22, 25 (3d Cir. 1970). *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). Plaintiff's choice of forum is particularly preferred where, as here, the case is brought under the SEA. The SEA's venue statute, 15 U.S.C. § 78aa, [FN1] is construed broadly to permit venue in a district within which any act in furtherance of the unlawful scheme was committed. *See S & G Securities, Inc. v. Fuqua Investment Co.,* 466 F.Supp. 1114 (D. Mass. 1978). Congress, in the SEA, essentially permits plaintiff the widest choice of forums to bring the lawsuit and, consequently, defendant's burden to overcome plaintiff's choice of forum is particularly heavy. *See Zorn v. Anderson,* 263 F.Supp. 745 (S.D. N.Y. 1966).

> FN1 Section 27 of the SEA, 15 U.S.C. § 78aa, provides, in pertinent part:
> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

*2 After carefully considering the parties' arguments and the relevant factors as set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), the court believes that defendant has not adequately demonstrated that transfer of this case would be for convenience of the parties and witnesses and in the interest of justice. Plaintiffs chose the Eastern District as the forum in which they would assert their claim of a violation of the SEA. Several strategical factors seem to underlie plaintiffs' choice. First, the plaintiff in at least one of the two suits, Barnett Stepak, resides in the Eastern District. *See Piper Aircraft v. Reyno,* 454 U.S. 235 (1981). Second, important witnesses affiliated with Citicorp and Bear Stearns, the target company's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1985 WL 5816
Not Reported in F.Supp., 1985 WL 5816 (E.D.Pa.), Fed. Sec. L. Rep. P 92,350
(Cite as: 1985 WL 5816 (E.D.Pa.))

investment banking company, are located in New York City which is within the range of the subpoena power of the Eastern District but outside the subpoena power of the Western District.

Arguments set forth by defendants in support of their motion to transfer, taken separately or in combination, are insufficient to compel this court to upset plaintiffs' choice of forum and transfer venue to the Western District. First, although defendants are located and operate outside of the Eastern District and the conduct complained of occurred in the Western District, the publicity complained of occurred in the Eastern District and caused an injury there. Second, although the principal witnesses with knowledge of the merger and the facts behind the press release are located and reside in the Western District, these witnesses are only four in number, two of the four witnesses are named defendants, the other two witnesses are within the subpoena power of the Eastern District, and the courts of the Eastern District and Western District are only about 300 miles apart. Third, although two related actions are pending in the Court of Common Pleas of Allegheny County, Pennsylvania, the court is confident that counsel and parties in the lawsuits before this court and counsel and parties in the lawsuits in the common pleas court cases will cooperate and coordinate efforts to efficiently and amicably complete discovery and prepare for trial, as they have already agreed to do. The court is also confident that plaintiffs will proceed with discovery in a fair and reasonable manner and at a place reasonably convenient to these defendants and also the persons involved in the common pleas court cases. Fourth, although the books, records, documents, and exhibits pertinent to this case are located in the Western District, defendants have not demonstrated with specificity that trial in the Eastern District would cause them any hardship or prejudice. Defendants set forth no facts as to the quantity, size, or other characteristics with respect to these books, records, documents, and exhibits. Defendants make merely general allegations. Fifth and finally, the court does not believe that preference for the forum chosen by plaintiff should be any less when plaintiff files his suit as a class action suit rather than filing it as an individual. To denigrate the preference would hinder plaintiff's fiduciary responsibility to adequately represent the members of the proposed class. See *Bogosian v. Gulf Oil Corporation, et al., 337 F.Supp. 1230 (E.D. Pa. 1972)* (Lord, C.J.).

*3 For the foregoing reasons, IT IS ORDERED as follows:

1. The motion of defendants to transfer venue in Civil Action No. 85-2048 is *denied*.

2. The motion of defendants to transfer venue in Civil Action No. 85-2060 is *denied*.

Not Reported in F.Supp., 1985 WL 5816 (E.D.Pa.), Fed. Sec. L. Rep. P 92,350

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.