**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DELCATH SYSTEMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No. 1:06CV01391 (RBW)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT LADD,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO TRANSFER**

**AND FOR DENIAL OF ANY REQUEST FOR FURTHER EXTENSION OF THE TRO**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ..........................................................................................1

POINT I

IRRESPECTIVE OF THE COURT'S RULING ON THE MOTION TO
TRANSFER VENUE, THE TEMPORARY RESTRAINING ORDER MUST
BE DISSOLVED IMMEDIATELY TO PREVENT FURTHER
IRREPARABLE HARM TO LADDCAP ..........................................................1

    A.    The Temporary Restraining Order Is Not Maintaining The
           Status Quo, But Causing Irreparable Harm To Laddcap. ............................1

           1.    The TRO Is Eroding Laddcap's 60-Day Window To
                 Solicit Consents. ...................................................................2

           2.    The TRO's One-Sided Restraint Against Laddcap
                 Allows Delcath To Proceed With Its Own Revocation
                 Solicitation Campaign While Laddcap's Hands Are
                 Tied. ..................................................................................2

           3.    The TRO Allows Delcath To Achieve By Litigation
                 What It Has Failed To Achieve By Solicitation. .............................3

           4.    Laddcap Should Not Be Punished For Delcath's
                 Improvident Choice Of Forum..........................................................4

    B.    The Harm To Laddcap And Delcath's Other Stockholders
           Flowing From The TRO Far Outweighs The Harm To Delcath
           Flowing From The Dissolution Of The TRO. ............................................4

    C.    Delcath Has Failed To Demonstrate Irreparable Harm. ..............................6

    D.    Consideration Of The Public Interest Strongly Favors Denial Of
           The Requested Injunction. ........................................................8

POINT II

THIS ACTION SHOULD BE TRANSFERRED  TO NEW YORK OR
CONNECTICUT ..............................................................................9

    A.    The Court Has Broad Discretion To Transfer This Action To
           An Appropriate Forum..............................................................9

1.      This Action Could Have Been Brought In The Southern
        District Of New York Or In The District Of
        Connecticut. ...................................................................................11

2.      Considerations Of Convenience And Justice Support
        The Transfer Of This Action To New York Or To
        Connecticut. ...................................................................................11

CONCLUSION...................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                              <u>Page</u>

<u>In re AT&T Access Charge Litig.</u>, No. Civ.A. 05-1360 (ESH), 2005 WL 3274561
     (D.D.C. Nov. 16, 2005)................................................................................................10, 13

<u>Airport Working Grp. of Orange Co. v. U.S. Dep't of Defense</u>, 226 F. Supp. 2d 227
     (D.D.C. 2002) ...........................................................................................................10

<u>Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.</u>, 295 F.Supp.2d 75
     (D.D.C. 2003) .............................................................................................................7

<u>Barrow v. Graham</u>, 124 F. Supp. 2d 714 (D.D.C. 2000) ...................................................1

<u>Bayly Corp. v. Marantette</u>, No. 82-1354, 1982 WL 1337 (D.D.C. Oct. 19, 1982) ........7

<u>Bender v. Jordan</u>, --- F. Supp. 2d ---, Civ. A. No. 06-92 (RMC), 2006 WL 2042962
     (D.D.C. 2006) .....................................................................................................5, 6, 7

<u>Blasius Indus., Inc. v. Atlas Corp.</u>, 564 A.2d 651, 659 (Del. Ch. 1988) ........................5

<u>Brannen v. Nat'l R.R. Passenger Corp.</u>, 403 F. Supp. 2d 89 (D.D.C. 2005) ..................9

<u>Cameron v. Thornburgh</u>, 983 F.2d 253 (D.C. Cir. 1993) .............................................10

<u>Carmody v. Toll Brothers, Inc.</u>, 723 A.2d 1180 (Del. Ch. 1998) ....................................5

<u>Chaplaincy of Full Gospel Churches v. England</u>, ---- F.3d ----, 2006 WL 1867203
     (D.D.C. July 7, 2006).................................................................................................6, 7

<u>Comptroller v. Calhoun First National Bank</u>, 626 F. Supp. 137 (D.D.C. 1985) ..........12

<u>Giuricich v. Emtrol Corp.</u>, 449 A.2d 232 (Del. 1982) .....................................................8

<u>Highland Select Equity Fund, L.P. v. Motient Corp.</u>, No. Civ. A. 2092-N,
     2006 WL 1903129 (Del. Ch. Jul. 6, 2006).........................................................14

<u>Hilton Hotels Corp. v. ITT Corp.</u>, 978 F.Supp. 1342 (D. Nev. 1997)............................6

<u>Jim Walter Corp. v. Allen</u>, Civ. A. No. 10974, 1990 WL 3899 (Del. Ch. Jan.12, 1990)..............14

<u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3 (D.D.C. 1996)...................................9

<u>McClamrock v. Eli Lilly and Co.</u>, 267 F. Supp. 2d 33 (D.D.C. 2003) ............................9

O'Shea v. Int'l Brotherhood of Teamsters, No. Civ.A. 04-0207 (RBW), 2005 WL
4861435 (D.D.C. March 2, 2005) ................................................................9, 11

Paramount Communications, Inc., 637 A.2d 34 (Del. 1994) ........................................5

Payne v. Giant of Maryland, LLC, Civ. A. No. 05-897 (GK), 2006 WL 1793303 (D.D.C.
June 28, 2006)................................................................................................10

Rapoport v. Litigation Trust of MDIP, Inc., No. Civ. A. 1035-N, 2005 WL 3277911
(Del. Ch. Nov. 23, 2005)................................................................................14

SEC v. Ernst & Young, 775 F. Supp. 411 (D.D.C. 1991) ......................................9, 12,
13

Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003)................................10, 11,
12

Trout Unlimited v. U.S. Dep't of Agriculture, 944 F. Supp. 13 (D.D.C. 1996) ......................9, 10

U.S. Die Casting and Dev. Co. v. Sec. First Corp., Civ. A. No. 14019, 1995 WL 301414
(Del. Ch. Apr. 28, 1995) ................................................................................15

Unitrin, Inc. v. American General Corp., 651 A.2d 1361 (Del. 1995) ...........................................5

## **Statutes**

15 U.S.C. § 78aa ................................................................................................11

8 Del. C. § 228(c)................................................................................................2, 14

**DEFEENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO TRANSFER
AND FOR DENIAL OF ANY REQUEST FOR FURTHER EXTENSION OF THE TRO**

Defendants Robert Ladd, Laddcap Value Partners LP ("Laddcap"), Laddcap Value Advisors LLC and Laddcap Value Associates LLC (collectively, the "Laddcap Defendants") respectfully submit this Memorandum of Law in support of their motion to transfer.

## PRELIMINARY STATEMENT

Delcath does not dispute that the primary link between this District and the underlying facts of this dispute are the Laddcap Defendants' SEC filings. Delcath's argument that those filings, standing alone, make this District a convenient forum is counter to the law of this jurisdiction and disregards the extensive facts showing that both the Southern District of New York and the District of Connecticut are more convenient forums. Accordingly, this case should be transferred.

Even more pressing, regardless of the Court's decision on the motion to transfer, the temporary restraining order should be dissolved immediately. Rather than preserving the status quo, the temporary restraining order is in fact causing the Laddcap Defendants irreparable harm by preventing them from proceeding with their consent solicitation while allowing Delcath's countervailing solicitation to go forward unimpeded. The temporary restraining order should be lifted immediately, whether this case is transferred or not.

## ARGUMENT

### POINT I

**IRRESPECTIVE OF THE COURT'S RULING ON THE MOTION
TO TRANSFER VENUE, THE TEMPORARY RESTRAINING
ORDER MUST BE DISSOLVED IMMEDIATELY TO PREVENT
FURTHER IRREPARABLE HARM TO LADDCAP**

**A.    The Temporary Restraining Order Is Not Maintaining The Status
Quo, But Causing Irreparable Harm To Laddcap.**

"The purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction." Barrow v. Graham, 124 F. Supp. 2d 714, 715-16 (D.D.C. 2000).

However, in this case, the temporary restraining order that was put into place by the Court's August 14, 2006 Order (the "TRO") is not merely maintaining the status quo, but causing severe and irreparable harm to Laddcap and Delcath's other stockholders.  Accordingly, the TRO should be dissolved.

>    1.    **The TRO Is Eroding Laddcap's 60-Day Window To Solicit Consents.**

The TRO is eating away at the time in which Laddcap is permitted by law to complete its consent solicitation.  By law, Laddcap does not have an unlimited amount of time to complete the consent solicitation process.  Delaware General Corporation Law Section 228(c), which governs the consent solicitation process, states as follows:

> Every written consent shall bear the date of signature of each stockholder or member who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, *within 60 days of the earliest dated consent delivered in the manner required by this section to the corporation*, written consents signed by a sufficient number of holders or members to take action are delivered to the corporation . . . .

8 Del. C. § 228(c).  Here, Laddcap delivered its first consent to the Company on July 27, 2006.  Accordingly,  Laddcap's consent solicitation *must* be completed by September 25, 2006.  Thus, the TRO is eroding away the time in which Laddcap can complete its solicitation and is causing severe and irreparable harm to Laddcap.

>    2.    **The TRO's One-Sided Restraint Against Laddcap Allows Delcath To Proceed With Its Own Revocation Solicitation Campaign While Laddcap's Hands Are Tied.**

The TRO is not merely maintaining the status quo between the parties, but instead unfairly favors Delcath.  The TRO prohibits only Laddcap -- not Delcath -- from continuing with the consent solicitation process.  Accordingly, Delcath is free to continue its campaign to convince Delcath shareholders to withhold consent for Laddcap's proposal, which is precisely what Delcath is now actively doing. ***Thus, on August 14, 2006 at 9:34 p.m. -- just five hours after the Court issued the TRO restraining Laddcap -- Delcath filed its first amendment to its***

***Preliminary Consent Revocation Statement with the SEC***.  See Declaration of Steven M. Hecht ("Hecht Decl.") at ¶ 2.  It was this very same type of filing by Laddcap on Monday, August 14 that purportedly prompted Delcath to run into court for the TRO.  In addition, ***today, August 16, Delcath issued a press release*** touting the retention of an investment banker to effectuate the proposal that was approved by shareholders at the June 13, 2006 annual meeting (and which the Laddcap Defendants had proposed).  The press release makes crystal clear that it is being issued in connection with Delcath's consent revocation statement, which is explicitly referenced therein.  Hecht Decl. ¶ 3.  Thus, Delcath is continuing its campaign to thwart the election of a new Board of Directors, while Laddcap's efforts to exercise its rights as a Delcath stockholder are frozen.  The TRO is not maintaining the status quo but is giving Delcath an unfair advantage while causing severe and irreparable harm to Laddcap and the other Delcath stockholders.

> **3.    The TRO Allows Delcath To Achieve By Litigation What It Has Failed To Achieve By Solicitation.**

The TRO is rewarding Delcath for resorting to judicial interference when it could have -- and should have -- been fighting the consent solicitation process in its proper forum:  namely, in front of Delcath's stockholders.  Delcath became aware that Laddcap intended to initiate a consent solicitation campaign as early as July 27, 2006 (a Thursday), when Laddcap delivered to the Company its Consent to Action commencing the consent solicitation campaign.  On Friday, July 28, 2006, Laddcap filed an amendment to its Schedule 13D in which Laddcap publicly confirmed its intention to proceed with a consent solicitation.  Just a few business days later, on August 1, 2006, Laddcap filed its Preliminary Consent Solicitation Statement with the SEC.  However, rather than immediately responding to Laddcap's Preliminary Consent Solicitation Statement with a Consent Revocation Statement of its own -- as Delcath should have done if it was really concerned about protecting its stockholders' rights to make an informed decision in the election -- Delcath chose to devote its substantial resources to filing two separate lawsuits in two separate forums.

Thus, before Delcath even bothered to file its first Preliminary Consent Revocation Statement, it filed its lawsuit against Mr. Foltz in Connecticut state court and filed its 38-page Complaint in this Court to initiate the present litigation.  In fact, Delcath did not bother to file its first Preliminary Consent Revocation Statement until August 7, 2006, well over a week after Laddcap filed its Consent to Action and eleven days after Delcath first learned of Laddcap's intentions.  Thus, Delcath chose to pursue an expansive litigation strategy rather than respond to Laddcap's consent solicitation in an appropriate shareholder forum.  Choosing that strategy was Delcath's prerogative, but it should not now be able to avail itself of judicial redress to compensate for the lost opportunity in the business world of its own making.  Accordingly, the TRO is awarding Delcath for these procedural maneuverings.  Under the TRO, Delcath is being provided the time to "catch up" on the lag it created for itself in its consent revocation campaign while Laddcap's consent solicitation campaign is frozen.  This is simply unfair and flies in the face of the purpose of a TRO, which is to maintain the status quo between the parties.

### 4. Laddcap Should Not Be Punished For Delcath's Improvident Choice Of Forum.

It was Delcath that chose to file this action in the District of Columbia -- a venue that has virtually no connection to the parties in this litigation.  Laddcap should not be punished for Delcath's decision to file in an inappropriate forum.  Accordingly, if the Court decides to transfer the case to another district, the TRO should be dissolved -- not extended any further -- so that Laddcap is not paying an even greater price for Delcath's procedural maneuverings.

For all of these reasons, the TRO should be dissolved and Laddcap should be allowed to continue its campaign before Delcath's stockholders, as Delcath has been doing these past few days since the TRO has been in place.

### B. The Harm To Laddcap And Delcath's Other Stockholders Flowing From The TRO Far Outweighs The Harm To Delcath Flowing From The Dissolution Of The TRO.

Here, the harm which Laddcap and the other Delcath stockholders will suffer if the TRO continues will be far greater than any purported harm to Delcath if the TRO is dissolved.

-4-

Because incumbent directors do not have a vested right to continue their service as directors, any purported harm attendant to an electoral defeat pales in comparison to the disenfranchisement of Delcath's shareholders.

Shareholders' franchise rights are paramount. In fact, the "shareholder franchise is the ideological underpinning upon which the legitimacy of directorial power rests. Generally, shareholders have only two protections against inadequate business performance. They may sell their stock . . . or they may vote to replace incumbent board members." Blasius Indus., Inc. v. Atlas Corp., 564 A.2d 651, 659, 662 (Del. Ch. 1988), reargument denied by Civ. A.No. 9720, 1988 WL 909333 (Del. Ch. Aug. 15, 1988); see also Paramount Communications, Inc., 637 A.2d 34, 42 (Del. 1994) ("Because of the overriding importance of voting rights, [courts] have consistently acted to protect stockholders from unwarranted interference with such rights."); Unitrin, Inc. v. American General Corp., 651 A.2d 1361, 1378 (Del. 1995) (stating that the court "has been and remains assiduous in its concern about defensive actions designed to thwart the essence of corporate democracy by disenfranchising stockholders"); Carmody v. Toll Brothers, Inc., 723 A.2d 1180, 1193 (Del. Ch. 1998) (stating that "the shareholder vote has primacy in [the] . . . system of corporate governance because it is the 'ideological underpinning upon which the legitimacy of directorial power rests.'").

Here, Laddcap's right to initiate a valid consent solicitation and the rights of Delcath's stockholders to vote on a new slate of directors far outweigh any purported right that the incumbent Board may have to continued service. Indeed, as this Court recently stated,

> . . . the securities laws 'cannot be used merely as a ploy to keep incumbent management safe from a hostile takeover. Thus, the harm here cannot be to the individual members of the Board of Directors, who might be replaced if [the shareholders have] their way, or to the individual officers of [the Company] who might be discharged. The harm must be to the institution, which in this case means irreparable harm to [the Company's] shareholders.'

Bender . Jordan, --- F. Supp. 2d ---, Civ. A. No. 06-92 (RMC), 2006 WL 2042962, at * 28-29 (quoting Indep. Fed. Bank v. Bender, 332 F.Supp.2d 203, 217 (D.D.C. 2004).

Delcath has not offered any justification, let alone a compelling justification, for depriving Laddcap and the other Delcath stockholders of their right to vote. Accordingly, the harm to Delcath and the other Delcath stockholders far outweighs any purported harm to Delcath's incumbent management, and the TRO should be dissolved.

## C.    Delcath Has Failed To Demonstrate Irreparable Harm.

Delcath has failed to demonstrate that it will suffer irreparable harm in the absence of a TRO. Although the factors which comprise the standard for granting injunctive relief interrelate on a sliding scale and must be balanced against each other, a showing of irreparable harm is the *sine qua non* of preliminary injunctive relief. See Bender, 2006 WL 2042962, at *27 (citing Chaplaincy of Full Gospel Churches v. England, ---- F.3d ----, 2006 WL 1867203, at *4 (D.D.C. July 7, 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.") Indeed, "[t]he D.C. Circuit 'has set a high standard for irreparable injury. First, the injury must be both certain and great; it must be actual and . . . of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" Id. "'Second, the injury must be beyond remediation . . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" *Id.*

Here, Delcath has failed to make a clear showing of imminent irreparable harm. First of all, Delcath's incumbent Board of Directors does not have a vested right to continued service. Indeed, one of the only protections afforded stockholders against inadequate business performance of the Board is the right to vote to replace incumbent Board members. See Hilton Hotels Corp. v. ITT Corp., 978 F.Supp. 1342, 1351 (D. Nev. 1997). Therefore, if the consent solicitation is permitted to go forward and Delcath's incumbent Board is defeated, Delcath will have suffered no harm.

Moreover, even assuming *arguendo* that Delcath has offered sufficient evidence to demonstrate a likelihood of success in its Section 13(d) and 14(a) claims, the appropriate remedy here would not be an injunction, but rather curative disclosures. Indeed, all Laddcap needs to do to correct the alleged deficiencies in its consent solicitation materials and Schedule 13Ds is to file amended documents which address any of Delcath's concerns that the Court may find to be material and valid, if any. And, in most instances, Laddcap has already made such amplified disclosures. Accordingly, an injunction is not appropriate here. See Bender, 2006 WL 2042962, at *27 (citing Chaplaincy of Full Gospel Churches v. England, ---- F.3d ----, 2006 WL 1867203, at *4 (D.D.C. July 7, 2006) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm"); Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc., 295 F.Supp.2d 75, 86 (D.D.C. 2003) (refusing to grant preliminary injunction for alleged violations of Section 14(a) where final consent solicitation statement to replace board of directors contained corrective disclosures and total mix of information available to shareholders included full description of plaintiff's concerns); Bayly Corp. v. Marantette, No. 82-1354, 1982 WL 1337, at *12 (D.D.C. Oct. 19, 1982) (finding that where material omissions and other inaccuracies had been corrected in amended filings they could not support an injunction for violation of Section 13(d) or 14(a)).

In addition, Delcath waited more than a week after Laddcap filed its Consent to Action on July 27, 2006 to file this lawsuit; waited almost two weeks to file its motion for a preliminary injunction; and waited until August 14, 2005 to file its motion for a TRO. If the supposed harm to Delcath was truly imminent, the Company would not have waited almost two weeks to seek emergent relief. The more likely explanation is that Delcath, knowing that its Board members likely would be removed as a result of the consent solicitation, was desperate. The Company needed to come up with some way of putting off the stockhholder vote, and thus cobbled together a litigation strategy hoping to stall the vote. Indeed, this action represents Delcath's last-ditch effort to avoid what may be inevitable -- the loss of the election to the slate nominated

-7-

by Laddcap. Thus, Delcath's very delay in filing for emergent relief further demonstrates that it will not suffer immediate irreparable harm if injunctive relief is not granted. Accordingly, the TRO should be dissolved.

> **D.    Consideration Of The Public Interest Strongly Favors Denial Of The Requested Injunction.**

Delcath's attempt to avoid the impending stockholder vote by seeking to enjoin Laddcap from exercising their rights as stockholders to conduct a consent solicitation could not be more transparent. Delcath claims that its request for injunctive relief is in the public interest because it would result "in the enforcement of the securities laws." This argument is nonsensical, because it assumes that Delcath has proven that Laddcap has violated the securities laws, when, in fact, Delcath has not even been able to muster sufficient evidence to establish that it is likely to succeed on its claims. Moreover, it is Delcath who is manipulating the rules to the detriment of and in derogation of the rights of its own stockholders. Therefore, consideration of the public interest dictates that the TRO should be dissolved.

Delcath's manipulation of the consent solicitation rules to avoid the loss of the election flouts the very public interest it purports to uphold. It is well settled that "[courts] will not allow the wrongful subversion of corporate democracy by manipulation of the corporate machinery or by machination under the cloak of [applicable] law . . . . Accordingly, careful judicial scrutiny will be given a situation in which the right to vote for the election of successor directors has been effectively frustrated and denied." Giuricich v. Emtrol Corp., 449 A.2d 232, 239 (Del. 1982) (citation omitted). In the instant case, Plaintiff's manipulation is obvious, and if successful, will result in the disenfranchisement of Delcath's stockholders. This Court should not countenance such conduct, and should deny Delcath's application for injunctive relief.

## POINT II

### THIS ACTION SHOULD BE TRANSFERRED
### TO NEW YORK OR CONNECTICUT

**A.    The Court Has Broad Discretion To Transfer This Action To An Appropriate Forum.**

Delcath does not dispute that the exercise of the power to transfer under Section 1404(a) "is committed to the sound discretion of the district court," <u>SEC v. Ernst & Young</u>, 775 F. Supp. 411, 413 (D.D.C. 1991), and that such discretion is guided by a number of factors designed to capture the public and private interests implicated in a motion to transfer.  <u>Trout Unlimited v. U.S. Dep't of Agriculture</u>, 944 F. Supp. 13, 16 (D.D.C. 1996) (citations omitted).  Instead, Delcath argues that the Laddcap Defendants must satisfy a "heavy burden" to establish that "plaintiff's choice of forum is inappropriate."  Opposition Memorandum at 9.

Delcath's argument ignores the myriad cases in which courts in this District have transferred cases, particularly where, as here, this District is not plaintiff's home forum and has tenuous ties to the facts underlying the dispute.  <u>See</u>, <u>e.g.</u>, <u>Trout Unlimited</u>, 944 F. Supp. at 17 (transferring case, noting that "the showing defendants must make is lessened when the 'plaintiff[s'] choice [of forum] has no factual nexus to the case'") (citations omitted); <u>O'Shea v. Int'l Brotherhood of Teamsters</u>, No. Civ.A. 04-0207 (RBW), 2005 WL 486143, at *5  (D.D.C. March 2, 2005) (Walton, J.) (transferring case to Maryland because it was the "more appropriate forum" given that "the bulk of the acts relevant to the suit" occurred there and the plaintiff was not a resident of the District of Columbia); <u>McClamrock v. Eli Lilly and Co.</u>, 267 F. Supp. 2d 33, 36 (D.D.C. 2003) (Walton, J.) (transferring case, observing that deference to plaintiff's choice of forum is "greatly diminished when the activities have little, if any, connection with the chosen forum") (citations omitted); <u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3, 6-7 (D.D.C. 1996) (transferring case from District of Columbia, which had "no meaningful ties or interest in [the] suit," to Maryland, which "possesse[d] a significant interest in [the] suit because all of the material events that constitute the factual predicate for the plaintiff's claims occurred there"); <u>Brannen v. Nat'l R.R. Passenger Corp.</u>, 403 F. Supp. 2d 89, 93 (D.D.C. 2005) ("deference to the

plaintiff's choice of forum is mitigated where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter") (internal quotation marks and citations omitted); Payne v. Giant of Maryland, LLC, Civ. A. No. 05-897 (GK), 2006 WL 1793303, at *4 (D.D.C. June 28, 2006) (because "the deference to a plaintiff's choice of forum is substantially diminished where… transfer is sought to the forum where plaintiff[] reside[s]," case transferred to state of plaintiff's residence) (internal quotation marks and citations omitted).

Moreover, "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).  Thus, where the District of Columbia "has no meaningful ties to or interest in" the litigation, a district court "must be especially cautious in allowing [the] case to remain in the District of Columbia." Trout Unlimited, 944 F. Supp. at 17; see also In re AT&T Access Charge Litig., No. Civ.A. 05-1360 (ESH), 2005 WL 3274561, at *3 (D.D.C. Nov. 16, 2005) (transferring case where District's sole link to litigation were defendants' filings with the Federal Communications Commission); Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing Cameron in transferring case); Airport Working Grp. of Orange Co. v. U.S. Dep't of Defense, 226 F. Supp. 2d 227, 230-31 (D.D.C. 2002) (transferring case given lack of meaningful ties to forum and "admonition" to be "especially cautious in allowing [cases] to remain in the District of Columbia") (citing Cameron).

This case has only superficial ties to the District of Columbia.  Indeed, as Delcath implicitly concedes, the only substantial link between this venue and the facts of this case is that the Laddcap Defendants' securities filings are made with the S.E.C., which is located here[1]. While that distant connection may be sufficient to make the District of Columbia a *permissible*

---

[1]    The Laddcap Defendants in fact make their filings electronically, using the EDGAR system. EDGAR's offices are located in Alexandria, Virginia.  Thus, while the filings may be "effected" in the District of Columbia, the District's connection to this dispute is yet another step removed.

venue under Section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa, it hardly makes the District the most "appropriate forum." O'Shea, 2005 WL 486143, at *5.  Given the much closer ties between both the Southern District of New York and the District of Connecticut to the parties and the facts of this dispute, the case should be transferred to one of those districts.

> **1.    This Action Could Have Been Brought In The Southern District Of New York Or In The District Of Connecticut.**

Delcath does not dispute that this action could have been brought in either the Southern District of New York or the District of Connecticut.  Thus, the only issue on this motion is whether the case-specific balance of private-interest and public-interest factors favor transfer. Sierra Club, 276 F. Supp. 2d at 65.

> **2.    Considerations Of Convenience And Justice Support The Transfer Of This Action To New York Or To Connecticut.**

> > **(a)    The Private Interests of the Parties Weigh in Favor of Transfer.**

Delcath opens its argument by claiming that, as plaintiff in this suit, its choice of forum is a "paramount consideration" in any transfer request and is to be "accorded substantial deference."  Opposition Memorandum at 2 (citations omitted).  Later in its memorandum, however, Delcath admits that in fact the "degree of deference afforded to plaintiff's choice of forum 'depends on the nexus between plaintiff[s]' chosen forum… and the dispute at issue,'" and that, where the nexus is weak and the forum is not plaintiff's home, plaintiff's preference is merely a "*relevant consideration*" in the balancing test.  Id. at 11 (citations omitted, emphasis added).  Delcath's concession is consistent with the extensive case law from this District, discussed above, holding that a plaintiff's preferred forum is granted little deference where the plaintiff does not reside in the District of Columbia and the underlying facts to the dispute did not arise here.

Delcath's efforts to bolster the ties between this District and this dispute also fail. Delcath states that "at least 6" of its shareholders reside in the District of Columbia.  Opposition Memorandum at 5.  It also cites its periodic appearances before the Food and Drug

Administration and meetings between its C.E.O., Chairman, and Washington, D.C. counsel. Id. Next, Delcath references two meetings, one in 2002 for "potential investors" and another in 2005 with unidentified "consultants." Id. Finally, Delcath notes that it, like the Laddcap Defendants, files disclosures with the SEC. Id.

Almost all of these facts are irrelevant to the question of whether venue in this District is convenient. For example, Delcath also has ten shareholders in Kansas and six in Hawaii; no party could realistically suggest that this dispute should be litigated in those forums. See Hecht Decl. ¶ 4. Delcath's appearances before the FDA and its occasional meetings in the District with counsel, investors, and consultants have no bearing on the facts of this dispute. Delcath's SEC filings are not relevant to this dispute either, as its claims arise from the Laddcap Defendants' alleged conduct, not its own.

Thus, the *only* meaningful connection Delcath can identify between this District and this litigation is the Laddcap Defendants' filing of disclosures with the SEC. But, as observed by this Court in Comptroller v. Calhoun First National Bank, 626 F. Supp. 137 (D.D.C. 1985), and S.E.C. v. Ernst & Young, 775 F. Supp. 411 (D.D.C. 1991), the mere filing of disclosures with the S.E.C. does not make the District of Columbia a convenient venue when all operative facts giving rise to the dispute occurred elsewhere.[2] By Delcath's logic, nearly every securities fraud

---

[2]    Delcath's efforts to distinguish Calhoun are unconvincing at best. Delcath first argues that the defendant in Calhoun demonstrated that litigating in the District of Columbia would be a disruption to its business. The same is true here. The Laddcap Defendants are a small business that employs only two people. Time spent traveling to this District by either of them will seriously interrupt the companies' normal course of business.

       Second, Delcath observes that one of the bases for transferring the case in Calhoun was that related litigation was already pending in the transferee forum. The same is true here, and for that reason the District of Connecticut may well be the most appropriate forum for this lawsuit. A related action is currently pending in the District of Connecticut, captioned Delcath Systems, Inc., et al. v. Enney, Civ. A. No. 3:05-CV-1281 (JCH). In that case, Delcath and its President, Mr. Koly, are co-plaintiffs, alleging that certain libelous and slanderous statements were made in connection with their membership in a private social club, in which several of Delcath's current directors, including Mr. Koly and Mr. Corigliano, are members. The complaint, as amended, alleges that Mr. Koly's "business and professional reputation has been sever[e]lly and permanently injured, and [that he] has suffered humiliation, anxiety, and mental anguish." The complaint further alleges that

-12-

case would be litigated here, as almost all securities cases involve allegedly misleading SEC filings. Such an absurd result has been noted by courts transferring cases from this District when venue was based exclusively on filings with regulatory agencies. For example, in <u>Ernst & Young</u>, the court dismissed the SEC's arguments opposing transfer in light of the fact that the only links between the District of Columbia and the underlying facts were SEC filings, noting that:

> If [the SEC's] relatively minor concerns were able to defeat a motion to transfer, then every enforcement action, regardless of where the underlying events took place, would be entertained in this District simply because the agency is located here. This Court would be inundated. More importantly, every organization across the country that is required to file documents with an agency in Washington could be forced to travel here to defend against as yet unproven charges.

775 F. Supp at 415; <u>see also</u> <u>In re AT&T Access Charge Litig.</u>, 2005 WL 3274561, at *3 (where plaintiffs purported to base venue on FCC filings, "to accept plaintiffs' arguments would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action. Such an expansive view of venue finds no support in the law and therefore will not be adopted here.").

Next, Delcath challenges the Laddcap Defendants' claim that litigating this dispute in this District will be less convenient for the parties, notwithstanding the fact that the evidence to be discovered, marshaled, and presented to the trier of fact is located almost exclusively in New York and Connecticut. Significantly, while Delcath identifies four witnesses who do not live in either New York or Connecticut (though one lives in New Jersey), it does not identify a *single*

---

"Delcath has lost standing in the community, which has damaged Delcath's ability to secure future investors and investment capital." Delcath's treasury is apparently funding the Connecticut litigation. To the extent that the Connecticut litigation calls into question whether Delcath's current Board members are exercising effective independent oversight over the Company, that issue is directly at the center of this action, and a transfer of this action to Connecticut is warranted under the ruling in <u>Calhoun</u>.

With respect to the <u>Ernst & Young</u> case, Delcath does not even attempt to distinguish it, as that case is not even mentioned in Delcath's Memorandum.

witness who lives in or near the District of Columbia.  Thus, while three witnesses will have to travel to attend these proceedings whether it is transferred or not, the remaining witnesses will not have to travel if the case is transferred but will have to do so if it remains here.  On the issue of documentary proof, Delcath asserts that "the documents at issue… will be finite in number." Opposition Memorandum at 19.  While the Laddcap Defendants' join in this observation, Delcath still fails to point to a shred of paper that is sought by any of their thirteen separate document requests, many of which have multiple parts, that currently sits in a file or office located in this District.  And in any event, Delcath does not dispute that the documents -- whatever their number -- are located mainly, and within all probability exclusively, in New York and Connecticut, and not at all in the District of Columbia.

Finally, Delcath argues that the District of Columbia must be a convenient forum for the Laddcap Defendants because, two months ago, they filed an action in Delaware state court. Opposition Memorandum at 18.  This point is a red herring.  Delcath fails to mention that the lawsuit arose under Section 220 of Delaware's corporate law.  Delaware state courts were the most appropriate jurisdiction in which the case could have been brought, given their expertise with Delaware statutes and state law issues.  See, e.g., Rapoport v. Litigation Trust of MDIP, Inc., No. Civ. A. 1035-N, 2005 WL 3277911, at *5 (Del. Ch. Nov. 23, 2005) ("questions of substantive Delaware corporate law 'are more properly decided here rather than another jurisdiction, even though the other jurisdiction's courts are quite capable of applying Delaware law and rendering prompt justice.'") (quoting In re Walt Disney Co. Deriv. Litig., C.A. No. 15452, 1997 WL 118402, at *3 (Del. Ch. Mar. 13, 1997));  Jim Walter Corp. v. Allen, Civ. A. No. 10974, 1990 WL 3899, at *4 (Del. Ch. Jan.12, 1990) ("the special, continuous experience this Court has in construing our corporation law requires as well recognition that this experience creates a certain expertise.")   Further, and of particular importance here, the Delaware Court of Chancery schedules claims brought pursuant to 8 Del. C. § 220 for prompt summary disposition allowing for a trial to occur within weeks of filing a complaint.  See, e.g., Highland Select Equity Fund, L.P. v. Motient Corp., No. Civ. A. 2092-N, 2006 WL 1903129, at *1 (Del. Ch. Jul. 6,

2006) ("Section 220 is an important stockholder right that, by statute, this court is directed to resolve in a summary proceeding."); U.S. Die Casting and Dev. Co. v. Sec. First Corp., Civ. A. No. 14019, 1995 WL 301414, at *3 (Del. Ch. Apr. 28, 1995) ("Section 220 'contemplates summary proceedings and the accelerated scheduling of cases under it emphasizes prompt processing and disposition.'") (quoting Mite Corp. v. Heli-Coil Corp., 256 A.2d 855, 857 (Del. Ch. 1969)).  No such concerns are implicated in this lawsuit.

In sum, Delcath has presented nothing that undermines the Laddcap Defendants' arguments that the private interest factors strongly favor transfer, that the District of Columbia is not a convenient forum, and that both the Southern District of New York and the District of Connecticut are convenient alternate forums.

**(b)    The Public Interests Weigh in Favor of Transfer.**

Delcath argues that this dispute is not local to New York and Connecticut because the Laddcap Defendants' conduct "affect[s] a shareholder base dispersed throughout the country." Opposition Memorandum at 20.  But the dispute is not between the Laddcap Defendants and those dispersed shareholders, or even between Delcath and the dispersed shareholders.  Rather, the dispute is between Delcath, a Connecticut-based business, and the Laddcap Defendants, New York-based investors.  New York and Connecticut clearly have a local interest in the resolution of a dispute among their residents.

Finally, Delcath's overly expansive interpretation of the venue provisions of the Exchange Act would harm the public interest by encouraging lawsuits to remain in the District of Columbia even when the only serious connection between the District and the lawsuit is a disclosure filed with the SEC.  Such suits belong elsewhere, in the districts where the underlying facts occurred and the parties are located.  This dispute, too, belongs not in the District of Columbia, but either in the Southern District of New York or the District of Connecticut.

-15-

## CONCLUSION

For these reasons, and the reasons set forth in their opening memorandum, the Ladd Defendants respectfully request that the Court enter an order (i) transferring this case to the Southern District of New York or the District of Connecticut, and in all events (ii) dissolving the TRO immediately.

Respectfully submitted,

Robert Ladd, LADDCAP Value Partners LP, LADDCAP Value Advisors LLC, and LADDCAP Value Associates LLC

By Counsel:


       /s/    Patricia E. Connelly
Robert P. Trout
(D.C. Bar No. 215400)
Patricia E. Connelly
(D.C. Bar No. 360594)
Gloria B. Solomon
(D.C. Bar No. 358880)
TROUT CACHERIS, PLLC
Suite 300
1350 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319


## Certificate of Service

I hereby certify that on this 16th day of August, 2006, I served a copy of the foregoing reply by ECF on the attorneys who have supplied their EMail address to the Court.


       /s/    Patricia E. Connelly
Patricia E. Connelly


-16-